UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CALEB L MCGILLVARY, | Civil Action No. 21-17121 (MCA) |
| Plaintiff, | |
| v. | OPINION |
| JAMES GALFY, et al., | |
| Defendants. | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter has been opened to the Court by five separate motions seeking dismissal of Plaintiff Caleb McGillvary's Complaint, which asserts civil rights violations in connection with his prosecution and trial for the murder of Joseph Galfy, Jr.  The motions for dismissal are brought by John G. Cito ("Cito") and Peter A. Liguori ("Liguori"), Plaintiff's defense attorneys, James Galfy ("Galfy"), the brother of the victim and executor of his estate ("the Estate"), Dr. Robert J. Pandina ("Dr. Pandina"), a "drug effects" expert, Scott M. Peterson ("Peterson") and Theodore Romankow ("Romankow"), Union County prosecutors, and the Union County Prosecutor's Office ("UCPO").  For the reasons explained in this Opinion, the Court grants the motions to dismiss the § 1983 claims as to all Moving Defendants.  The § 1983 claims against the UCPO are dismissed <u>with prejudice,</u> and Plaintiff's § 1983 claims against the remaining Defendants are dismissed <u>without prejudice</u> to his filing of a new action if, <u>and only if,</u> Plaintiff sets aside his conviction for the murder of Joseph Galfy.  Having dismissed the § 1983 claims at this early stage, the Court declines supplemental jurisdiction over any remaining state law claims.  The Court also denies Plaintiff various motions, including his motion to amend, motions for discovery, and motion for sanctions.

I. **FACTUAL BACKGROUND**

  a. **The Allegations in the Complaint**

The Complaint asserts violations of Plaintiff's federal civil rights pursuant to 42 U.S.C. § 1983 and violations of state law arising from an alleged conspiracy among the Moving Defendants to conceal Dr. Pandina's favorable expert opinion from Plaintiff and prevent Plaintiff from using Dr. Pandina as an expert at trial.

Plaintiff alleges that "[o]n May 12 , 2013, Joseph Galfy "drugged and sexually assaulted Plaintiff[.]" Complaint at § 1. Thereafter, on May 16 , 2013, Plaintiff was charged with the Joseph Galfy's murder. *Id.* In connection with these events, the then-Union County Head Prosecutor Romankow made allegedly slanderous remarks about Plaintiff to the press. *Id.* Plaintiff asserted publicly and at trial that Joseph Galfy "surreptitiously placed drugs in Plaintiff's beer[.]" *Id.*

At Plaintiff's murder trial in 2019, the jury was instructed that Plaintiff must prove intoxication "by clear and convincing evidence" and in the absence of intoxication, the jury must return a guilty verdict. *Id.* The trial court further instructed the jury that "if Plaintiff could prove intoxication 'by clear and convincing evidence,'" the jury "must acquit" Plaintiff. *Id.* On April 24, 2019, the jury convicted Plaintiff of first degree murder in the death of Joseph Galfy, and Plaintiff was sentenced to 57 years imprisonment with an 85% parole ineligibility period. *Id.*

Plaintiff alleges that the Moving Defendants conspired to prevent Plaintiff from introducing the expert testimony of Dr. Pandina, and that Dr. Pandina's testimony would have allowed Plaintiff to prove he was intoxicated by "clear and convincing" evidence:

> Drug effect expert Defendant Robert Dr . Pandina . . . was
> prevented from providing "clear and convincing evidence" of
> [Plaintiff's] intoxication through his expert testimony
> corroborating Plaintiff's defense: because of a conflict of interest

> created by [James] Galfy and fraudulently concealed by all captioned Defendant's [sic] in this matter. . . ."

*Id.* at ¶ 2. According to the Plaintiff, UCPO investigator Johnny Ho and Defendant Peterson interviewed Dr. Pandina, and, during this interview, Dr. Pandina made statements that "would substantiate Plaintiff's intoxication defense." *Id.* at ¶ 3. Specifically, "Dr. Pandina stated that the effects of date [rape] drugs typically last 2-4 hours[,]" and this statement "conflicted with [Johnny] Ho's grand jury testimony, which quoted Dr. Pandina as saying 8-10 hours." *Id.* Plaintiff further alleges that Ho, Peterson, Romankow, and Galfy conspired and agreed to deprive Plaintiff of Dr. Pandina's favorable opinion at trial.

To that end, Galfy allegedly made a transfer and/or conveyance of assets from the Estate to Dr. Pandina's research institute, The Center for Alcohol Studies. *Id.* at ¶ 5. This transfer of money was allegedly "earmarked" for Dr. Pandina and created a conflict of interest that prevented Dr. Pandina from testifying at Plaintiff's trial. *Id.* at ¶ 6. According to Plaintiff, Galfy falsely represented himself to be the executor of the Estate and bequeathed the money to prevent Dr. Pandina from testifying at Plaintiff's trial. *Id.* at ¶ 7. In addition to his civil rights claims, Plaintiff asserts that Galfy and Dr. Pandina's conduct violated various New Jersey statutes. *Id.* at ¶¶ 8-10.

Plaintiff further alleges that on March 23, 2016, Peterson wrote a letter to Liguori who was Plaintiff's defense counsel, advising Liguori of Dr. Pandina's statements and of Galfy's alleged "tampering with a Witness."[1] *Id.* at ¶ 11. Plaintiff alleges that neither Liguori nor Cito

---

[1] The March 23, 2016 letter is attached as Exhibit A to the Complaint. In 2015, Plaintiff filed a similar civil rights action against many of the same Defendants in this action, including Dr. Pandina. *See* Civ. Act. No. 15-8840. Plaintiff alleges that, on September 30, 2019, he received a certification from Dr. Pandina's counsel in connection with the prior action, which contained the March 23, 2016 letter as an exhibit. Complaint at ¶ 22. The March 23, 2016 letter does not acknowledge "witness tampering." Instead, Peterson's letter explains to Liguori that Dr. Pandina stated in his interview that the effects of the date rape drug such as grogginess, vomiting, and

apprised Plaintiff of the existence of the March 23, 2016 letter or the information it contained. *Id.* at ¶ 12.  Subsequently, Plaintiff alleges that Ho, Peterson, Romankow, and Pandina conferred with Liguori and Cito, and all the Defendants agreed to conceal the evidence of the letter and its contents from Plaintiff.  *Id.* at ¶ 13.

Plaintiff contends that he had the right to discover the contents of the letter under the New Jersey Court Rules, the Confrontation Clause of the Sixth Amendment, and the Due Process Clause of the Fifth Amendment.  *Id.* at ¶¶ 14-16.  Plaintiff also alleges that Peterson, Ho, and the UCPO failed to prosecute Galfy and Dr. Pandina, which violated his right to equal protection under the Fourteenth Amendment and amounts to selective enforcement.  *Id.* at ¶ 15.

Plaintiff also contends that Galfy used the Estate to tamper with other unidentified witnesses and paid investigators to destroy evidence showing that Joseph Galfy sexually assaulted Plaintiff.  *Id.* at ¶¶ 17-18.  Plaintiff further alleges that the Estate paid Liguori and Cito to sabotage Plaintiff's defense in order to mitigate the Estate's liability for Plaintiff's personal injuries.  *Id.* at ¶ 19.  Plaintiff alleges that his right to due process was violated by these actions, and he is also entitled to relief under N.J.S.A. 25:2-19, which deals with fraudulent conveyances, and N.J.S.A. 2C:21-19, which permits a person to commence a damages action if he or she has suffered loss as a result of the use of that person's personal identifying information.  *See id.* at ¶

---

inability to move lasts 8-10 hours but clarified that the acute effects last from 2-4 hours.  The letter also discloses to the defense that the state had learned that Dr. Pandina's research institute had received charitable funds from the Estate.  The state determined it would present a conflict of interest if Dr. Pandina were to testify for the state, and, therefore, the state would not call him as a witness.  Moreover, in light of this new information, the state also represented that it would re-present the case to a new Grand Jury panel without any mention of the prior statements made by Dr. Pandina.  *See* Exhibit A.

20. Plaintiff further contends that he does not seek to collaterally attack his sentence and instead seeks damages. *Id.* at ¶ 21.

### b. Procedural History

This is the second civil rights action that Plaintiff has filed regarding his prosecution for Joseph Galfy's murder. The prior action involved many of the same Defendants and similar, albeit not identical, claims. *See* Civil Act. No. 15-8840.

The instant Complaint was docketed on September 17, 2021. *See* ECF No. 1. Plaintiff paid the filing fee. Summons issued and was returned executed by the Moving Defendants. ECF Nos. 2, 5. Cito filed his motion to dismiss and/or for summary judgment on November 29, 2021. ECF No. 14. Liguori's motion to dismiss and/or for summary judgment followed on December 1, 2021. ECF No. 16. Galfy, filing on behalf of himself and the Estate, sought to join Cito and Liguori's motions on December 21, 2021. ECF No. 23. Galfy and the Estate subsequently filed a second motion to dismiss on February 16, 2022. ECF No. 43. In the meantime, Peterson, Romankow, and the UCPO filed their motion on January 21, 2021, ECF No. 30, and Dr. Pandina filed a motion to dismiss on February 14, 2021. ECF No. 40.

Plaintiff opposes the motions for dismissal. *See* ECF Nos. 25, 28, 31, 32, 35, 41, 47, 48. Plaintiff has also filed a motion for sanctions, ECF No. 33, a motion for discovery, ECF No. 34, and a motion to amend to add additional defendants and claims, *see* ECF No. 55, which the Court addresses below.

## II.    STANDARD OF REVIEW

The UCPO, Peterson, and Romankow move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and assert they are entitled to sovereign immunity under the Eleventh Amendment. This motion "may properly be considered

a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)" because "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

#### a. Eleventh Amendment Immunity and Personhood Requirement

From the outset the Eleventh Amendment incorporates a general principle of sovereign immunity which bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–101 (1984). In general, Eleventh Amendment immunity extends to state agencies and state officials in their official

capacities, and, in doubtful cases, the Court analyzes several factors to determine whether an entity is an agency of the State, i.e., whether the State is the real party in interest. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659-60 (3d Cir. 1989).

Relatedly, a state and its departments are not considered "persons" amenable to suit under section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67-70 (1989). Also barred are section 1983 suits for damages against "governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes," which are "no different from a suit against the State itself." *Id.* at 70-71. State officials, sued in their official capacities, are likewise not "persons" subject to a damages suit under section 1983. *Will*, 491 U.S. at 71 n.10; *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). On the other hand, a state official sued in his or her personal capacity is a "person" amenable to suit under section 1983, and does not enjoy Eleventh Amendment protection. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

The Third Circuit has held that when a county prosecutor's office is performing its core functions of investigating and prosecuting crime, it acts as an arm of the State.[2] *See, Beightler v. Office of Essex Cty. Prosecutor*, 342 F. App'x. 829, 832 (3d Cir. 2009) (citing *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996); *see also Estate of Matthew Mckloskey v. Franklin Township*, 2016 WL 4680154, at *3 (D.N.J. Sept. 7, 2016)(collecting cases and finding that a county prosecutor's office is not a person under § 1983). Because Plaintiff has sued the Union County Prosecutor's Office in connection with his prosecution for Galfy's death, the Court finds that it was acting as an arm of the state. For these reasons, the Court will grant <u>with prejudice</u> the

---

[2] "On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." *Wright v. State*, 169 N.J. 422, 450 (2001) (quoting *Coleman*, 87 F.3d at 1499).

motion to dismiss as to the Union County Prosecutor's Office. To the extent Plaintiff is suing Defendants Peterson or Romankow in their official capacities for damages, these claims are likewise dismissed <u>with prejudice</u>.[3]

### b. Due Process and Conspiracy Claims

The gravamen of Plaintiff's Complaint is that the individual Moving Defendants conspired to conceal Dr. Pandina's favorable testimony from Plaintiff and created a conflict of interest that prevented Plaintiff from using this favorable evidence at his murder trial. Plaintiff's claim is akin to a *Brady* violation, which bars the prosecution's suppression of exculpatory evidence.[4] *See Brady v. Maryland*, 373 U.S. 83 (1963). The Court construes Plaintiff to allege that his due process rights were violated by the individual Moving Defendants' alleged conspiracy to deprive him of this favorable evidence.

In order to state a claim for a conspiracy, a plaintiff must present "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). Further, the plaintiff "must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain

---

[3] They may remain potentially liable as persons in their individual capacities, however. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 856 (3d Cir. 2014).

[4] In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Court subsequently held that the prosecution's duty to disclose favorable evidence is not dependent upon a request from the accused. *United States v. Agurs*, 427 U.S. 97, 107 (1976). Evidence is favorable to the accused under *Brady* "if it would tend to exculpate him or reduce the penalty...." *Id.* at 87–88. Although the evidence at issue was technically provided to Plaintiff's defense counsel, Plaintiff alleges that his defense attorneys conspired with the prosecution, Galfy, and Dr. Pandina to suppress the evidence.

actions of the alleged conspirators taken to achieve that purpose." *Id.* at 179 (quoting *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir.1989), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000)). At this early stage, Plaintiff sufficiently alleges a conspiracy among the individual Moving Defendants to deprive him of his due process rights.[5]

In order to make out a due process violation, a Plaintiff must allege that the favorable evidence would have produced a different verdict. As explained by the Supreme Court in *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999),

> . . . strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Id.* at 281–82. As to the third requirement, evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Smith v. Holtz*, 210 F.3d 186, 197 (3d Cir. 2000) (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Thus, whether Plaintiff can make out a due process violation here hinges on whether Dr. Pandina's expert opinion would have changed the outcome of his trial. And to the extent Dr. Pandina's favorable opinion, if offered at trial, would not diminish confidence in Plaintiff's murder conviction, Plaintiff fails to state a claim for relief. *See Smith v. Holtz*, 210 F.3d at 196. At this early stage, the Court credits Plaintiff's allegations that

---

[5] It is notable that Galfy is a private citizen; however, as a general rule, non-state actors who conspire with state actors may be liable under section 1983. *See Dennis v. Sparks*, 449 U.S. 24 (1980).

Dr. Pandina's testimony, if offered at trial, would have allowed Plaintiff to prove intoxication by clear and convincing evidence, and thus would have changed the outcome of his trial.

Nevertheless, as the Moving Defendants argue in their respective dismissal motions, Plaintiff's allegations implicate the bar imposed by *Heck v. Humphrey*, 512 U.S. 477 (1994), and require the Court to assess whether a determination in Plaintiff's favor on his due process and conspiracy claims would necessarily impugn the validity of Plaintiff's conviction for Galfy's murder. In *Heck*, a state prisoner brought a § 1983 action for damages, challenging the conduct of state officials who, the prisoner claimed, had unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence. 512 U.S. at 479. The Court pointed to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.*, at 486. And it held that where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," *id.*, at 481–482, a § 1983 action will not lie "unless ... the conviction or sentence has already been invalidated," *id.*, at 487. The Court then added the caveat that where the § 1983 action, "even if successful, will not demonstrate the invalidity of any outstanding criminal judgment ..., the action should be allowed to proceed." *Id.* (footnote omitted).

Here, Plaintiff's due process and conspiracy claims, to the extent they are viable, are barred by the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). Indeed, Plaintiff explicitly alleges in his Complaint that Dr. Pandina's testimony, if presented at trial, would have enabled him to prove intoxication by clear and convincing evidence. And he further alleges that Moving Defendants' alleged wrongdoing deprived him of the very testimony that would have altered the verdict at his trial.

Moreover, Plaintiff's due process and conspiracy claims are barred by *Heck* even though Plaintiff seeks only damages and does not explicitly seek to invalidate his conviction or seek release from confinement. In a line of decisions, the Supreme Court has repeatedly held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Heck*, 512 U.S. at 481; *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). He must seek federal habeas corpus relief (or appropriate state relief) instead. Subsequently, in *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005), the Supreme Court reiterated that under *Heck*, "a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." As explained by the Court in *Wilkinson*, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81–82. Thus, Plaintiff cannot overcome the *Heck* bar by seeking damages rather than the invalidation of his conviction or release from confinement, or by disclaiming any desire to collaterally attack his conviction.

Because Plaintiff has not shown that his conviction has been set aside by the state court or in a habeas proceeding, he cannot proceed on his due process and conspiracy claims at this time. *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016). The Court therefore grants the motions to dismiss the due process and conspiracy claims premised on Moving Defendants alleged conspiracy to conceal and deprive Plaintiff of Dr. Pandina's "drug effects" testimony.

These claims are dismissed <u>without prejudice</u> as to all Moving Defendants until such time that Plaintiff sets aside his conviction.[6]

Plaintiff also complains that Romankow slandered him in the media. Here, to the extent Plaintiff seeks relief under § 1983, his claim is foreclosed by the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693, 697 (1976). There, the Court stated that a claim of defamation (by a police department that circulated a flyer imputing criminal behavior to a person) was not a federal claim even if it would "seriously impair [that person's] future employment opportunities." *Paul*, 424 U.S. at 697. As such, Plaintiff fails to state a claim for relief as to this claim.

Nor has Plaintiff pleaded facts showing an equal protection violation based on the fact that he was treated differently than Galfy and Dr. Pandina, neither of whom were prosecuted for their alleged misconduct. Generally, "[a] violation of the Equal Protection Clause may exist when government action discriminates against a "suspect class," or it interferes with a "fundamental right." *See Brown v. Borough of Mahaffey*, 35 F.3d 846, 850 (3d Cir. 1994). However, where a plaintiff cannot prove that he is a member of a protected class or that the government has interfered with a fundamental right, he may bring his claim under a "class-of-one" theory. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 595 (2008). A claim under this

---

[6] The same result would occur if the Court construes Plaintiff's claim as malicious prosecution. "To prove malicious prosecution under § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Because Plaintiff is unable to establish favorable termination, he fails to state a claim for malicious prosecution and this claim is subject to dismissal without prejudice until Plaintiff sets aside his conviction.

theory is subjected to a rational basis test and the plaintiff must prove that he was "intentionally treated differently from others similarly situated." *Id.* at 601 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992). Here, Plaintiff, who was tried and convicted for murder, fails to show that he is similarly situated to Galfy or Dr. Pandina. As such, this claim fails to state a claim for relief.

Plaintiff fares no better if he frames his claim as one for selective enforcement. To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right.'" *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir.2005) (quoting *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)). Plaintiff is unable to show that he is similarly situated to Galfy or Dr. Pandina, and this claim is likewise dismissed.

### c. Supplemental Jurisdiction

To the extent Plaintiff seeks to assert state law claims for relief against any of the Moving Defendants, the Court, having dismissed the federal claims, declines supplemental jurisdiction over any state law claims for relief. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." (internal quotation marks omitted)).

### d. Motion to Amend

Plaintiff has also filed a motion to amend to add additional facts, claims, and Defendants.[7] ECF No. 55. In the proposed amended complaint, Plaintiff alleges that the Estate, though Galfy, paid $150,000 to Dr. Pandina's employer, and the check was endorsed and cashed by Dr. Pandina. *See* Proposed Amended Complaint at 7. Plaintiff also alleges that Galfy's conduct violates federal criminal statutes.[8] Insofar as plaintiff seeks to sue Galfy civilly for alleged violations of the federal criminal laws, none of the federal crimes cited by plaintiff provides for a private right of action, and the statutes are thus not enforceable through a civil action. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (upholding dismissal of civil claims alleging violations of various federal criminal statutes that did not provide for a private right of action).

Plaintiff further alleges that Galfy and the medical examiner Junaid Shaikh met during the identification of Joseph Galfy's body. Subsequently, Galfy and the medical examiner came to an agreement whereby Galfy paid $150,000 to the medical examiner so he would not collect evidence from the carpet where Joseph Galfy body's was found. Plaintiff alleges that collecting evidence from the carpet would have shown that a sexual assault occurred.[9] *See* Amended Complaint at 10-11. Plaintiff further alleges that Galfy paid John or Jane Doe investigators to destroy evidence showing that a sexual assault occurred and did so to prevent Plaintiff from

---

[7] The Amended Complaint largely reiterates the facts of the Amended Complaint, and the Court reviews only the new facts, claims, and defendants.

[8] Plaintiff also alleges that the Galfy's conduct violates New Jersey criminal statutes, but the Court declines to review any state law claims in the absence of a viable federal claim.

[9] Plaintiff alleges that this misconduct violates N.J.S.A. 2C:28-6, which is a New Jersey criminal statute criminalizing the tampering with or fabricating of physical evidence. *See id.*

suing the Estate for personal injuries arising from Joseph Galfy's alleged sexual assault. *See id.* at 11-12.

In his proposed Amended Complaint, Plaintiff also alleges that UCPO detective Terrance Harrison interviewed Plaintiff on or about May 14, 2013, and Plaintiff told him about a lockbox that contained evidence. *Id.* at 11. Thereafter, Harrison either entered or permitted a John Doe to enter the crime scene and remove the lock box evidence. Union County Police Officer Adrian Gardner then falsified a police report to cover up the removal of evidence. *Id.* at 11.

Plaintiff appears to raise due process claims against Shaikh for his intentional failure to collect evidence and against Harrison and Gardner based on their destruction of evidence.[10]

With respect to the claims against Shaikh, Harrison, and Gardner, the Court assumes without deciding that that Plaintiff could bring claims against these state actors under the due process clause of the Fourteenth Amendment "if there is a reasonable likelihood that, absent the [intentional destruction of or failure to collect] evidence, the defendant would not have been criminally charged." *Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016) (assessing a claim for fabrication of evidence). Moreover, the destroyed or missing evidence must be "so significant that it could have affected the outcome of the criminal case." *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014). The Supreme Court, however, has expressly held that plaintiffs cannot bring a fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution. *See McDonough v. Smith*, 139 S.Ct. 2149, 2156 (2019). There is no logical basis to distinguish a fabrication of evidence claim from the types of evidence-related claims Plaintiff seeks to bring here. *See, e.g., Black*, 835 F.3d at 368 (3d Cir. 2016) (discussing fabrication of

---

[10] Plaintiff also seeks to add Johnny Ho as a Defendant based on his involvement in interviewing Dr. Pandina and for allegedly participating in the conspiracy to conceal the favorable testimony. The Court, however, has dismissed that claim as barred by *Heck*.

evidence claim and explaining that defendants conspired together and "deliberately fabricated, suppressed, and destroyed evidence from the inception of their investigation through the trial" (emphasis added)). As such, even assuming Plaintiff would otherwise state due process claims against Galfy, Shaikh, Harrison, and Gardner, these claims fail at this time because Plaintiff is unable to show favorable termination. As such, the Court denies Plaintiff motion to amend to add these new claims and Defendants.

e.  **Leave to Amend**

In the Third Circuit, the Court must allow leave to amend in civil rights cases regardless of whether it is requested before dismissing a case for failure to state a claim, unless leave to amend would be inequitable or futile. *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Plaintiff's due process claims and conspiracy claims are plainly barred by *Heck* and/or the favorable termination rule, and Plaintiff may not bring those claims until he sets aside his conviction. As such, leave to amend these claims is denied at this time. To the extent Plaintiff makes requests for discovery in his motion to amend, these requests are likewise denied.

f.  **Motion for Discovery and Sanctions**

In light of the dismissal of the Complaint in its entirety and the denial of the motion to amend, Plaintiff's motions for discovery are likewise denied. ECF Nos. 34, 51. Plaintiff has also filed a motion for sanctions, ECF No. 33, in which he contends that Defendant Galfy and the Estate have filed "a fraudulent civil cover sheet" that attempts to recharacterize this action as a

habeas corpus proceeding. The Court does not construe this action as a habeas corpus proceeding and denies the motion for sanctions as frivolous.

## IV.   CONCLUSION

For the reasons explained in this Opinion, the motions to dismiss the federal claims are granted as all Moving Defendants. The § 1983 claims against the UCPO are dismissed <u>with prejudice,</u> and Plaintiff's § 1983 claims against the remaining Defendants are dismissed <u>without prejudice</u> to his filing of a new action if, <u>and only if</u>, Plaintiff sets aside his conviction for the murder of Joseph Galfy. Having dismissed the § 1983 claims at this early stage, the Court declines supplemental jurisdiction over any remaining state law claims. The Court also denies Plaintiff various motions, including his motions to amend, for discovery and for sanctions. An appropriate Order follows.

Dated:  July 28, 2022

<u>s/ Madeline Cox Arleo</u>
**Hon. Madeline Cox Arleo**
UNITED STATES DISTRICT JUDGE