UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CALEB L MCGILLVARY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES GALFY, et al.,<br><br>Defendants. | Civil Action No. 21-17121 (MCA)<br><br>MEMORANDUM OPINION |

Plaintiff Caleb McGillvary was tried before a jury and convicted of the first-degree murder of Joseph Galfy, Jr., which occurred on or about May 12, 2013. *See* Complaint at ¶ 1. On May 30, 2019, he was sentenced to fifty-seven years of imprisonment. *See State v. McGillvary*, No. A-4519-18, 2021 WL 3378024, at *1 (N.J. Super. App. Div. Aug. 4, 2021). As relevant to the instant matter, the jury heard and rejected Plaintiff's testimony regarding his defenses of involuntary intoxication and self-defense. *See* Complaint at ¶ 1; *see also McGillvary*, 2021 WL 3378024, at *7.

In his Complaint and proposed Amended Complaint, brought pursuant to 42 U.S.C. § 1983, ECF Nos. 1, 55, Plaintiff alleged a wide-ranging § 1983 conspiracy among various state actors and private individuals, including the prosecutors and public defender in his murder case, a potential expert witness, the medical examiner, investigators, and James Galfy ("Galfy"), the brother of the victim and executor of the victim's estate ("the Estate"). The object of this conspiracy was allegedly to deprive Plaintiff of the expert testimony and physical evidence that would substantiate Plaintiff's claims that he was drugged and sexually assaulted by Joseph Galfy, Jr. and that he acted in self-defense (or was involuntarily intoxicated) when he killed the victim. As part of the conspiracy, Plaintiff alleged that the Estate, through its executor Galfy,

made payments to a potential expert witness, the medical examiner, and the John Doe investigators. Plaintiff further alleged, among other claims, that his due process rights were violated by the prosecutor's failure to turn over the financial records of the Estate in discovery, which would substantiate Plaintiff's allegations.

Union County Prosecutors, Scott M. Peterson ("Peterson") and Theodore Romankow ("Romankow"), and the Union County Prosecutor's Office ("UCPO") (collectively "the UCPO Defendants"), and Galfy filed separate motions to dismiss the Complaint.[1] ECF Nos. 30, 43. The Court assumed without deciding that Plaintiff could establish a conspiracy among the various Defendants but found that his due process claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's success on his these claims would necessarily invalidate his murder conviction.[2] The Court granted the motions to dismiss, denied Plaintiff's motions to amend, for discovery, and for sanctions, and dismissed Plaintiff's due process and conspiracy claims <u>without prejudice</u> until such time that Plaintiff sets aside his conviction in state court or in a federal habeas proceeding. *See* Generally ECF Nos. 66-67. Plaintiff now moves for reconsideration on a number of grounds.

Plaintiff moves for reconsideration of the Court's decision pursuant to Fed. R. Civ. P. 59(e), which "permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008). A proper motion under this rule "must rely on one of three grounds: (1) an intervening change in

---

[1] Plaintiff's defense attorneys John G. Cito ("Cito") and Peter A. Liguori ("Liguori") and the "drug effects" expert, Dr. Robert J. Pandina ("Dr. Pandina") also moved to dismiss the Complaint.

[2] The Court also found that the fabrication of evidence claims in the proposed Amended Complaint failed for lack of favorable termination.

controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazardis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)(citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Reconsideration motions are extraordinary remedies, and thus, such "are to be granted sparingly." *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986)).

With respect to the UCPO Defendants, Plaintiff claims the Court applied the wrong standard to his due process, defamation, equal protection, and selective enforcement claims and wrongly determined that he could not bring state and federal criminal claims against them. *See* ECF No. 68, p. 4-12. The UCPO Defendants oppose the motion for reconsideration. ECF No. 70.

The Court construed Plaintiff to raise his due process claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and Plaintiff now contends that the Court erred in this regard. He asserts instead that he is raising Fourteenth Amendment due process claims premised on his "fundamental" right to discovery under New Jersey Court Rule 3:13. Plaintiff claims he was "deprived of his state-created liberty & property interests in the discovery of the financial records of the estate and other items listed in the Amended Complaint: without due process of law." Motion at 12. He further maintains that these liberty and property interests were created by N.J. Ct. R. 3:13. *Id.*

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A state-created liberty interest arises when a state imposes "substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Property interests are not created by the Constitution. "Rather they are

created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (discussing, for example, welfare benefits). Similarly, "state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones*, 445 U.S. 480, 488 (1980) (emphasis added). It is well-established, however, that fundamental rights or liberties that are protected by substantive due process are those implicit in the concept of ordered liberty or derived from our Nation's history and tradition; they are not created by States.[3] *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017).

Plaintiff contends that, as a criminal defendant, he has a "fundamental" state-created property or liberty interest under N.J. Ct. R. 3:13-3 in obtaining discovery of Galfy's will and the Estate's financial records to prove his claims. As explained by the New Jersey Supreme Court in *State v. Desir*, 245 N.J. 179, 193 (2021), N.J. Ct. R. 3:13-3(b)(1) addresses the post-indictment discovery to which a New Jersey criminal defendant is entitled, and the Rule specifically codifies the criminal Defendant's right to exculpatory material, otherwise known as *Brady* material:

> Rule 3:13-3(b)(1) codifies the criminal defendant's "right to automatic and broad discovery of the evidence the State has gathered in support of its charges." *State v. Stein*, 225 N.J. 582, 594, 139 A.3d 1174 (2016) [quotation omitted]. That Rule "obligates the State to provide full discovery ... when an indictment is returned or unsealed," *State v. Robinson*, 229 N.J. 44, 72, 160 A.3d 1 (2017), "[e]xcept for good cause shown," R. 3:13-3(b)(1). Full discovery, under Rule 3:13-3(b)(1), "shall include exculpatory information or material." The Rule thus explicitly renders automatic the turnover of exculpatory evidence mandated

---

[3] Plaintiff alleges throughout his motion that he has a "fundamental right" to discovery under N.J. Ct. R. 3:13-3, but state-created rights are not protected by substantive due process and are only entitled to procedural protections.

> by the United States Supreme Court's holding in *Brady v. Maryland*.

*Id.* at 192-193.

But even assuming that Rule 3:13-3 provides a state-created right to discovery that is broader than the right to exculpatory material in *Brady*, Plaintiff's claims are still *Heck*-barred.[4] That is, regardless of how Plaintiff frames his due process claim, i.e., as arising under *Brady* or under Rule 3:13-3, Plaintiff has alleged that the Estate's financial records will substantiate his allegations that Galfy paid an expert witness not to testify, paid the medical examiner not to collect evidence of sexual assault, and paid the investigators in Plaintiff's case to destroy evidence of sexual assault, all of which deprived Plaintiff of the expert testimony and physical evidence he needed to prove he was drugged and raped by Galfy and acted in self-defense when he killed Galfy. Success on Plaintiff's claims would substantiate his defense(s) to the murder charge and necessarily undermine his first-degree murder conviction. For that reason, these claims, however framed, are barred by *Heck*.

---

[4] Plaintiff Complaint and Amended Complaint also fails to explain how the Rule requires the prosecution to turn over Joseph Galfy Jr.'s will or the Estate's financial records and documents. New Jersey Court Rule 3:13-3 lists specific categories of evidence the state has gathered against a criminal defendant and that list does not list third-party financial records, such as those from the victim's estate. *See* N.J. Ct. R. 3:13-3(1)(A)-(K). Moreover, the New Jersey courts have held that evidence in the control of third parties or crime victims are not subject to the disclosure under the Rule 3:13-3(b). *See State v. Chambers*, 252 N.J. 561, 583 (2023); *see also State v. Kane*, 449 N.J. Super. 119, 133 (App. Div. 2017) ("[E]vidence in the control of a crime victim -- notwithstanding the victim's close cooperation with the prosecution – is not within the prosecutor's 'possession, custody or control.' " (alteration in original) (quoting *State v. Robertson*, 438 N.J. Super. 47, 69 (App. Div. 2014))). The New Jersey Supreme Court has also recognized that "allowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws." *State v. R.W.*, 104 N.J. 14, 28 (N.J. 1986). Thus, in addition to being barred by *Heck*, Plaintiff's due process claim also fails to state a claim for relief because he has no state-created due process right as a criminal defendant to the Estate's financial records.

Plaintiff asks the Court to "reanalyze" his claims under *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989), *Bd. of Regents v. Roth*, 408 U.S. 564 (1972), and *Skinner v. Switzer*, 562 U.S. 521 (2011).[5]  The latter decision illustrates when a post-conviction claim for evidence is <u>not</u> barred by the favorable termination rule, but *Skinner* is readily distinguishable from Plaintiff's case.  There, the Supreme Court held "that a postconviction claim for DNA testing is properly pursued in a § 1983 action" and not barred by *Heck* because "[s]uccess in the suit gains for the prisoner only access to the DNA evidence, which may prove exculpatory, inculpatory, or inconclusive."  As explained by the Court, "a judgment that simply orders DNA tests" would not  "necessarily impl[y] the unlawfulness of the State's custody."[6]  *Skinner*, 562 U.S. at 525 (citing  *Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005)),

In contrast to the plaintiff in *Skinner*, Plaintiff is <u>not</u> seeking access to evidence that could be tested for DNA that might exonerate him, inculpate him, or prove inconclusive.  Instead,

---

[5] In support of his arguments, Plaintiff relies on three Supreme Court decisions.  Two of those decisions, *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989) (holding that Kentucky regulations do <u>not</u> give state inmates a liberty interest in receiving visitors that is entitled to the protections of the Due Process Clause) and *Bd. of Regents v. Roth*, 408 U.S. 564 (1972) (holding that the Fourteenth Amendment does <u>not</u> require opportunity for a hearing prior to the nonrenewal of a nontenured state teacher's contract, unless he can show that the nonrenewal deprived him of an interest in 'liberty' or that he had a 'property' interest in continued employment), are relevant to his claims only for their general discussion of state-created liberty and property rights.

[6] The Supreme Court warned, however, that its prior decision in *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 65-67 (2009) "severely limits the federal action a state prisoner may bring for DNA testing.  *Osborne* rejected the extension of substantive due process to this area, 557 U.S. at 72, and left slim room for the prisoner to show that the governing state law denies him procedural due process[.]" *Id.* (citing *Osborne* 557 U.S. at 71).  Indeed, to prevail on a procedural due process claim in the context of postconviction relief, a plaintiff must show that state's procedures "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or "transgresses any recognized principle of fundamental fairness in operation." *Osborne*, 557 U.S. at 69  (citing *Medina v. California*, 505 U.S. 437, 446, 448 (1992) (internal quotation marks omitted)).

Plaintiff has consistently asserted that that the Estate's financial records will show that Galfy made payments to Dr. Pandina, the medical examiner, and various investigators in order to deprive Plaintiff of crucial expert testimony and physical evidence, which, in turn, deprived him of a fair trial. Success on these claims necessarily undermines the validity of Plaintiff's murder conviction. This type of collateral attack upon a conviction is plainly barred by *Heck*. Thus, it does not matter whether Plaintiff reframes his claim as a post-conviction claim for evidence or any other constitutional claim—he is still using § 1983 to invalidate his murder conviction.

Plaintiff's also complains that he sued the UCPO Defendants in their administrative capacities with respect to their failure to provide him with the discovery items, but he appears to misunderstand the Court's ruling in this regard. The Court did not reach the issue of prosecutorial or absolute immunity or dismiss the personal-capacity claims against the UCPO Defendants on that basis. Instead, the Court dismissed the UCPO and <u>the official capacity claims for damages</u> against the individual UCPO defendants on the basis of Eleventh Amendment immunity and lack of personhood. *See Beightler v. Office of Essex Cty. Prosecutor*, 342 F. App'x. 829, 832 (3d Cir. 2009) (citing *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996); *see also Estate of Matthew Mckloskey v. Franklin Township*, 2016 WL 4680154, at *3 (D.N.J. Sept. 7, 2016) (collecting cases). The Court then addressed the remaining claims against the UCPO defendants in their personal capacities for damages and found that the claims were either *Heck*-barred or failed to state a claim for relief. The Court therefore denies reconsideration on this issue.

Plaintiff also claims that the Court applied the wrong standard in dismissing his defamation claim against UCPO Defendant Romankow. In his Complaint and Amended Complaint, Plaintiff alleges he was charged with Joseph Galfy Jr's death on May 16, 2013, and

that Romankow slandered him in the media during that general timeframe: "In connection with [Plaintiff's indictment for the homicide of Joseph Galfy, Jr.], the then-Union County Head Prosecutor Theodore Romankow… made numerous slanderous remarks about Plaintiff to the press." Complaint at ¶ 1. Plaintiff also alleged that Dr. Pandina's interview about the effects of date rape drugs would substantiate Plaintiff's allegations of slander against Romankow. *See id*. The Court dismissed the defamation claim against Defendant Romankow to the extent it was premised on section § 1983 because Romankow's slanderous statement or statements, standing alone, are not actionable under § 1983.[7] *See Paul v. Davis*, 424 U.S. 693 (1976) (holding that the Constitution does not deal with libel or slander by a public official),

Plaintiff contends that his claim against Romankow is governed by *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993). In that case, the prosecutor announced the plaintiff's indictment to the press and "informed the press about the contents of the indictment and added comments, such as his belief that the bootprint evidence would establish [plaintiff's] guilt and his belief that [plaintiff] was involved in a burglary ring." *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1242 (7th Cir. 1990). The prosecutor's allegedly slanderous statements were intertwined with a fabrication of evidence claim. As explained by the Supreme Court:

> The theory of petitioner's case is that in order to obtain an indictment in a case that had engendered "extensive publicity" and "intense emotions in the community," the prosecutors fabricated false evidence, and that in order to gain votes, Fitzsimmons made false statements about petitioner in a press conference announcing his arrest and indictment 12 days before the primary election. Petitioner claims that respondents' misconduct created a "highly prejudicial and inflamed atmosphere" that seriously impaired the fairness of the judicial proceedings against an innocent man and caused him to suffer a serious loss of freedom, mental anguish, and humiliation.

---

[7] The Court declined supplemental jurisdiction as to any claims arising under state law.

> The fabricated evidence related to a bootprint on the door of the Nicarico home apparently left by the killer when he kicked in the door. After three separate studies by experts from the Du Page County Crime Lab, the Illinois Department of Law Enforcement, and the Kansas Bureau of Identification, all of whom were unable to make a reliable connection between the print and a pair of boots that petitioner had voluntarily supplied, respondents obtained a "positive identification" from one Louise Robbins, an anthropologist in North Carolina who was allegedly well known for her willingness to fabricate unreliable expert testimony.

*Buckley v. Fitzsimmons*, 509 U.S. 259, 262 (1993). Buckley's claim regarding prosecutor's slanderous statements to the media fell outside the general rule in *Davis* because Buckley alleged a sufficient injury—that the prosecutor's slanderous statements "inflamed" the public, "resulting in deprivation of his right to a fair trial, and causing the jury to deadlock rather than acquit." *See Buckley*, 509 U.S. 259, 277.

The plaintiff in *Buckley* was free to allege that the prosecutor's slanderous statements denied him a fair trial because he was <u>not</u> convicted of any charges arising from the murder and did not face the *Heck* bar. As explained by the Supreme Court,

> the jury was unable to reach a verdict on the charges against petitioner [and] the trial judge declared a mistrial. Petitioner remained in prison for two more years, during which a third party confessed to the crime and the prosecutors prepared for petitioner's retrial. After Robbins died, however, all charges against him were dropped. He was released, and filed this action.

*Id.* at 264.

At issue in *Buckley* was whether the prosecutors were entitled to prosecutorial or absolute immunity for their fabrication of evidence and related statements at the press conference. *See id.* at 279 (reversing the Seventh Circuit "[a]s to the two challenged rulings on absolute immunity and remanding for further proceedings). This Court, however, did not find that the UCPO Defendants were entitled to prosecutorial/absolute immunity. Rather, it found that Plaintiff's defamation claim fell within the general rule articulated by *Davis* because he did not plead facts

showing how he was injured by the slanderous statements; indeed, Plaintiff does not even identify the content of the slanderous statements in his Complaint or his proposed Amended Complaint or provide facts to establish injury. Crucially, because Plaintiff was convicted of the murder of Joseph Galfy, Jr., he may not allege, as the plaintiff in *Buckley* did, that he was denied a fair trial and spent years in prison without bail due to the prosecutor's slanderous statements. For these reasons, *Buckley* is plainly distinguishable, and the Court denies reconsideration regarding the dismissal of the defamation claim against UCPO Defendant Romankow.

Plaintiff also contends that the Court summarized Dr. Pandina's statements about the effects of date rape drugs and the whereabouts of lockbox evidence incorrectly, but he fails to explain how these alleged errors affected the disposition of his claims. Reconsideration on these issues is likewise denied.

Plaintiff also complains that the Court's rulings about Dr. Pandina's testimony are confusing to him. In order to make out a due process violation, Plaintiff must allege that the favorable evidence would have produced a different verdict. *See Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). Because Plaintiff has been convicted of murder and has not set aside his conviction, he faces catch-22 with respect to his due process claims. That is, to the extent there is no reasonable probability that Dr. Pandina's testimony would have changed the outcome of his trial, Plaintiff fails to state a due process claim. To the extent he claims that Dr. Pandina's testimony would have changed the outcome of his trial, his claims are barred by *Heck*. The Court credited Plaintiff allegation that Dr. Pandina's testimony about the effects of date rape drugs would have substantiated his defense and found this claim was *Heck*-barred. There is no basis to reconsider this ruling, and reconsideration on this issue is denied.

Plaintiff also claims that the Court used the wrong standard in deciding his equal protection and selective enforcement claims. Motion at 15-16. Plaintiff alleged in his proposed Amended Complaint that he was deprived of equal protection of the law because Ho, Peterson, and UCPO did not investigate or prosecute Dr. Pandina, Galfy, or other wrongdoers in the Complaint, which amounts to selective enforcement. *See* Amended Complaint at ¶ 15. The Court found that these allegations failed as a matter of law, and the Court cannot conceive of facts Plaintiff could plead through amendment that would cure the deficiencies in these particular claims, including Plaintiff's new allegation that the "protected class" is all criminal defendants entitled to discovery. The Court denies reconsideration on this issue.

Plaintiff also now contends that the Court should construe his mention of "applicable statutes" in Complaint or Amended Complaint as an "inartfully" pleaded RICO claim, Motion at 17, but the Court disagrees.[8] Moreover, in opposing Defendants' motions to dismiss, Plaintiff did not claim that the Defendants overlooked his RICO claim, and reconsideration is not the place to raise a new theory or new claims for the first time. *See Federico v. Charterers Mut. Assurance Ass'n*, 158 F. Supp. 2d 565, 578 (E.D. Pa. 2001) ("A motion for reconsideration is not an opportunity for a party to present previously available evidence or new arguments."). The Court therefore denies reconsideration on this issue.

---

[8] Elements of civil claim under Racketeer Influenced and Corrupt Organizations Act (RICO) are: (1) conduct (2) of enterprise (3) through pattern (4) of racketeering activity, and (5) injury in plaintiff's business or property as result of alleged racketeering activity. *Poling v. K. Hovnanian Enterprises*, 99 F.Supp.2d 502, 507 (D.N.J. 2000). Plaintiff's Complaint or Amended Complaint did not allege any of these elements, including interference with business or property interests prohibited by RICO. See 18 U.S.C. § 1964(c). *See Hunt v. City of Scranton*, 236 F. App'x. 740, 741 (3d Cir. 2007).

Finally, Plaintiff contends that fraudulent concealment[9] and/or RICO claims against Galfy should proceed, and that he should be permitted to engage in discovery on the Estate's financial records and related documents. He asks the Court to sever these claims. *See* Motion at 19-20; Reply at 15-16. The Court, however, has dismissed all the § 1983 claims in this action, denied leave to amend, and declined supplemental jurisdiction over any remaining potential state law claims.[10] Therefore, the Court denies reconsideration on this issue.

For all these reasons, the Court denies Plaintiff's motion for reconsideration. An appropriate Order follows.

Date: March 28, 2023

 _____
 Madeline Cox Arleo
 United States District Judge

---

[9] Fraudulent concealment is a state law tort. *See Estate of Cordero ex rel. Cordero v. Christ Hosp.*, 403 N.J. Super. 306, 320–21 (N.J. Super. App. Div. 2008) (listing elements of fraudulent concealment) (citing *Rosenblit v. Zimmerman*, 166 N.J. 391, 406–07 (2001)). After dismissing the § 1983 claims, the Court declined supplemental jurisdiction over any potential state law claims.

[10] Plaintiff contends that his various claims did not accrue until February 2022 during the pendency of this action. The Court expresses no opinion about Plaintiff's allegations regarding the timeliness of his claims, but notes that nothing in the Court's opinions prevents Plaintiff from filing his <u>state law claims</u> in state court. Section § 1367(d) tolls a state limitations period or "stop[s] the clock" during the pendency of a federal suit and for 30 days after a court dismisses the federal action. *See Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018).