Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2025 JUL 10  A 10: 53    July 2, 2025

Clerk, US Dist. Ct. - DNJ
US Courthouse
50 Walnut Street
Newark, NJ 07102

     RE: Caleb L. McGillvary v. Galfy et al
     Civil Action No. 2:21-cv-17121-MCA-CLW
     Hon. Madeline Cox-Arleo, U.S.D.J.
     Hon. Cathy L. Waldor, U.S.M.J.

Dear Clerk;
    Please find enclosed and file onto the docket the service copy required by F.R.A.P. 21(a)(1) of my document filed in the mandamus proceeding in the U.S. Court of Appeals for the 3rd Circuit at 25-3031; and proof of service thereof; in the above-captioned matter.

                  Kind Regards,

                  Caleb L. McGillvary
                  In Propria Persona

ENCL:
CC: FILE

PROOF OF SERVICE

I, Caleb L. McGillvary, declare pursuant to 28 U.S.C. 1746 that on today's date, I placed in the institutional mailing system here where I'm incarcerated at NJ State Prison 3rd & Federal Streets Trenton, NJ 08625; with First Class Postage prepaid to be sent via USPS Mail; the copy required by F.R.A.P. 21(a)(1) of the following documents:

1.) My motion for recusal under 28 U.S.C. 455(a), (b);

2.) My Declaration in support of My motion for recusal under 28 U.S.C. 455(a), (b);

3.) Exhibits A to DD in support of My motion for recusal under 28 U.S.C. 455(a), (b);

in the matter docketed as 2:21-cv-17121-MCA-CLW to the Clerk of the District Court at USDC-DNJ US Courthouse 50 Walnut Street Newark, NJ 07102. Pursuant to the prison mailbox rule, these documents are constructively filed as of the date of mailing. Pursuant to F.R.A.P. 25(c)(1)(D), service may be by electronic means; and pursuant to F.R.A.P. 25(c)(2), if authorized by local rule, a party may use the Court's transmission equipment to make electronic service under F.R.A.P. 25(c)(1)(D). Pursuant to DNJ Local Civil Rules, upon said filing the Clerk files Plaintiff's document into the CM/ECF system. See DNJ L.Civ.R. 5.2.2 ("All civil ... cases and documents filed in this Court, will be entered into the Court's ECF System in accordance with these Procedures."). Upon entry of a document in CM/ECF, notice of electronic filing thereof ("NEF"); is automatically thereby sent to all CM/ECF-participating parties. See DNJ L.Civ.R. 5.2.1(d)("NEF is a notice automatically generated by the Electronic Filing System at the time a document is filed with the system..."). This NEF constitutes service upon all such parties. See DNJ L.Civ.R. 5.2.14(b)(1)("Transmission of the NEF constitutes service of the filed document on Filing Users"). Therefore, on today's date I have constructively also served a copy of each said document on all appearing captioned Defendants, who are represented by CM/ECF-user Counsel, by the Clerk's filing of same and sending of NEF thereto.

I hereby invoke the prison mailbox rule.

I declare under penalty of perjury that the foregoing statements made by me are true and accurate.

Executed this ___ Day of _____, 20__

_____
Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## No. 24-3031

RECEIVED

JUL 10 2025

AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

## IN RE: CALEB L. MCGILLVARY
Petitioner/Appellant

On Petition for Writ of Mandamus to the United States District Court for the District of New Jersey at Civil Action Number 2:21-cv-17121-MCA-CLW

## MOTION FOR RECUSAL UNDER 28 U.S.C. 455(a), (b)

CALEB L. MCGILLVARY
Third and Federal Street
New Jersey State Prison
Po Box 861
Trenton, NJ 08625-0861
*In Propria Persona*

## TABLE OF CONTENTS

MOTION UNDER 28 U.S.C. 455(a), (b)

...1

STATEMENT OF FACTS AND PROCEDURAL HISTORY

...1

LEGAL ARGUMENT

...16

POINT I: THE MEDICAL EXAMINER HAS STATED THAT HE SAW NEW JERSEY-LOCATED JUDGES, SOME POSSIBLY FEDERAL, CONGREGATED OUTSIDE THE CRIME SCENE; AND SINCE THE LOSS OR DESTRUCTION OF BRADY MATERIAL FROM THAT CRIME SCENE IS AT ISSUE IN THIS ACTION, IT OBJECTIVELY APPEARS THAT ONE OR MORE NJ FEDERAL JUDGES HAS PERSONAL KNOWLEDGE OF DISPUTED EVIDENTIARY FACTS REGARDING WHO ACCESSED THE CRIME SCENE

...13

A. STANDARD OF REVIEW

...13

B. ANALYSIS

...13

POINT II: THIS PETITION FOR MANDAMUS, LIKE THE PETITION FILED AT 24-1129, HAS BEEN QUEUED BEHIND ORDINARY CIVIL CASES ON THE APPELLATE DOCKET IN FLAGRANT DISREGARD OF F.R.A.P. 21(b)(6); AND SO IT REASONABLY APPEARS THAT THE PANEL JUDGES TO WHICH THIS MANDAMUS PETITION IS ASSIGNED SUFFERS FROM THE SAME APPEARANCE OF PERSONAL BIAS AS THE PANEL IN 24-1129

...14

**POINT III: THERE IS A LONG STANDING ROUTINE ORGANIZATIONAL PRACTICE BY OFFICIALS IN THE U.S. COURTHOUSES IN NEW JERSEY, OF OBSTRUCTION AND IMPEDIMENT OF PETITIONER'S CASES: WHICH CREATES THE APPEARANCE OF IMPRORPRIETY NECESSITATING RECUSAL OF CIRCUIT JUDGES LOCATED IN THE DISTRICT OF NEW JERSEY** ...17

A. STANDARD OF REVIEW ...17

B. ANALYSIS ...18

1. DNJ Officials' Refusal to File Petitioner's Documents ...18

2. DNJ Offical Tampering with the Record and Mischaracterizing Filings by Petitioner to Cause him Prejudice ...19

3. Undue Delay by Federal Judges in New Jersey ...20

4. Gamesmanship in Assignments and Orders ...21

5. Gamesmanship in Service of Process ...23

6. It Has Already Been Found to be in the Public Interest for the Scutari Case, the Habeas Case, and the Long Case to be Heard by a Judge from Outside the DNJ ...24

7. The Routine Organizational Practice of DNJ-Located Judicial Officials Creates the Appearance of Impropriety ...24

**POINT IV: EVERY JUDGE RECOMMENDED FOR NOMINATION BY UNREGISTERED FOREIGN AGENT BOB MENENDEZ WHO PETITIONER'S CASES HAVE THUS FAR BEEN ASSIGNED TO; HAS OBSTRUCTED THOSE CASES; WHICH CREATES THE APPEARANCE OF IMPROPRIETY THAT ANY OF MENENDEZ'S RECOMMENDATIONS SHOULD PRESIDE OVER THIS CASE** ...25

A. STANDARD OF REVIEW

...25

B. ANALYSIS    ...25

CONCLUSION    ...29

# TABLE OF AUTHORITIES

## CASELAW

<u>Alexander v Primerica  Holdings, Inc.</u>, 10 F.3d 155, 162 (CA3 1993)
...18

<u>McGillvary v. Davis</u>, Dkt. No. 1:22-cv-04185-MRH (USDC-DNJ)
...in passim

<u>McGillvary v. Galfy</u>, Dkt No. 2:21-cv-17121-MCA-CLW
...in passim

<u>McGillvary v. Long</u>, Dkt. No. 1:24-cv-09507-JMY
...14, 16, 18, 23, 24

<u>McGillvary v Scutari et al</u>, dkt no. 1:23-cv-22605-JMY
...in passim

<u>McGillvary v. U.S. Department of Homeland Security</u>, Dkt. No. 2:25-cv-01497-EP
...14, 15, 19


## STATUTES

28 <u>U.S.C.</u> 292(b)
...7, 8, 9, 18, 24

28 <u>U.S.C.</u> 455(a)
...1, 16, 17, 24, 28

28 <u>U.S.C.</u> 455(b)
...1, 16

28 <u>U.S.C.</u> 636(b)
...13

28 <u>U.S.C.</u> 1657(a)
...10, 17, 21

28 <u>U.S.C.</u> 2241
...15


## COURT RULES

<u>F.R.A.P.</u> 21(b)(6)
...8, 9, 13, 21

<u>F.R.A.P.</u> 27(c)
...9

<u>Fed. R. Civ. P.</u> 27(a)
...7, 19

<u>Fed. R. Civ. P.</u> 27(b) .................................................................4, 6, 8, 20

<u>Fed. R. Civ. P.</u> 72(b) ..........................................................................13

<u>F.R.E.</u> 406 ..................................................................................27

# TABLE OF CONTENTS

MOTION UNDER 28 U.S.C. 455(a), (b)
...1

STATEMENT OF FACTS AND PROCEDURAL HISTORY
...1

LEGAL ARGUMENT
...16

POINT I: THE MEDICAL EXAMINER HAS STATED THAT HE SAW NEW JERSEY-LOCATED JUDGES, SOME POSSIBLY FEDERAL, CONGREGATED OUTSIDE THE CRIME SCENE; AND SINCE THE LOSS OR DESTRUCTION OF BRADY MATERIAL FROM THAT CRIME SCENE IS AT ISSUE IN THIS ACTION, IT OBJECTIVELY APPEARS THAT ONE OR MORE NJ FEDERAL JUDGES HAS PERSONAL KNOWLEDGE OF DISPUTED EVIDENTIARY FACTS REGARDING WHO ACCESSED THE CRIME SCENE
...16

    A. STANDARD OF REVIEW
...16

    B. ANALYSIS
...16

POINT II: THERE IS A LONG STANDING ROUTINE ORGANIZATIONAL PRACTICE BY OFFICIALS IN THE U.S. COURTHOUSES IN NEW JERSEY, OF OBSTRUCTION AND IMPEDIMENT OF PETITIONER'S CASES: WHICH CREATES THE APPEARANCE OF IMPRORPRIETY NECESSITATING RECUSAL OF CIRCUIT JUDGES LOCATED IN THE DISTRICT OF NEW JERSEY
...17

    A. STANDARD OF REVIEW
...17

    B. ANALYSIS
...18

        1. DNJ Officials' Refusal to File Petitioner's Documents
...18

        2. DNJ Officals Tampering with the Record and Mischaracterizing Filings by Petitioner to Cause him Prejudice
...19

        3. Undue Delay by Federal Judges in New Jersey

...20

    4. Gamesmanship in Assignments and Orders

...21

    5. Gamesmanship in Service of Process

...23

    6. It Has Already Been Found to be in the Public Interest for the Scutari Case, the Habeas Case, and the Long Case to be Heard by a Judge from Outside the DNJ

...24

    7. The Routine Organizational Practice of DNJ-Located Judicial Officials Creates the Appearance of Impropriety

...24

POINT III: EVERY JUDGE RECOMMENDED FOR NOMINATION BY UNREGISTERED FOREIGN AGENT BOB MENENDEZ WHO PETITIONER'S CASES HAVE THUS FAR BEEN ASSIGNED TO; HAS OBSTRUCTED THOSE CASES; WHICH CREATES THE APPEARANCE OF IMPROPRIETY THAT ANY OF MENENDEZ'S RECOMMENDATIONS SHOULD PRESIDE OVER THIS CASE

...25

    A. STANDARD OF REVIEW

...25

    B. ANALYSIS

...25

CONCLUSION

...29

# TABLE OF AUTHORITIES

## CASELAW

Alexander v Primerica  Holdings, Inc., 10 F.3d 155, 162 (CA3 1993)
...18

McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH (USDC-DNJ)
...in passim

McGillvary v. Galfy, Dkt No. 2:21-cv-17121-MCA-CLW
...in passim

McGillvary v. Long, Dkt. No. 1:24-cv-09507-JMY
...14, 16, 18, 23, 24

McGillvary v Scutari et al, dkt no. 1:23-cv-22605-JMY
...in passim

McGillvary v. U.S. Department of Homeland Security, Dkt. No. 2:25-cv-01497-EP
...14, 15, 19


## STATUTES

28 U.S.C. 292(b)
...7, 8, 9, 18, 24

28 U.S.C. 455(a)
...1, 16, 17, 24, 28

28 U.S.C. 455(b)
...1, 16

28 U.S.C. 636(b)
...13

28 U.S.C. 1657(a)
...10, 17, 21

28 U.S.C. 2241
...15


## COURT RULES

F.R.A.P. 21(b)(6)
...8, 9, 13, 21

F.R.A.P. 27(c)
...9

Fed. R. Civ. P. 27(a)
...7, 19

<u>Fed. R. Civ. P.</u> 27(b)

...4, 6, 8, 20

<u>Fed. R. Civ. P.</u> 72(b)

...13

<u>F.R.E.</u> 406

...27

## MOTION UNDER 28 U.S.C. 455(a), (b)

Petitioner Caleb L. McGillvary ("Petitioner"), hereby moves to recuse Circuit Judge Patty Shwartz ("Judge Shwartz"); Circuit Judge Paul Brian Matey ("Judge Matey"); Circuit Judge Robert E. Cowen ("Judge Cowen"); Circuit Judge Michael A. Chagares ("Judge Chagares"); Circuit Judge Julio M. Fuentes ("Judge Fuentes"); and the judges currently on the panel to which this petition for mandamus is assigned ("Panel Judges"); pursuant to 28 U.S.C. 455(a), (b); by profferring the following grounds in supplemental support of his motion:

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff incorporates by reference the statement of facts from the motion to recuse filed in this Court's docket in the case McGillvary v. Scutari, App. No. 25-2000, at CM/ECF 32; and sets forth same herein. Additionally, Petitioner incorporates by reference his declaration in support of this motion and sets forth same herein.

On April 19, 2006, the alleged victim Joseph J. Galfy, Jr. ("Galfy") in the criminal case underlying the petition for writ of habeas corpus filed in McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH (USDC-DNJ)

1

("Habeas Case"); paid $500 to NJ Senator Nicholas P. Scutari ("Scutari") to secure a place at a fundraising gala.

On April 24, 2006, Galfy and Scutari attended a fundraising gala together at Lana's, 1300 Raritan Road, Clark, NJ; at which gala Galfy lobbied Scutari, who was a member of the NJ Senate Judiciary Committee, for the appointment of his law partner Robert Mega ("Judge Mega") to the NJ Bench. This lobbying was successful, and Scutari indeed nominated Judge Mega to the Bench.

On February 8, 2018, Judge Mega testified that he was law partners with Galfy at the firm Kochanski, Mega, & Galfy. He testified that the police officer in charge of the crime scene where Galfy was found, called him on his personal cell phone from the scene, and that the officer was a law client of his and Galfy's. At this same hearing, it was revealed that the medical examiner saw Judge Mega standing outside the crime scene with numerous other judges, some of which were possibly federal.

Judges Shwartz, Matey, Cowen, Chagares and Fuentes each practiced law in New Jersey prior to acceding to the federal bench; and have their judicial offices in the Federal Judicial Complexes located in

2

New Jersey which are implicated in the pattern of obstructions described in the documents herein incorporated and in this motion. Judges Shwartz, Matey, and Cowen were each born and raised in New Jersey. And Judge Shwartz was recommended for nomination after an "in-depth discussion" with former US Senator Bob Menendez on January 13, 2012.

Judge Chagares graduated Seton Hall University School of Law in 1987, and thereafter became an adjunct professor at Seton Hall University School of Law for the period from 1991 until 2006; during which time he attended numerous faculty functions, including but not limited to charity galas, fundraisers, and alumni events. One of the key prosecution witnesses in the U.S. District Court for the District of N.J. case McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH ("Davis Case"), Michael Timoni ("Timoni"); indicated that the alleged victim in the Davis Case was "very involved at the charities at Seton Hall University"; ECF 12.39, page 123 lines 14-15; and so it reasonably appears that Judge Chagares was personally familiar with the alleged victim over the course of at least 15 years of regular personal contact in the setting of Seton Hall University charity functions. In fact, the

dynamic of such interactions is more likely than not that of one between a faculty member and a wealthy benefactor, as evidenced by the purported last will and testament of the alleged victim, attached to the declaration in support of this motion as Exhibit A. This will shows that Judge Chagares' former workplace and alma mater was bequeathed $50,000, and that the workplaces of the medical examiner and drug effect expert witness in the Davis Case were each bequeathed $150,000. Judge Chagares went to school with the judge whose decision is at issue in this petition for mandamus, Hon. Madeline Cox Arleo ("Judge Arleo"); and can be presumed to have personal bias favoring her for reason of her being his classmate. Likewise, the subject matter of this petition is the deposition pursuant to Fed. R. Civ. P. 27(b) of the brother of the alleged victim in the Davis Case, concerning his disbursements from the estate of the deceased rapist to workplaces of numerous witnesses in the Davis Case. One such disbursement was to the former workplace and alma mater of Judge Chagares, Seton Hall University, in the amount of $50,000.

The declaration in support of this motion shows evidence creating the resonable appearance that the alleged victim in the Davis Case; was a

4

political lobbyist who used his influence to get judges nominated or recommended for nomination to the bench in New Jersey. Petitioner has filed an action against the political lobbying network of that lobbyist, which is currently on appeal to this Court at McGillvary v. Scutari, App. No. 25-2000 ("Scutari Case"). The Scutari Case alleges, amongst other things, that this lobbying network uses bribes and quid pro quo arrangements to secure nominations to the state and federal benches in New Jersey, including by recommendations from now-former U.S. Senator Bob Menendez. Bob Menendez was convicted since the filing of the Scutari Case, for using his office in precisely the way alleged in the complaint in the Scutari Case: offering recommendations for federal positions in quid pro quo arrangements for money and favors. See United States v. Menendez, Dkt. No. 1:23-cr-00490-SHS (S.D.N.Y.).

As alleged and supported with reliable evidence in the declaration in support of this motion, the medical examiner in the Davis Case, stated that he saw numerous judges, some possibly federal, congregated outside the crime scene of said alleged homicide in Clark, NJ. Whether Judges Shwartz, Matey, Cowen, Chagares, or Fuentes were personally

5

outside the scene or not, it reasonably appears that they or one of their colleagues with whom they regularly associate in the robing room, lunch facilities, and elsewhere in the federal judicial complexes in New Jersey; may have a vested personal bias in the matter, or have personal knowledge about who accessed the crime scene and what was brought into or out of it. Additionally, one or more of the judges whom the medical examiner saw outside the crime scene seems to be actively propagating official animus in the New Jersey vicinages which is evidenced by the pattern of obstructions listed in the original moving papers.

There have been numerous reassignments of the Davis case, none of which were explained in any published opinion or with any public accountability. The Davis case was reassigned after numerous obstructions to the case had been documented on the record, including documents going missing and the writ of habeas corpus being suspended. All three of the judges from which the case was reassigned, Hon. Madeline Cox Arleo ("Judge Arleo"); Hon. Michael Farbiarz ("Judge Farbiarz"); and Hon. Christine P. O'Hearn ("Judge O'Hearn"): held their judicial office in New Jersey and were recommended for

nomination by unregistered foreign agent Bob Menendez. Additionally, Petitioner's state trial judge, Hon. Robert A. Kirsch ("Judge Kirsch"); was nominated to the state bench by the same State Senator, Nicholas Scutari, whom Petitioner has shown evidence that the alleged victim in the Davis Case lobbied for other appointments to the state bench. Judge Kirsch was thereafter recommended for nomination to the federal bench by unregistered foreign agent Bob Menendez, and by that reason is now a federal judge. Judges Farbiarz and Arleo are located in the Newark Federal Judicial Complex, Judge Kirsch in Trenton, and Judge O'Hearn in Camden. Between the four of them, there is not a single Federal Judicial Complex in New Jersey in which there isn't a judge recommended for nomination by unregistered foreign agent Bob Menendez; and who has presumably had the Davis Case reassigned from themselves for reason of obstructing it; who regularly interacts with, and mingles regularly in the robing rooms and lunch facilities with, other judges in that complex.

The Chief Circuit Judge, Judge Chagares, faced with a petition for mandamus regarding the suspension of the writ of habeas corpus, implicitly found it was in the public interest for the Davis Case to be

7

heard by a judge from outside of New Jersey, and issued an order designating an out-of-district judge under 28 U.S.C. 292(b). However, Judge Chagares explicated no reason for his order, and behind the opacity of the unreasoned and unexplained order lies the implication that there is such official animus in the New Jersey Federal Judicial Complexes as to prevent Petitioner from receiving a fair decision on his Habeas Corpus petition by *any* of the judges located in New Jersey. Certainly, the appearance of impropriety of any New Jersey-located judge presiding over this case may be presumed by the entry of this order under 28 U.S.C. 292(b); and it appears to the reasonable observer that this is related to the numerous reassignments in the Davis Case, none of which were explained or held to public accountability.

It should be noted that an order under 28 U.S.C. 292(b) has been entered in two other cases besides the Davis Case: in the Scutari Case, and in McGillvary v. Long, Dkt. No. 1:24-cv-09507-JMY (D.N.J.) ("Long Case"). The very entry of these orders indicates the appearance of impropriety that any New Jersey-located judge should preside over this case.

When a petition for mandamus in the Davis case had an order for response entered on August 19, 2024; the order was inexplicably vacated the next day; followed by an action by the district court the day after that; and two days later an order denying the mandamus petition. This is a clear indication that the panel had discussions off the record with the district court in which they coordinated decisions in the case without making any published record of the discussions between the panel and district court underlying the decisions. Such opacity and evident denial of public access to Court Proceedings regarding important decisions in a case creates the objective appearance of impropriety. One of the Judges in this panel, Judge Shwartz, was recommended for nomination by Bob Menendez, after having an in-depth ex parte discussion with him on January 13, 2012. Two of the judges in this panel, Judges Shwartz and Chagares, practiced law in New Jersey prior to acceding to the bench, and have their current judicial office located in New Jersey.

According to the testimony of Michael Timoni in the state court trial of the Davis Case, the alleged victim in the Davis case was a "former judge in the military"; ECF 12.39, page 123 line 13; who was stationed

in West Germany during the Vietnam Conflict, in the middle of the Cold War, prosecuting homosexuals despite being one himself. As indicated above, Judge Chagares personally interacted with the alleged victim regularly at the Seton Hall University charities which both attended, Judge Chagares as a faculty member and the alleged victim as a wealthy benefactor. Judge Chagares is reasonably presumed to be acquainted with the fact of the alleged victim being a former military judge, and so his assignment of the Davis Case to Judge Mark R. Hornak ("Judge Hornak") should be viewed in this context. Judge Hornak is a member of the Committee on Judicial Security of the Judicial Conference of the United States. The alleged homicide of a former military judge, even in the context of self-defense against the former military judge's drug-facilitated sexual assault, has political implications to a member of the Committee on Judicial Security, who is tasked with ensuring the security of federal judges nationwide. The record clearly shows that there was an ex parte between Judge Hornak and at least one judge in the panel which Judge Chagares was a part of, as set forth above. Pursuant to this conversation, Judge Chagares and Judge Hornak both seemed to undertake actions involving the Davis

Case, but the subject of the conversation was not made part of the record. Because of Judge Chagares' 15 years of personal interactions as a faculty member with the wealthy benefactor who was the alleged victim in the Davis Case, and Judge Chagares' presumed knowledge that the wealthy benefactor was a former military judge, it reasonably appears to an impartial observer that the nature of the ex parte conversations between Judge Chagares and Judge Hornak were to convey to Judge Hornak that the case should be decided on political implications of the alleged victim being a former military judge based on Judge Hornak's priorities as a member of the Committee on Judicial Security, and not on the merits of the habeas petition or the basis of the law applied to the facts. Judge Hornak's refusal to address the allegations in Petitioner's Traverse and Reply; nor the December 27, 2018 written request to self-represent that was evidently deleted from the state court docket; nor the $150,000 each in bribes paid by the alleged victim's family to the medical examiner and drug effect expert's worplaces: all seem to converge on the point, that the habeas petition was decided based on political considerations of the alleged victim being a former military judge 50 years ago, instead of addressing the

11

fact that he drugged and raped vagrants. The alleged victim's will showing the $150,000 given to the medical examiner, was not made available to Petitioner before trial for the impeachment of the medical examiner, and Petitioner included a request to expand the record under Habeas Rule 7 to include this Brady evidence in his motion for summary judgment in the Davis Case. See DNJ ECF 44. This request, which would've made the bequeathal to Judges Chagares and Arleo's alma mater a matter of public record, was not addressed by Judge Hornak whatsover, seemingly pusuant to the ex parte conversations described above.

As of today's date, the Petition for mandamus at 24-3031 languishes behind ordinary civil cases on the docket.

This motion under 28 U.S.C. 455(a), (b) is now before the Court.

12

## LEGAL ARGUMENT

### POINT I: THE MEDICAL EXAMINER HAS STATED THAT HE SAW NEW JERSEY-LOCATED JUDGES, SOME POSSIBLY FEDERAL, CONGREGATED OUTSIDE THE CRIME SCENE; AND SINCE THE LOSS OR DESTRUCTION OF BRADY MATERIAL FROM THAT CRIME SCENE IS AT ISSUE IN THIS ACTION, IT OBJECTIVELY APPEARS THAT ONE OR MORE NJ FEDERAL JUDGES HAS PERSONAL KNOWLEDGE OF DISPUTED EVIDENTIARY FACTS REGARDING WHO ACCESSED THE CRIME SCENE

### A. STANDARD OF REVIEW

"Any [judge] shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. 455(a)

"Any [judge] shall disqualify himself [in] the following circumstances:

(1) Where he has [personal] knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. 455(b)(1)

### B. ANALYSIS

The Medical Examiner indicated having seen what he believed to be numerous judges standing outside the crime scene. See ECF 12.32, page 9 lines 8 to 18. Petitioner's petition under Rule 27(a) seeking to depose this M.E. has been stymied by the District of New Jersey for almost 2 years, so it remains uncertain whether the judges were federal or state judges, or what their identities are. Because of this uncertainty, whether or not any of the circuit judges from New Jersey

13

have actual bias, it appears as though one or more of them might have personal knowledge of the crime scene from which it is alleged in the instant habeas action that Brady material was lost or destroyed. This creates the objective appearance of impropriety that any circuit judge holding their office in New Jersey should preside over this petition, mandating their recusal under 28 U.S.C. 455(a) and/or 455(b)(1).

### POINT II: THIS PETITION FOR MANDAMUS, LIKE THE PETITION FILED AT 24-1129, HAS BEEN QUEUED BEHIND ORDINARY CIVIL CASES ON THE APPELLATE DOCKET IN FLAGRANT DISREGARD OF F.R.A.P. 21(b)(6); AND SO IT REASONABLY APPEARS THAT THE PANEL JUDGES TO WHICH THIS MANDAMUS PETITION IS ASSIGNED SUFFERS FROM THE SAME APPEARANCE OF PERSONAL BIAS AS THE PANEL IN 24-1129

The Federal Rules of Appellate Procedure Rule 21(b)(6) requires that mandamus petitions "must be given preference over ordinary civil cases." This rule has been found constitutional by the Supreme Court, as promulgated under the Rules Enabling Act, 28 U.S.C. 2072; and speaks in mandatory language that leaves no room for discretion. Yet nothwithstanding this, the Panel Judges have refused to advance this mandamus petition ahead of ordinary civil cases. In the months since this petition was docketed on October 30, 2024, dozens of ordinary civil

cases, including state law diversity disputes, have been decided; while this urgent mandamus petition languishes on the docket.

This echoes the same circumstance last year, in the mandamus petition filed at 24-1129. The panel presiding over that case allowed a whole term to expire while a mandamus petition concerning the suspension of the writ of habeas corpus languished on the docket behind diversity cases, disregarding 28 U.S.C. 1657(a) and U.S. Const. Art. I, §9, Cl. 2; as well as F.R.A.P. 21(b)(6). The panel in that petition was composed of Judges Chagares, Shwartz, and Restrepo: two of which may have been standing outside the crime scene, at least one of which was personally acquainted with the rapist alleged to have been killed by the petitioner in self-defense, and all three of which assigned to the panel by a judge who should rather have recused himself due to personal familiarity with the alleged victim. And that same familiarity seems to be tainting this petition for mandamus to order the deposition of that alleged victim's brother, who disbursed $50,000 to the alma mater and former workplace of Judge Chagares, and $100,000's more to expert witnesses in the criminal proceeding underlying the Davis Case.

15

The very fact of the currently-assigned Panel Judges refusing to honor F.R.A.P. 21(b)(6) should be enough to create the appearance of impropriety necessary for recusal; but when combined with the recurring pattern between the petition filed at 24-1129 and the instant petition, and the pattern of obstructions demonstrated by the State and Federal Courts located in New Jersey as set forth in the declaration in support of this motion; the appearance of impropriety takes on another level of official animus that appears to the reasonable outside observer to have tainted the currently-assigned Panel Judges with personal bias. This requires their recusal under 28 U.S.C. 455(a), (b).

## POINT III: THERE IS A LONG STANDING ROUTINE ORGANIZATIONAL PRACTICE BY OFFICIALS IN THE U.S. COURTHOUSES IN NEW JERSEY, OF OBSTRUCTION AND IMPEDIMENT OF PETITIONER'S CASES: WHICH CREATES THE APPEARANCE OF IMPRORPRIETY NECESSITATING RECUSAL OF CIRCUIT JUDGES LOCATED IN THE DISTRICT OF NEW JERSEY

### A. STANDARD OF REVIEW

"Whenever a judge's impartiality 'might reasonably be questioned' in a proceeding, 28 U.S.C. 455(a) commands the judge to disqulaify himself sua sponte in that proceeding. For purposes of 455(a) disqualification, it does not matter whether the district court judge

16

actually harbors any bias against a party or that party's counsel. This is so because 455(a) concerns not only fairness to individual litigants, but equally important, it concerns the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." <u>Alexander v Primerica Holdings, Inc.</u>, 10 F.3d 155, 162 (CA3 1993)(Internal quotations and citations omitted).

## B. ANALYSIS

An order under 28 <u>U.S.C.</u> 292(b) designating a judge outside the district for service requires a finding that such designation is in the public interest. This finding has already been made in the <u>Long Case</u>, the <u>Scutari Case</u>, and the <u>Habeas Case</u>, so it follows that the public interest requires Circuit Judges who preside over those cases to similarly be from outside of New Jersey. The sheer number of these tamperings with the record, refusal to file his documents, undue delay, and blatant gamesmanship with assignments and timing of orders; is so voluminous and recurrent as to invoke the doctrine of objective chances; and is evidence of a routine organizational practice of DNJ Officials obstructing Petitioner's cases:

17

## 1. DNJ Officials' Refusal to File Petitioner's Documents

Petitioner's Motion for Summary Judgment was received by the Newark Vicinage in the <u>Habeas Case</u> in early April 2023, but it wasn't until he sent it to all 3 vicinages, that the Clerk filed it on May 15, 2023. The Clerk at the Newark Vicinage received his motion to withdraw his motion to recuse Judge Kirsch on May 23, 2023; and his motion to withdraw his IFP application on June 6, 2023, yet these have never been filed onto the docket. The Clerk at the Camden Vicinage received his Rule 27(a) petition on November 16, 2023, yet never entered it onto the docket. The Clerk at the Camden Vicinage received his Brief in Opposition on September 30, 2024, yet refused to file it until January 17, 2025, and then only after a petition for writ of mandamus had been filed. Petitioner filed two letters to Judge Padin, the first of which was received early March of 2025 yet wasn't filed until after April 7, 2025. The second was received on March 31, 2025, yet has never been filed. Petitioner also filed a motion for preliminary injunction in that <u>DHS Case</u>, which was received on April 23, 2025, yet to this day has not been filed. There are too many of these refusals to file to be a matter of chance.

18

## 2. DNJ Officals Tampering with the Record and Mischaracterizing Filings by Petitioner to Cause him Prejudice

Judge Kirsch deleted the state court record prior to 2016 in Petitioner's Habeas Case. Petitioner's urgent motion for extension in the Scutari Case was filed instead in the Habeas Case on September 10, 2024. His letter to Judge Younge complaining that the Clerk was refusing to file his Brief in Opposition was mischaracterized by the Clerk as a Letter Brief in Opposition. His civil complaint under 8 U.S.C. 1359 was mischaracterized as a habeas petition. Even after several letters and a petition for mandamus clarifying it wasn't a habeas petition, Judge Padin persistently mischaracterized it as such. Even if one or two gaffes might be a fluke, all of this together couldn't be the work of chance.

## 3. Undue Delay by Federal Judges in New Jersey

Judge Kirsch called the NJ State Prison to have him placed on suicide watch and disrupt his direct appeal, in May of 2019. Judge Arleo delayed the show cause order in his Habeas Case from June to December 2022, until he petitioned for writ of mandamus. Judge Arleo obstructed his appeal, and with Judge Waldor delayed his Rule 27(b) motion in the Galfy Case from March of 2023 until the present.

19

Petitioner has filed a motion for Arleo to be recused, which she stymied, and his mandamus petition also requested her recusal, but that too was stymied by the panel's advancing ordinary civil cases on the 3rd Circuit docket ahead of it. Likewise with the mandamus petition in the <u>Scutari Case</u>, regarding the Clerk's refusal to file the Brief in Opposition to State Defendants: it has languished on the docket behind ordinary civil cases since November 2024. Judge O'Hearn suspended the writ of habeas corpus in January of 2024; Petitioner's mandamus petition was filed the next day; but it languished for the entire term, despite F.R.A.P. 21(b)(6) and 28 <u>U.S.C.</u> 1657(a). He wrote single judge motions to every judge in the Third Circuit, and a week later Judges Chagares, Shwartz, and Restrepo issued an order. He filed a motion to advance the <u>Habeas Case</u> pursuant to 28 <u>U.S.C.</u> 1657(a) in September 2024; which has languished through two separate yet nearly-identical reports & recommendations by the Judge Bumb-designated magistrate Judge Lanzillo. The objective chances of all the foregoing happening randomly are astronomical, this is a pattern of deliberate obstruction.

20

## 4. Gamesmanship in Assignments and Orders

Judge Arleo timed her decision on the Rule 59 motion in the Galfy Case to coincide with the due date for Respondent's Answer in the Habeas Case. This was gamesmanship to force Petitioner to choose between his appeal of the Rule 59 order and his Habeas Reply, considering his motion for extension of time in the Habeas Case was denied. Judge Bumb reassigned the case to Judge Farbiarz the day after Petitioner's motion to withdraw the motion for recusal of Judge Kirsch was received. That motion and a motion to withdraw Petitioner's IFP application went missing, which was gamesmanship to prevent Petitioner from representing himself on appeal under 3rd Circuit I.O.P 10.3.2. Judge Bumb reassigned the case again to Judge O'Hearn, who denied the pending motion for summary judgment without reading the papers a little over 21 hours after the reassignment. The reassignment seems gamesmanship designed to achieve that result. After the Habeas case was reassigned out of district, Judge Bumb designated Magistrate Judge Lanzillo to preside over it. Exactly 7 days after Bob Menendez and Judges Bumb and Arleo filed their motion to dismiss in the Scutari Case, Judge Lanzillo issued

a slapdash R&R that apparently used chatGPT to rewrite the Respondent's Answer in R&R form. Six months later, Menendez and Judges Bumb and Arleo filed an opposition to Petitioner's motion for final appealable order in the Scutari Case. Yet again, exactly 7 days later, Judge Lanzillo issued a nearly-identical R&R that threatened to deny the habeas petition and forfeit any appeal if not objected to within 14 days. This evident gamesmanship by Judge Lanzillo disrupted Petitioner's briefing schedule for responding to Menendez and Judges Bumb and Arleo both times. Perhaps one or another of these instances of timing might have been coincidence, but the repeated pattern defies objective chances.

## 5. Gamesmanship in Service of Process

Petitioner filed his USM-285 forms in the Scutari Case for La Cosa Nostra-affiliates Nicholas P. Scutari, Jeffrey Venezia, and Richard Alderiso in November of 2023, and for Bob Menendez in June of 2024. When a final order issued in that case almost two years later, the DNJ Clerk had still made no effort to serve Scutari. The Clerk only filed the USM-285 form indicating service on Bob Menendez the day after Petitioner petitioned the 3rd Circuit for mandamus. Venezia and

22

Alderiso appeared shortly thereafter, yet USM-285 forms were never filed by the Clerk for them. Likewise in the <u>Long Case</u>, Petitioner filed his USM-285 forms for Scutari in February of 2025. They were each given sneak peeks at Petitioner's arguments against every other Defendant by this gamesmanship by the Clerk in staggering service of process to favor La Cosa Nostra-favored Defendants. This happens too often, with too many Defendants, to be the work of objective chance.

## 6. It Has Already Been Found to be in the Public Interest for the Scutari Case, the Habeas Case, and the Long Case to be Heard by a Judge from Outside the DNJ

It is required under 28 <u>U.S.C.</u> 292(b) for the Chief Judge of the Circuit of Appeals to make findings of it being in the public interest to designate an out-of-district judge to hold a district court for a matter. This implicit finding has been made in the <u>Scutari Case</u>, the Habeas, Case, and the <u>Long Case</u>; and so it must be in the public interest for the appeals of each of those cases to be heard by Circuit Judges who are both outside of New Jersey, and not recommended for appointment by unregistered foreign agent Bob Menendez, as well.

23

## 7. The Routine Organizational Practice of DNJ-Located Judicial Officials Creates the Appearance of Impropriety

For all the foregoing reasons, Petitioner respectfully urges the Court to recuse all Circuit Judges holding office in New Jersey from this matter, pursuant to 28 U.S.C. 455(a)

## POINT IV: EVERY JUDGE RECOMMENDED FOR NOMINATION BY UNREGISTERED FOREIGN AGENT BOB MENENDEZ WHO PETITIONER'S CASES HAVE THUS FAR BEEN ASSIGNED TO; HAS OBSTRUCTED THOSE CASES; WHICH CREATES THE APPEARANCE OF IMPROPRIETY THAT ANY OF MENENDEZ'S RECOMMENDATIONS SHOULD PRESIDE OVER THIS CASE

### A. STANDARD OF REVIEW

Petitioner incorporates by reference the standard of review from "POINT I, A" above and sets forth same herein.

### B. ANALYSIS

As shown by evidence in the attached declaration, the alleged victim in the criminal case underlying Petitioner's Habeas Petition was a political lobbyist who got his law partner nominated to the state bench through Scutari. Scutari thereafter nominated Judge Kirsch to the state bench. Numerous judges, some possibly federal, were seen congregated outside the crime scene by the medical examiner. The lobbying network of the alleged victim included Bob Menendez, who

24

recommended the nomination of Judge Kirsch to the federal bench shortly after Petitioner's direct appeal was concluded. He also recommended Judges Arleo, Bumb, and Padin to the bench. The effect of this lobbying network seems to reach into the federal courts, and has resulted in the numerous instances of tamperings with the record, refusal to file documents, undue delay, and blatant gamesmanship with assignments, timing of orders, and service of process: as descibed in the Declaration in Support of this motion, incorporated by reference herein.

The network of appointments recommended by unregistered foreign agent Bob Menendez, and their hires, have attempted to reset the clock on his habeas petition five times after it became ripe on May 15, 2023: May 24, 2023; August 14, 2023, January 9, 2024, November 5, 2024, and May 15, 2025. Judge Bumb, along with Judges Padin, Arleo, O'Hearn, and Farbiarz, was recommended for appointment by that foreign agent, and she in turn assigned Judge Lanzillo to the <u>Habeas Case</u>. The doctrine of objective chances is properly invoked for the fact that all of the District Judges which Judge Bumb  assigned each of Petitioner's cases to were recommended by Menendez, and her habit

thus being established under F.R.E. 406, it follows that she acted in conformity therewith in her selection of Judge Lanzillo.

The pattern of a filing by Judge Bumb and Unregistered Foreign Agent Menendez in the Scutari case being entered onto the docket, and exactly 7 days later, during the middle of Plaintiff's time for response, Judge Lanzillo filing another extraneeous and nearly-identical R&R, is clear from the record. It seems to the objective observer as though Judge Lanzillo is trying to curry favor with the network of that unregistered foreign agent and their recommended appointments, in an effort to secure for himself a life-tenured District Judgeship at Petitioner's expense.

A reasonable person, informed of all these facts, would reasonably question the propriety of a Circuit Judge who's been recommended for appointment by former-U.S. Senator Bob Menendez presiding over the habeas petition of the Plaintiff in this case. Certainly, it would be inappropriate in the eyes of a reasonable person for such a judge to preside over this habeas petition while the Scutari Case is on appeal to the Third Circuit. This creates the reasonable appearance of impropriety and should warrant removal of Circuit

26

Judges recommended for appointment by Menendez from this case under 28 <u>U.S.C.</u> 455(a).

## **CONCLUSION**

For all of the foregoing reasons, it creates the appearance of impropriety that Judges Chagares, Matey, Shwartz, Cowen, Fuentes, or the Panel Judges should preside over this action. This requires their recusal under 28 U.S.C. 455(a) and/or 28 U.S.C. 455(b).

Date: 7/2/25

Respectfully Submitted,

Caleb L. McGilvlary
#1222665/SBI# 102317G
NJSP PO Box 861
Trenton, NJ 08625-0861

27

## CERTIFICATION OF COMPLIANCE PURSUANT TO F.R.A.P. 32 (a) (7) (C)

I, Caleb L. McGillvary, hereby certify that my motion contains 5,195 words, as determined by the word processing system used in preparing the brief (Microsoft Word 2013), exclusive of the title page, Table of Contents, Table of Authorities, and certificates.

7/2/25

_____
Caleb L. McGillvary

## CERTIFICATE OF PAPER FILING

I, Caleb L. McGillvary, hereby certify that I am filing my motion in paper form, and so a Certificate of Identical Text and Certificate of Virus Check is inapplicable.

7/2/25

_____
Caleb L. McGillvary

28

## CERTIFICATE OF SERVICE

I, Caleb L. McGillvary, hereby declare pursuant to 28 U.S.C. 1746 that on today's date I have placed a copy of my motion to recuse under 28 U.S.C. 455(a), (b) in the hands of correctional officials here at New Jersey State Prison, Third and Federal Street, Trenton, NJ, 08625-0861; with first class postage prepaid to be delivered via USPS Certified Mail to the following parties:

> Jeffrey Crothers, Adm'r NJSP, Atty. Gen. of N.J.
> c/o Amanda G. Schwartz, New Jersey Deputy Attorney General
> Office of the NJ Atty. Gen., Hughes Justice Complex
> 25 Market Street, PO Box 086
> Trenton, NJ 08625-0112

I declare under penalty of perjury that the foregoing statements are true and accurate

Date: 7/1/25

_____
Caleb L. McGillvary

29

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

RECEIVED

No. 24-3031

JUL 10 2025

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

## IN RE: CALEB L. MCGILLVARY
Petitioner/Appellant

On Petition for Writ of Mandamus to the United States District Court for the District of New Jersey at Civil Action Number 2:21-cv-17121-MCA-CLW

# DECLARATION OF CALEB L. MCGILLVARY IN SUPPORT OF MOTION FOR RECUSAL UNDER 28 U.S.C. 455(a), (b)

CALEB L. MCGILLVARY
Third and Federal Street
New Jersey State Prison
Po Box 861
Trenton, NJ 08625-0861
*In Propria Persona*

1

## DECLARATION OF CALEB L. MCGILLVARY

I, Caleb L. McGillvary ("Petitioner" or "Plaintiff"), hereby declare pursuant to 28 U.S.C. 1746 the following:

1.) I am the pro se Plaintiff in the above-captioned matter.

2.) The institutional mailing system where Plaintiff is confined at NJ State Prison requires him to fill out a "Form CO-30A" Postage remit for each outgoing piece of legal mail Plaintiff send. Plaintiff can select to send legal mail via certified mail with or without return receipt requested; but Plaintiff must personally fill out the "PS Form 3800" and "PS Form 3811"; and affix each to the piece of mail. The housing unit officer verifies that postage, and if selected the PS Form 3800 and PS Form 3811, is affixed; and that the name and address on each form, including the CO-30A, matches the name and address written on the piece of mail. Then, if they do match, the housing unit officer signs and witnesses the CO-30A, and logs the piece of mail into the unit officer's logbook. That same officer then delivers that mail to the postbox in the rotunda of the NJSP West Compound, which box is emblazoned with the logo of the US Postal Service.

2

3.) The US Postal Service ("USPS") has a website, "https://www.usps.com". On this website, a person can enter the tracking number of a piece of certified mail; and in reply, the USPS will display the current tracking history and status for that piece of mail. This information is publically posted by a Federal Government office on its website.

4.) On April 19, 2006, the alleged victim Joseph J. Galfy, Jr. ("Galfy") in the criminal case underlying the petition for writ of habeas corpus filed in McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH (USDC-DNJ) ("Habeas Case" or "Davis Case"); paid $500 to NJ Senator Nicholas P. Scutari ("Scutari") to secure a place at a fundraising gala. Attached hereto as Exhibit A is a true and accurate copy of the June 6, 2006 NJ Election Law Enforcement Commission report of Nicholas P. Scutari evidencing this.

5.) On April 24, 2006, Galfy and Scutari attended a fundraising gala together at Lana's, 1300 Raritan Road, Clark, NJ; See Exhibit A, pg. 3; at which gala Galfy lobbied Scutari, who was a member of the NJ Senate Judiciary Committee, for the appointment of his law partner

3

Robert Mega ("Judge Mega" or "Mega") to the NJ Bench. This lobbying was successful, and Scutari indeed nominated Mega to the Bench.

6.) On January 7, 2010, Scutari also nominated Robert A. Kirsch ("Kirsch" or "Judge Kirsch") to the NJ Bench. Attached hereto as Exhibit B is a true and accurate copy of the NJ Senate Judiciary Committee documents evidencing this.

7.) On December 12, 2016, Scutari nominated Judge Kirsch for reappointment to the NJ Bench. Attached hereto as Exhibit C is a true and accurate copy of the NJ Senate Judiciary Committee documents evidencing this.

8.) On February 8, 2018, prior to the start of trial, Robert Mega testified that he was a judge at the New Jersey Superior Court, Union County Vicinage - Criminal Division during May of 2013. Habeas Case ECF 12.32, P15L7-16. He stated that he was partners with Joseph Galfy, the alleged victim in this case, at the law firm Kochanski Mega & Galfy prior to acceding to the bench. See Id. at P15L17-P16L1. Mega testified that a Clark Police officer called him around 12:30pm on May 13, 2013, and informed him of the circumstances of the crime scene. See Id. at P17L13-20. Mega stated that the Clark Police officer who called him

4

was a client of his and Galfy's. See Id. at P17L18-20. The time of the call coincides with immediately after Clark Police officer Keith Meehan entered the crime scene, Meehan having arrived at the scene at around 12:26pm on May 13, 2013. See Id. at P40L11-P41L6. At this hearing, it was revealed that the medical examiner witnessed numerous judges, possibly including federal judges, gathered outside the crime scene as it was still under investigation. See Id. at P9L8-18. Attached hereto as Exhibit D is a true and accurate copy of the transcript of the February 8, 2018 hearing which shows Judge Mega's testimony thereat.

9.) On or about May 30, 2019, Judge Kirsch called the Essex County Correctional Facility ("ECCF") where plaintiff was then incarcerated, and made the misrepresentation to Dennis Sandrock, the psychologist in charge of Plaintiff's mental health care, that Plaintiff had engaged in a "screaming match with the judge" in the courtroom; the truth being that Plaintiff was shown by courtroom audio recordings never to have screamed in the Courtroom. Judge Kirsch intended to prevent Plaintiff from accessing law library and other services, by inducing Sandrock through his misrepresentation to place Plaintiff on "suicide watch." Sandrock did rely on Judge Kirsch's misrepresentation by placing

5

Plaintiff on suicide watch, and by calling the NJ State Prison where Plaintiff was transferred to and relaying the report given by Judge Kirsch, which Judge Kirsch also intended, causing Plaintiff to be placed on "suicide watch", deprived of law library services and clothing, and made to sleep on a concrete floor with nothing but a thin mat and Velcro closure gown and blanket. Judge Kirsch further intended to induce reliance on his misrepresentation by Sandrock and NJSP correctional healthcare to cause Plaintiff to be involuntarily medicated and kept indefinitely on suicide watch; to the end of depriving Plaintiff of the ability to appeal his criminal conviction; but Judge Kirsch's attempt for that was thwarted by the NJSP Mental Health Providers' observations that Plaintiff was not, in fact, in need of involuntary psych meds. Attached hereto as Exhibit E is a true and accurate copy of the mental health report showing that Judge Kirsch's misrepresentation to the County Jail was used as a basis for placing Petitioner on "suicide watch." The CourtSmart Audio of the May 30, 2019 hearing is available to this Court, and shows that Petitioner did not scream whatsoever during the hearing.

10.) On September 17, 2021, Plaintiff Caleb L. McGillvary (Hereinafter, "Plaintiff" or "Petitioner") filed the action <u>McGillvary v Galfy</u>, Dkt. No. 2:21-cv-17121-MCA-CLW in the U.S. District Court for the District of New Jersey ("Galfy Case"). This case was assigned to Hon. Madeline Cox Alreo, U.S.D.J. ("Judge Arleo") and Hon. Cathy L. Waldor, U.S.M.J. ("Judge Waldor").

11.) On June 22, 2022, Petitioner filed the habeas petition in the U.S. District Court for the District of New Jersey at <u>McGillvary v. Davis</u>, Dkt. No. 1:22-cv-04185-MRH ("Habeas Case"). This case was assigned to Judge Arleo.

12.) During the period from June 22, 2022 until December 2, 2022, Arleo refused to perform her duty of issuing a show cause order within a reasonable time, until mandamus from the 3rd Circuit was imminent.

13.) On or about July 28, 2022, Arleo issued an order refusing to dispose of the cross-claims of James Galfy in the Galfy Case; thereby obstructing his appeal at "McGillvary v Galfy et al" USCA-3rd Cir. App. No. 23-2188.

14.) On August 16, 2022, Plaintiff filed a Rule 59 motion in the Galfy Case.

7

15.) The Rule 59 motion in the Galfy Case was heard and decided by the same Judge Arleo who presided over Plaintiff's Habeas Case from its inception until 5/24/23. The motion was fully briefed and perfected on September 13, 2022. Judge Arleo waited until the day before the Respondent in the habeas case was due to file their answer to the show cause order, 3/29/23, to rule upon and enter her order denying the Rule 59 motion. Because of Judge Arleo's timing of her decision, Plaintiff was faced with urgent deadlines in the appeal of the Rule 59 motion, and the reply to the habeas case. In addition to the doubled deadline, Judge Arleo refused to rule upon the motion for extension of time until it was ultimately denied, 4 months, 2 judges, 2 mandamus petitions, and a vicinage later: for mootness. Judge Arleo's performance of the act of timing of her decision and nonperformance of the act of ruling on the motion for extension of time; were each designed to maximize the prejudice to Plaintiff in his ability to litigate his habeas petition.

16.) On October 27, 2022, after waiting 4 months for a show cause order to issue on his habeas petition, Petitioner filed a petition for writ of mandamus to the Third Circuit requesting them to order the District

Court to issue a show cause order. See In Re Caleb L. McGillvary, Dkt. No. 22-3068 (3rd Cir. 2022).

17.) On December 2, 2022, seemingly motivated by the petition for mandamus, the District Court issued a show cause order; See Habeas Case ECF 6.

18.) On March 3, 2023, Plaintiff had discovered that his trial judge in the criminal case underlying his habeas petition, Robert A. Kirsch, had been appointed to the federal bench in the District of New Jersey, so he filed a motion to recuse Judge Kirsch by mailing it on this date. On April 24, 2023, this motion was filed, and on May 3, 2023 it was entered.

19.) On March 29, 2023, Judge Arleo issued a decision denying the Rule 59 motion in the Galfy Case, starting the clock for filing an appeal.

20.) On March 30, 2023, Respondent State of NJ filed a Response to the Show Cause Order. Included as an appendix to their Response was the state court record. See, e.g. Habeas Case ECF 12.7. This appendix indicates Petitioner had filed numerous requests to proceed pro se, and motions seeking relief for Brady violations, which were both ignored and subsequently deleted from the State Court docket by Judge Kirsch.

9

See Habeas Case ECF 12.7, P.55a-56a. The State Court docket attached to Respondent's Answer also shows that all entries between 2013-2016 were purged from the docket, except for two cherry picked ones added in 2019. See Habeas Case ECF 12.7, Page 52a. Fed. R. Civ. P. 201(b)(1) allows the Court to take judicial notice of facts that are widely known and reported on. Federal Courts routinely take notice of news articles from major publications. See, e.g. Howard v. Arconic, Inc., 395 F.Supp.3d 516, 569 n.14 (W.D.PA June 21, 2019)(C.J. Hornak). Petitioner stated in his initial moving papers, that the entire docket of the State Court prior to 2016 had been deleted. However, the State Court did not delete the judicially noticeable news article reporting on the contents of that docket prior to its deletion:

> "[Petitioner] has studied law and then filed several motions in his criminal case, and filed state and federal lawsuits, both claiming authorities violated his right to due process by destroying evidence and failing to collect evidence that would prove his claim that the victim attempted to sexually assault him." NJ Advance Media, "3 Years and Counting, no trial yet for jailed youtube star 'Kai the Hitchhiker'" Tom Haydon (NJ.com) May 12, 2016 12:13pm (Updated May 12, 2016                                   1:13pm)
> https://www.nj.com/union/2016/05/kai_the_hitchhiker_wages_legal_battle_from_jail_fi.html

21.) On March 31, 2023, Plaintiff filed a motion to perpetuate testimony under Rule 27(b) in the Galfy Case, citing witness James Galfy's advanced age (He's at least 75 years old) as exigent circumstances requiring immediate action to preserve his testimony. Galfy Case ECF 74.

22.) During the period from March 31, 2023 until October 10, 2023, Arleo and Waldor delayed the disposition of the motion requesting discovery of the financial records he sought to discover with that action; knowing that Plaintiff would likely be prejudiced in his due process rights by the delay of the requested deposition; because of the high and daily-increasing increasing likelihood of death of the witness through old age.

23.) Plaintiff sent a motion for extension of time to file his habeas reply on April 5, 2023 to the DNJ via USPS certified mail. The tracking number for the certified mail, 70201810000155834962, on USPS.com still shows, to this day, that the piece of mail is "awaiting delivery scan"; despite the document already having been filed onto the docket on April 13, 2023; see Habeas Case ECF 13; because a DNJ official intercepted and obstructed the mail in violation of 18 USC 1700 et seq.

Attached hereto as Exhibit F is a true and accurate copy of the postage remit signed by Petitioner and witnessed by an NJDOC officer evidencing the mailing of this motion on this date. Attached hereto as Exhibit G is a true and accurate copy of the tracking information provided by the U.S. Postal Service for this parcel.

24.) Plaintiff sent Plaintiff's motion for summary judgment on Ground One of the habeas petition on April 5, 2023 to the DNJ via USPS certified mail. Attached hereto as Exhibit H is a true and accurate copy of the postage remit signed by Petitioner and witnessed by an NJDOC officer evidencing the mailing of this motion on this date.

25.) On 5/8/23, Plaintiff sent manila envelopes each containing Plaintiff's habeas traverse and reply, as well as Plaintiff's motion for summary judgment described in in the paragraph immediately preceding this one, to the USDC-DNJ's Camden, Trenton, and Newark vicinages. Plaintiff included Plaintiff's motion for summary judgment because it had still not been filed by the DNJ over a month after Plaintiff sent it. Plaintiff sent each of these envelopes via USPS certified mail, with only the Newark vicinage selected for return receipt requested. The tracking numbers show on USPS.com that

12

70201810000155834963 was delivered to the Camden vicinage on 5/12/23; that 70201810000155834887 was delivered to the Trenton vicinage on 5/15/23; and that 70201810000155834870 was delivered to the Newark vicinage on 5/12/23. Attached hereto as Exhibit I are true and accurate copies of the postage remits signed by Petitioner and witnessed by an NJDOC officer evidencing the mailing of these documents on this date.

26.) Plaintiff received a return receipt in the due course of mail from Plaintiff's manila envelope described in in the paragraph immediately preceding this one.. A DNJ official wrote "5/15/23" on the return receipt and sent it to Plaintiff through the mails. Attached hereto as Exhibit J is a true and accurate copy of this return receipt.

27.) After all 3 vicinages received Plaintiff's motion for summary judgment, 40 days after Plaintiff first sent it to the Newark vicinage, it was finally entered onto the docket on 5/15/23. On May 15, 2023, Petitioner's traverse and reply to the State's Answer to the Show Cause Order was filed by the Clerk, making the habeas petition ripe for a decision on this date.

13

28.) On 5/15/23, Plaintiff sent a motion to withdraw Plaintiff's motion to recuse Judge Kirsch in the habeas case to the DNJ via USPS certified mail, return receipt requested. Attached hereto as Exhibit K is a true and accurate copy of this motion. Attached hereto as Exhibit L is a true and accurate copy of the postage remit signed by Petitioner and witnessed by an NJDOC officer evidencing the mailing of this motion on this date.

29.) Plaintiff received a return receipt in the due course of mail from Plaintiff's motion to withdraw Plaintiff's motion to recuse Judge Kirsch Plaintiff sent to the USDC-DNJ Newark vicinage, described in in the paragraph immediately preceding this one.. A DNJ official wrote "5/23/23" on the return receipt, and sent it to Plaintiff through the mails. Attached hereto as Exhibit M is a true and accurate copy of this return receipt. Despite its delivery on 5/23/23; this motion to withdraw was never filed onto the docket in the habeas case. The District Court ruled on the motion which Plaintiff sought to withdraw on 8/15/23, denying it.

30.) On May 23, 2023, Plaintiff sent a motion to withdraw Plaintiff's IFP application in the habeas case to the DNJ via USPS certified mail,

return receipt requested. Attached hereto as Exhibit N is a true and accurate copy of this motion. Attached hereto as Exhibit O is a true and accurate copy of the postage remit signed by Petitioner and witnessed by an NJDOC officer evidencing the mailing of this motion on this date. On May 24, 2023, the case below was reassigned by Hon. Renee Marie Bumb, U.S.C.J. ("Judge Bumb") to Hon Michael E. Farbiarz, U.S.D.J. Judge Farbiarz was recommended for nomination by then-US Senator Bob Menendez.

31.) Plaintiff received a return receipt in the due course of mail from Plaintiff's motion to withdraw Plaintiff's IFP application in the Habeas Case which Plaintiff sent to the USDC-DNJ Newark vicinage, described in the paragraph immediately preceding this one. A DNJ official wrote "6/6/23" on the return receipt and sent it to Plaintiff through the mails. Attached hereto as Exhibit P is a true and accurate copy of this return receipt. Despite its delivery on 6/5/23; this motion to withdraw was never filed onto the docket in the habeas case. The District Court seems to be holding onto the IFP application to avail itself of the USCA-3rd Cir. Internal Operating Procedure which requires mandatory appointment of counsel for those granted IFP status in the District

15

Court on habeas; as an extremely inappropriate strategy to foist counsel upon Plaintiff so that he cannot argue his habeas petition pro se in the 3rd Circuit. It is the height of bias for a district judge to so strategize against a party, and the act represents retaliation against Plaintiff for his exercise of his 1st Amendment right to petition the government for redress of his 6th amendment right to self-represent.

32.) On August 14, 2023, the case below was reallocated to Camden, and reassigned by Judge Bumb to Hon. Christine P. O'Hearn, U.S.D.J. ("Judge O'Hearn") Judge O'Hearn was recommended for nomination by then-US Senator Bob Menendez. Judge Bumb reassigned the case to Judge O'Hearn on 8/14/23 at 1:10pm; and without reading the moving papers, Judge O'Hearn denied Plaintiff's motion for summary judgment on 8/15/23 at 10:26am citing Judge Bumb's decision.

33.) On September 28, 2023, Petitioner filed a petition for mandamus with the Third Circuit, complaining that the District Court was obstructing his habeas petition by playing Hot Potato with its assignment and refusing to file his motions onto the docket. He asked for the Chief Judge Renee Marie Bumb to be recused from his case, and

his case to be transferred to the Eastern District of Pennsylvania. See In Re Caleb L. McGillvary, 2023 U.S. App. LEXIS 31386 (3d Cir. 2023).

34.) On or about October 10, 2023 Judge Waldor refused to allow the deposition to perpetuate the testimony of James Galfy in the Galfy Case.

35.) On October 23, 2023, Plaintiff filed written objections to the magistrate's order, and appealed the magistrate's decision to the District Court pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. 636(b). Habeas Case ECF 87.

36.) On November 6, 2023, Petitioner filed a civil lawsuit pursuant to the Prison Mailbox Rule; naming, among others, the assignment Judge Bumb; his trial Judge Kirsch; the presiding habeas Judges Arleo and O'Hearn; and presiding civil Judges Arleo and Waldor; as defendants. In his complaint, he alleged that they engaged in racketeering activity including obstruction of justice on behalf of the network of the unregistered foreign agent who secured each of their appointments to the federal bench, former US Senator Robert Menendez. See McGillvary v Scutari et al, dkt no. 1:23-cv-22605-JMY ("Scutari Case").

17

37.) Plaintiff mailed a petition under Fed. R. Civ. P. 27(a) to preserve testimony, embodied by a complaint, civil cover sheet, and IFP Application, to the U.S.D.J. - D.N.J. Camden Vicinage at 402 E. State St., Camden, NJ 08101-2797 via certified mail, return receipt requested, on November 6, 2023. A copy of the cover letter, petition, declaration in support thereof, and Form JS-44 attached thereto: is attached hereto as Exhibit Q. A copy of the postage remit, signed by Plaintiff and witnessed by a correctional officer, evidencing the mailing of this petition on November 6, 2023, is attached hereto as Exhibit R.

38.) On November 16, 2023, rhis petition arrived at the U.S.D.J.-D.N.J. Camden Vicinage at 4th & Cooper Sts., Camden, NJ 08101-2979, the mistake in address notwithstanding. A DNJ Official employed and located at the Camden Vicinage; signed the return receipt for the parcel containing the petition, and it was stamped by the USPS as delivered to the Camden Vicinage on November 16, 2023. A copy of the return receipt evidencing that it was received by the U.S.D.J.-D.N.J. Camden Vicinage, and signed by a DNJ Official, on November 16, 2023: is attached hereto as Exhibit S.

39.) On December 1, 2023, Petitioner filed a motion to recuse Judge O'Hearn, citing amongst other reasons the complaints he filed with the District Court, the Federal Elections Commission, and the Department of Justice regarding her money laundering.

40.) On December 12, 2023, the Respondent State of NJ filed a response to the motion to recuse indicating that they would not oppose it.

41.) On December 15, 2023, Petitioner filed a motion to recuse Judges Cox-Arleo and Waldor, citing amongst other reasons the complaint he filed with the District Court in Scutari. Galfy Case ECF 89.

42.) On December 21, 2023, Chief Judge of the 3rd Circuit Michael A. Chagares intervened in McGillvary v Scutari et al and reassigned the case to a district judge outside of the District of NJ pursuant to 28 U.S.C. 292(b).

43.) On January 2, 2024, Chief Judge Chagares again reassigned the case to a different judge from the Eastern District of Pennsylvania, Hon. John Milton Younge, U.S.D.J. under 28 U.S.C. 292(b).

44.) On January 9, 2024, Hon. Christine P. O'Hearn ordered in regards to the pending motion to recuse that the habeas case was

19

administratively terminated pending the resolution of the Scutari Case; thereby suspending the writ of habeas corpus

45.) On January 10, 2024, Petitioner filed a petition for writ of mandamus to the Third Circuit, asking them to order the district Court to reopen his habeas case and designate an out-of-district Judge to rectify the constant obstruction of his petition by the District of New Jersey. See In Re Caleb L. McGillvary, Dkt. No. 24-1129 (3rd Cir. 2024). The end of the term came and went without any resolution of the pending mandamus petition, and many ordinary civil cases were advanced on the docket ahead of the mandamus petition while the writ of habeas corpus remained suspended; despite the mandate of F.R.A.P. 21(b)(6) that the mandamus petition be given precedence, and the mandate of 28 U.S.C. 1657(a) that the habeas petition be given precedence.

46.) On May 8, 2024, Hon. Madeline Cox-Arleo ordered in regards to the pending motion to recuse that the case was administratively terminated pending the resolution of the Scutari Case. See Galfy Case ECF 99.

47.) On July 19, 2024, Petitioner filed a motion under F.R.A.P. 27(c) to every Circuit Judge in the Third Circuit, requesting resolution of his mandamus petition under F.R.A.P. 21(b)(6).

48.) On July 26, 2024, Chief Judge of the 3rd Circuit Michael A. Chagares intervened in the above-captioned matter and reassigned this case to a district judge outside of the District of NJ pursuant to 28 U.S.C. 292(b); ECF 40.

49.) On July 29, 2024, Judge Bumb designated Hon. Richard A. Lanzillo, U.S.M.J. as the magistrate judge in this case, notwithstanding the motions to recuse her and the pending lawsuit against her.

50.) On August 16, 2024, Petitioner filed a motion to reopen the case; ECF 43; and a motion for summary judgment on Ground Two of his habeas petition; ECF 44.

51.) On August 19, 2024, it was revealed that two of the three judges on the panel that had advanced ordinary civil cases ahead of the mandamus petition contrary to F.R.A.P 21(b)(6)'s mandate were headquartered in the U.S. Courthouse in Newark, New Jersey; when Judges Chagares, Shwartz, and Restrepo ordered a response to the mandamus petition.

52.) On August 20, 2024, Judges Chagares, Shwartz, and Restrepo vacated their August 19, 2024 order.

53.) On August 21, 2024, the Court reopened this case, and Chief Judge Hornak referred the motion for summary judgment to Chief Magistrate Judge Lanzillo.

54.) On August 23, 2024, Judges Chagares, Shwartz, and Restrepo denied the mandamus petition at 24-2188 because the Habeas Case had been reassigned to Judge Hornak and re-opened.

55.) On September 10, 2024, Petitioner's letter to Judge Younge and motion for extension of time in the Scutari Case was filed in the Habeas Case. After a deluge of phonecalls to the Clerk, these urgent motions for extension of time were corrected to be entered onto the Scutari Case.

56.) On September 17, 2024, Petitioner filed a motion to advance the cause under 28 U.S.C. 1657(a) in the Habeas Case.

57.) On September 25, 2024, Plaintiff Caleb L. McGillvary (Hereinafter, "Plaintiff" or "Petitioner") filed his opposition to the State Defendants' Motion by Prison Mailbox Rule, sending same by USPS Certified Mail to the U.S. District Court for the District of New Jersey. This motion was received by the Court Below, who signed the return receipt, on

September 30, 2024. Attached hereto as Exhibit T is a true and accurate copy of the postage remits Petitioner filled out on September 25, 2024, 2024, which was witnessed by a Correctional Officer at NJ State Prison 3rd & Federal Streets, Trenton, NJ 08625 in Petitioner's presence. These postage remits show that the parcel weighed 15.3 oz., and cost $18.20 to ship via USPS Certified Mail, Return Receipt Requested.

58.) Plaintiff received return receipts in the due course of mail from his Brief in Opposition to State Defendants in the Scutari Case which Plaintiff sent to the USDC-DNJ Newark vicinage. A DNJ official wrote "9/30/24" on the return receipt and sent it to Plaintiff through the mails. Attached hereto as Exhibit U is a true and accurate copy of these return receipts.

59.) On September 24, 2025, Petitioner filed the complaint in McGillvary v. Long, Dkt. No. 1:24-cv-09507-JMY (USDC-DNJ) ("Long Case"); which was assigned by Chief Judge Chagares to Judge Younge pursuant to 28 U.S.C. 292(b).

60.) From September 30, 2024 until January 17, 2025, Plaintiff's brief in opposition to State Defendants, including Nicholas P. Scutari

("Scutari"), was not filed or entered by the Clerk of the DNJ in the Scutari Case

61.) On September 30, 2024, the Clerk of the DNJ had refused even after almost a year to serve process on La Cosa Nostra-affiliated Defendants Scutari, Jeffrey Venezia, Richard Alderiso, or Bob Menendez in the Scutari case, so Petitioner filed a petition for writ of mandamus to the Third Circuit to direct the Clerk to comply with the out of district Judge's order to serve process on Defendants in the Scutari Case. The Third Circuit entered this onto the docket at 24-2843 on October 10, 2024.

62.) On October 11, 2024, the USM-285 form for Bob Menendez was returned executed on the docket in the Scutari case.

63.) On October 21, 2024, the DNJ Clerk entered the service copy of the Petition for mandamus at 3rd Cir. Dkt. No. 24-2843 onto the docket for the District Court in the Scutari Case.

64.) On October 29, 2024, Judges Bumb, Arleo, and O'Hearn filed a motion to dismiss the Scutari Case.

65.) On October 30, 2024, Petitioner filed a petition for writ of mandamus in the Third Circuit at Dkt. No. 24-3031, asking the higher

court to direct Judge Arleo to recuse herself and thereafter to assign the Galfy case to an out of district judge and promptly resolve the urgent petition to perpetuate testimony under Rule 27 that had been pending for over a year.

66.) Plaintiff filed a letter to Judge Younge advising him that the Clerk was refusing to file his opposition to the State Motion, on November 1, 2024. However, the Clerk entered the letter onto the docket as a "Letter Brief in Opposition to State Defendant's Motion" on November 19, 2024; ECF 300; and refused to correct the docket entry upon telephone request to do so on November 20, 2024 at 9:00am. Attached hereto as Exhibit V is a true and accurate copy of the letter sent to Judge Younge regarding service in the Scutari case.

67.) On November 5, 2024, 7 days after Bob Menendez and Judges Bumb, Arleo, and O'Hearn filed their motion in the Scutari Case, Judge Lanzillo entered a Report & Recommendation (R&R) in the Habeas Case, during the briefing schedule for Bob Menendez's and Judges Bumb, Arleo, and O'Hearns' motions. Judge Lanzillo did not address Petitioner's motion to advance the cause whatsoever.

68.) On November 18, 2024, Petitioner timely filed objections to the R&R.

69.) On November 20, 2024, Judge Younge granted Petitioner's Petition for writ of mandamus, and issued the writ directing the Clerk of the DNJ to serve process upon defendants in the Scutari Case.

70.) On November 22, 2024, Venezia, Alderiso, and Robert Ryan filed a motion for extension of time to respond to the complaint in the Scutari Case, although no USM-285 forms were ever returned executed on any of them despite Petitioner's having filed USM-285 forms for each of them on April 3, 2024. See Scutari Case ECF 13

71.) On December 4, 2024, Judge Arleo vacated her previous order administratively terminating the Galfy Case, and issued a new order administratively terminating the Galfy Case, seemingly in an act of gamesmanship to obstruct the pending mandamus petition at 24-3031. Judge Arleo further explicated that the termination was pending resolution of Judicial Defendants including herself in the Scutari case, making clear that she would indefinitely prevent Petitioner from deposing the witnesses he sought to preserve the testimony of until he

26

dropped the claims against her. This is designed to pressure Petitioner to relinquish his claims against Judges Bumb, Arleo, O'Hearn, and unregistered foreign agent Menendez on threat of depriving him of testimony of key witnesses in his criminal proceeding through death by old age.

72.) On December 17, 2024, Respondent filed a response to Petitioner's objections in the Habeas Case, making the R&R ripe for review by the District Judge as of right under Fed. R. Civ. P. 72(b) and 28 U.S.C. 636(b).

73.) On December 19, 2024, Petitioner filed a petition for writ of mandamus at 3rd Cir. Dkt. no. 24-3327, requesting the Clerk of the DNJ to file and enter his State BIO onto the docket. To this day, this petition remains pending behind ordinary civil cases on the docket, despite F.R.A.P. 21(b)(6).

74.) On January 17, 2025, faced with the pending mandamus petition at 3rd Cir. Dkt. No. 24-3327, the Clerk of the DNJ entered Petitioner's State BIO in the Scutari Case.

75.) On February 20, 2025, Petitioner filed a complaint alleging a cause of action under 8 U.S.C. 1359 and the Jay Treaty, i the U.S. District

27

Court for the District of New Jersey at McGillvary v. U.S. Department of Homeland Security, Dkt. No. 2:25-cv-01497-EP ("DHS Case"). Although Petitioner sent this case to the Camden vicinage, Judge Bumb assigned it to Hon. Evelyn Padin, U.S.D.J. ("Judge Padin") in the Newark Vicinage. Although Petitioner clearly indicated his action was not a habeas petition. the Clerk entered this civil complaint as a "Petition for Writ of Habeas Corpus" on February 27, 2025.

76.) On February 24, 2025, Petitioner filed the first amended complaint in the Long Case, adding Scutari as a defendant. Plaintiff filed together with his FAC USM-285 forms for Scutari and other defendants, containing information for the US Marshal to effect service of process.

77.) On March 3, 2025, Plaintiff sent a letter to Judge Padin, indicating that the filing erroneously designated as a petition for writ of habeas corpus was in fact a civil complaint, and asking her to please correct the docket to reflect that it wasn't a habeas petition. Attached hereto as Exhibit X is a true and accurate copy of the postage remit signed by Petitioner and witnessed by an NJDOC officer evidencing the mailing of this letter on this date.

28

78.) On March 18, 2025, Plaintiff sent a second letter to Judge Padin, reiterating that the civil complaint was not a habeas petition and urgently requesting that it not be construed as such because such a construction would prejudice his ability to file future habeas petitions regarding his immigration issues. Attached as Exhibit Y is a true and accurate copy of this letter. Attached hereto as Exhibit Z is a true and accurate copy of the postage remit signed by Petitioner and witnessed by an NJDOC officer evidencing the mailing of this letter on this date.

79.) On March 31, 2025, the return receipt for the Second letter to Judge Padin was signed for by the Clerk of the DNJ. Attached hereto as Exhibit W is a true and accurate copy of this return receipt.

80.) On April 7, 2025, Judge Padin issued an order denying the civil complaint, and construing it to request relief under 28 U.S.C. 2241 despite Petitioner's repeated explicit statements that he did not seek relief under 28 U.S.C. 2241 because to do so would prejudice him in his ability to do so in the future. In her order, she refers to the IFP application as "D.E. 3"; indicating that on April 7, 2025 the docket entry at #3 in that case was the IFP application and not a letter to Judge Padin.

81.) At some time after the April 7, 2025 order was entered in the DHS Case, the Clerk of the DNJ entered the first letter to Judge Padin as being entered on March 20, 2025. The second letter to Judge Padin has never been entered onto the docket.

82.) On April 9, 2025, not having received notice of the order entered on April 7, 2025, Petitioner sent a motion for preliminary injunction in the DHS Case to the DNJ's Newark Vicinage. Attached hereto as Exhibit AA is a true and accurate copy of the notice of this motion. Attached hereto as Exhibit BB is a true and accurate copy of the postage remit signed by Petitioner and witnessed by an NJDOC officer evidencing the mailing of this letter on this date.

83.) On April 23, 2025, the return receipt for the motion for preliminary injunction in the DHS Case was signed for by the Clerk of the DNJ. To this date, it has never been entered onto the docket. Attached hereto as Exhibit CC is a true and accurate copy of this return receipt.

84.) On April 24, 2025, Petitioner filed a motion for a final appealable order in the Scutari Case.

85.) On May 8, 2025, Judges Bumb, Arleo, and O'Hearn, together with unregistered foreign agent Bob Menendez, filed an opposition to Petitioner's motion for final appealable order.

86.) On May 13, 2025, Judge Younge issued a final appealable order in the Scutari Case.

87.) On May 15, 2025, out of the clear blue sky, and while the objections to the R&R were pending before the District Judge in the instant case, Judge Lanzillo filed an amended Report & Recommendation. The amended report and recommendation was identical to the first, word for word, in every respect, except for two minor style alterations and the removal of a single spurious footnote. This filing indicated that Plaintiff had only 14 days to file objections or would waive his right to appeal his habeas petition, and effectively gave Respondent a second bite at the apple, all while Petitioner was within the 30 day window to file his papers initiating an appeal in the Scutari Case. This purported amended R&R appears to have no substantive purpose other than to disrupt Petitioner's ability to litigate the Scutari Case, to attempt to reset the clock yet again (for the FIFTH time) the ripeness of his petition for adjudication, and apparently to attempt a second time to

bar his appeal with the 14 day limit for objections to the R&R. The magistrate undertook this filing without jurisdiction, the pending appeal to the District Judge under Rule 72(b) having stripped him of jurisdiction over the R&R and petition. Notably, Judge Lanzillo did not address or mention the motion to advance the cause.

88.) On May 19, 2025, Petitioner sent a letter to Judge Younge in the Long Case asking him to again issue the writ of mandamus, because the Clerk of the DNJ was refusing to serve process upon Scutari. To this date, the Clerk of the DNJ has not served Scutari in the Scutari Case after almost 2 years, nor the Long Case after almost 6 months.

89.) As of today's date, the motion to advance the cause under 28 U.S.C. 1657(a) in the Habeas Case remains pending. Numerous ordinary civil cases, including diversity cases, have been advanced by the District Court on the docket in front of this habeas case while the motion languishes.

90.) As of today's date, the petition for mandamus filed at 24-3031 to recuse Judge Arleo and adjudicate the urgent Rule 27 petition remains pending. Numerous ordinary civil cases have been advanced on the

docket ahead of this mandamus petition, despite the direction of F.R.A.P. 21(b)(6) to give the mandamus petition precedence.

91.) As of today's date, the petition for mandamus filed at 24-3327 also remains pending. Numerous ordinary civil cases have been advanced on the docket ahead of this mandamus petition, despite the direction of F.R.A.P. 21(b)(6) to give the mandamus petition precedence.

92.) Hon. Michael A. Chagares graduated from Seton Hall University School of Law in 1987, and is a member of the alumni association of that college. He was also an adjunct professor at the Seton Hall University School of Law from 1991-2006, according to the biography of himself shown at https://www.ca3.uscourts.gov

93.) Attached hereto as Exhibit DD is a copy of the Last Will and Testament of Joseph J. Galfy, Jr., and attached ceritifaction of a public official making this document self-authenticating. Joseph J. Galfy was the alleged victim in the state criminal homicide case underlying my habeas petition filed in the U.S. District Court for the District of New Jersey at McGIllvary v. Davis, Dkt. No. 1:22-cv-04185-MRH ("davis Case"). On page 3 of the last will and testament, the alleged victim, apparently bequeathed $50,000 to Judge Chagares' alma mater and

33

former employer, in addition to the $150,000 each he purportedly gave to the workplaces of the medical examiner and drug effect expert in the state criminal homicide case underlying the Davis Case.

94.) The pattern of facts set forth above show that one or more DNJ officials have a custom or policy of colluding with one or more USPS officials to intercept mail at USPS processing facilities; and thereafter to tamper with and obstruct the mails, by interference with the certified mail and return receipt procedures for tracking of parcels. Numerous DNJ Official have availed themselves of this custom or policy with the wilful, knowing intention of obstructing Plaintiff's habeas proceeding and related civil proceeding.

95.) Judges Kirsch, Arleo, O'Hearn, and Padin were each recommended for nomination by former US Senator Bob Menendez. Each of these Judges subsequent to their nomination oversaw a case in which Plaintiff was challenging his conviction, confinement, or future detention. Each of these Judges oversaw or participated in the refusal to file documents from Petitioner, onto the docket, the destruction or deletion of documents from the docket, or the entry of orders onto the docket with timing indicative of gamesmanship to prejudice Petitioner

34

in his pending cases. The doctrine of objective chances is properly invoked to show that Judge Bumb is deliberately assigning Petitioner's such cases to Judges who were recommended by Menendez; and to show that those Judges are obstructing Petitioner's cases by a pattern of refusal to file cases onto the docket, deleting docket entries, and timing orders in cases to prejudice Petitioner in other cases by stacking deadlines atop deadlines in a strategy of gamesmanship designed to overwhelm Petitioner.

96.) The Clerk of the DNJ has refused to file Plaintiff's documents onto the docket in numerous cases, filed documents onto the wrong docket, timed the service of process upon certain defendants in a staggered way so as to give Scutari and other La Cosa Nostra-affiliated defendants like Robert Menendez, Jeffrey Venezia and Richard Alderiso unfair advantages, and refusing to serve process upon La Cosa Nostra-favored defendants like Scutari, Venezia, Alderiso, and Menendez. During the entire pendency of the Scutari Case, no service of process was ever attempted by the Clerk of the DNJ upon Scutari, despite USM-285 forms being provided for him on April 3, 2024. As of the date of this motion, no service of process was ever attempted by the Clerk of the

35

DNJ upon Scutari in the Long Case, either: despite USM-285 forms for Scutari being provided.

I declare under penalty of perjury that the documents attached hereto are true and accurate copies of the originals.

I declare under penalty of perjury that the foregoing statements are true and accurate.

Executed this 2 day of ___July___, 20 25

_____
Caleb L. McGillvary, ProSe
#1222665/SBI#102317G NJSP
PO Box 861, Trenton, NJ 08625

36



# EXHIBIT A

| FORM R-1 | REPORT OF CONTRIBUTIONS AND EXPENDITURES | REPORT (CHECK ONE) |
|---|---|---|

**NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION**
P O Box 185, Trenton, NJ 08625-0185
(609) 292-8700 or Toll Free Within NJ 1-888-313-ELEC (3532)
Web site  http //www elec state nj us/

REPORT (CHECK ONE)
- ☐ 29 - DAY PRE-ELECTION
- ☐ 11 - DAY PRE-ELECTION
- ☐ 20 - DAY POST-ELECTION
- ☐ Apr 15,_____
- ☒ July 15, 2006
- ☐ Oct 15,_____
- ☐ Jan 15,_____

CANDIDATE OR COMMITTEE NAME
_Election Fund of Scutari_

STREET ADDRESS
_20 Kennedy Drive_

Amendment  Yes ☐  No ☐

| CITY Clark | STATE NJ | ZIP CODE 07066 |
|---|---|---|

For State Use Only

**ELEC RECEIVED**

JUL 1 7 2006

| COUNTY Union | ELECTION DISTRICT OR MUNICIPALITY 22nd District |
|---|---|

| POLITICAL PARTY, IF ANY Democrat | OFFICE SOUGHT State Senator |
|---|---|

| ELECTION DATE 6/5/07 | ELECTION TYPE (CHECK ONE) ☒ PRIMARY ☐ RUN-OFF | ☐ MUNICIPAL ☐ SCHOOL | ☐ GENERAL ☐ SPECIAL |
|---|---|---|---|

**SUMMARY TABLES**   DO NOT ATTEMPT TO COMPLETE TABLES I AND II UNTIL APPROPRIATE SCHEDULES HAVE BEEN COMPLETED

| TABLE I  RECEIPTS | THIS REPORT | CUMULATIVE TO DATE |
|---|---|---|
| 1  MONETARY CONTRIBUTIONS OF $300 OR LESS | $ 3,667.75 | $ 4,509.44 |
| 2  MONETARY CONTRIBUTIONS IN EXCESS OF $300 AND ALL CURRENCY CONTRIBUTIONS [Schedule A] | $ 75,600.00 | $ 89,716.90 |
| 3  IN-KIND CONTRIBUTIONS OF $300 OR LESS | $ | $ |
| 4  IN-KIND CONTRIBUTIONS IN EXCESS OF $300 [Schedule B] | $ 1,500.00 | $ 4,028.07 |
| 5  LOANS RECEIVED IN EXCESS OF $300 AND ALL CURRENCY LOANS [Schedule C] | $ | $ |
| 6  SUB TOTAL                    (ADD LINES 1 THRU 5) | $ 80,767.75 | $ 98,254.41 |
| 7  REFUND OF EXCESSIVE CONTRIBUTIONS [Adjustment Schedule]        (-) | $ 2,200.00 | $ 2,200.00 |
| 8  TOTAL CONTRIBUTIONS | $ 78,567.75 | $ 96,054.41 |
| 9  ADD FUNDS TRANSFERRED FROM PRIOR CAMPAIGN        (+) | $ | $ 56,714.53 |
| 10  TOTAL RECEIPTS                    (ADD LINE 8 + LINE 9) | $ 78,567.75 | $ 152,768.94 |

| TABLE II  EXPENDITURES | | |
|---|---|---|
| 1  DISBURSEMENTS -CAMPAIGN EXPENSES [Schedule 1(D)] | $ 5,723.77 | $ 9,684.74 |
| 2  DISBURSEMENTS - OTHER [Schedule 2(D)] | $ 7,073.61 | $ 17,439.30 |
| 3  DISBURSEMENTS - CONTRIBUTIONS MADE TO OTHER CANDIDATES/COMMITTEES [Schedule 3(D)] | $ 300.00 | $ 29,505.00 |
| 4  CONTRIBUTIONS MADE ON BEHALF OF OTHERS [Pro Rata Amount Schedules 1(D) and 2(D)] | $ | $ |
| 5  IN-KIND CONTRIBUTIONS OF $300 OR LESS (TABLE I, LINE 3) | $ | $ |
| 6  IN-KIND CONTRIBUTIONS IN EXCESS OF $300 (TABLE I, LINE 4) | $ 1,500.00 | $ 4,028.07 |
| 7  SUB TOTAL                    (ADD LINES 1 THRU 6) | $ 14,597.38 | $ 60,657.11 |
| 8  REFUNDED DISBURSEMENTS [Schedule F]        (-) | $ 1,000.00 | $ 2,000.00 |
| 9  TOTAL EXPENDITURES                    (LINE 7 MINUS LINE 8) | $ 13,597.38 | $ 58,657.11 |

New Jersey Election Law Enforcement Commission  January 2005                                    FORM R-1

## SCHEDULE A
### Monetary Contributions in Excess of $300 and All Currency Contributions

| CONTRIBUTOR NAME | EMPLOYER NAME |
|---|---|
| Grigory S. Rasin, MD | Self |

| CONTRIBUTOR ADDRESS | EMPLOYER ADDRESS |
|---|---|
| ████████ | ████████ |

| | CHECK IF CURRENCY ☐ | AGGREGATE AMOUNT $ 500 | DATE(S) RECEIVED 4/17/06 | AMOUNT(S) RECEIVED THIS PERIOD $ 500 |
|---|---|---|---|---|
| OCCUPATION Doctor | | | | |

| CONTRIBUTOR NAME | EMPLOYER NAME |
|---|---|
| Richard D Barker | Office of the Public Defender |

| CONTRIBUTOR ADDRESS | EMPLOYER ADDRESS |
|---|---|
| ████████ | 172 A New St<br>New Brunswick, NJ 08901 |

| | CHECK IF CURRENCY ☐ | AGGREGATE AMOUNT $ 500 | DATE(S) RECEIVED 4/21/06 | AMOUNT(S) RECEIVED THIS PERIOD $ 500 |
|---|---|---|---|---|
| OCCUPATION Attorney | | | | |

| CONTRIBUTOR NAME | EMPLOYER NAME |
|---|---|
| Joseph J. Galfy, Jr | Kochanski, Baron & Galfy, PC |

| CONTRIBUTOR ADDRESS | EMPLOYER ADDRESS |
|---|---|
| ████████ | 2353 St. Georger Ave.<br>Rahway, NJ 07065 |

| | CHECK IF CURRENCY ☐ | AGGREGATE AMOUNT $ 500 | DATE(S) RECEIVED 4/19/06 | AMOUNT(S) RECEIVED THIS PERIOD $ 500 |
|---|---|---|---|---|
| OCCUPATION Attorney | | | | |

| CONTRIBUTOR NAME | EMPLOYER NAME |
|---|---|
| Alfred Mea | Berkeley Development Co. |

| CONTRIBUTOR ADDRESS | EMPLOYER ADDRESS |
|---|---|
| ████████ | P.O. Box 62<br>Berkeley Heights NJ 07922 |

| | CHECK IF CURRENCY ☐ | AGGREGATE AMOUNT $ 1,000 | DATE(S) RECEIVED 4/14/06 4/19/06 | AMOUNT(S) RECEIVED THIS PERIOD $ 500 500 |
|---|---|---|---|---|
| OCCUPATION Developer | | | | |

| CONTRIBUTOR NAME | EMPLOYER NAME |
|---|---|
| Allied Health Center | |

| CONTRIBUTOR ADDRESS | EMPLOYER ADDRESS |
|---|---|
| 2202 Park Ave<br>South Plainfield, NJ 07080 | |

| | CHECK IF CURRENCY ☐ | AGGREGATE AMOUNT $ 1,000 | DATE(S) RECEIVED 4/19/06 | AMOUNT(S) RECEIVED THIS PERIOD $ 1,000 |
|---|---|---|---|---|
| OCCUPATION Chiropractic Center | | | | |

| (COMPLETE THIS LINE FOR EVERY PAGE USED) | TOTAL, THIS PAGE | $ 3,500 |
|---|---|---|
| (COMPLETE THIS LINE FOR LAST PAGE USED) | GRAND TOTAL | $ |

## Schedule 1(D) - Disbursements
## Campaign Expenses

| Date | Check # | Name | Address | City, State | Purpose | | Amount |
|------|---------|------|---------|-------------|---------|---|--------|
| 4/20/2006 | 1228 | Elizabeth Opacity | 10 Cherokee Road | Cranford, NJ 07016 | Reimbursement for fund raiser labels | $ | 33 37 |
| 4/24/2006 | 1229 | Lana's | 1300 Raritan Road | Clark, NJ 07066 | Payment for fund raising dinner | $ | 5,456 00 |
| 4/24/2006 | 1230 | Lana's | 1300 Raritan Road | Clark, NJ 07066 | Tip for banquet event staff | $ | 120 00 |
| 5/12/2006 | 1231 | Elizabeth Opacity | 10 Cherokee Road | Cranford, NJ 07016 | Reimbursement for envelopes & labels | $ | 16 88 |
| 5/24/2006 | 1235 | Elizabeth Opacity | 10 Cherokee Road | Cranford, NJ 07016 | Reimbursement for "thank you" stationary | $ | 97 52 |

TOTAL.  $   5,723 77

EXHIBIT B

018/018



STATE OF NEW JERSEY
OFFICE OF THE GOVERNOR
P.O. BOX 001
TRENTON
08625
(609) 292-6000

JON S. CORZINE
GOVERNOR

January 4, 2010

Honorable Richard J. Codey
President of the Senate

Sir:

I hereby nominate for appointment, with the advice and consent of the Senate, Robert Kirsch, of Westfield, to fill the vacancy created by the retirement of John Triarsi, as a Judge of the Superior Court, for the term prescribed by law.

Sincerely,

Jon S. Corzine
Governor

PAUL A. SARLO
Chair

JOHN A. GIRGENTI
Vice-Chair

NIA H. GILL
RAYMOND J. LESNIAK
NICHOLAS P. SCUTARI
BOB SMITH
BRIAN F. STACK
LORETTA WEINBERG
BILL BARONI
CHRISTOPHER "KIP" BATEMAN
JENNIFER BECK
GERALD CARDINALE
JOSEPH M. KYRILLOS, JR.



PATRICIA K. NAGLE
Office of Legislative Services
Committee Aide
(609) 292-5526
(609) 292-6510 fax

**New Jersey State Legislature**
SENATE JUDICIARY COMMITTEE
STATE HOUSE ANNEX
PO BOX 068
TRENTON NJ 08625-0068

2ND
REVISED
COMMITTEE NOTICE

TO:      MEMBERS OF THE SENATE JUDICIARY COMMITTEE

FROM:    SENATOR PAUL A. SARLO, CHAIRMAN

SUBJECT: COMMITTEE MEETING – JANUARY 7, 2010

*The public may address comments and questions to Patricia K. Nagle, Committee Aide, or make bill status and scheduling inquiries to Nina Riccardi, Secretary, at (609)292-5526, fax (609)292-6510, or e-mail: OLSAideSJU@njleg.org. Written and electronic comments, questions and testimony submitted to the committee by the public, as well as recordings and transcripts, if any, of oral testimony, are government records and will be available to the public upon request. This does not apply to information or remarks concerning the character or qualifications of any person nominated by the Governor which are brought to the attention of the committee considering the nomination. However, oral remarks delivered in a public meeting concerning a nominee are available to the public if recorded or transcribed.*

The Senate Judiciary Committee will meet on Thursday, January 7, 2010 at 10:00 AM in Committee Room 4, 1st Floor, State House Annex, Trenton, New Jersey.

THE FOLLOWING NOMINATIONS WERE RELEASED:

The following nomination(s) will be interviewed:

TO BE REAPPOINTED AS JUDGES OF THE SUPERIOR COURT:

*William A. Daniel, of Linden, for the term prescribed by law.

*Garry J. Furnari, of Nutley, for the term prescribed by law.

*Stephen Holden, of Merchantville, for the term prescribed by law.

*Thomas Manahan, of Scotch Plains, for the term prescribed by law.

*Lourdes Santiago, of Jersey City, for the term prescribed by law.

(OVER)

Senate Judiciary Committee
Page 2
January 7, 2010

TO BE JUDGES OF THE SUPERIOR COURT:

Lawrence Jones, of Toms River, for the term prescribed by law.

Robert Kirsch, of Westfield, for the term prescribed by law.

Anthony Massi, of Robbinsville, for the term prescribed by law.

Hany Mawla, of North Brunswick, for the term prescribed by law.

Edward McBride, Jr., of Pennsauken, for the term prescribed by law.

Frances McGrogan, of Franklin Lakes, for the term prescribed by law.

Alberto Rivas, of Perth Amboy, for the term prescribed by law.

Marybeth Rogers, of North Bergen, for the term prescribed by law.

Esther Suarez, of Wayne, for the term prescribed by law.

Thomas Walsh, of Westfield, for the term prescribed by law.

*Cathy Wasserman, of Caldwell, for the term prescribed by law.

*Ronald Wigler, of Livingston, for the term prescribed by law.

TO BE ADMINISTRATIVE LAW JUDGES:

Michael Antoniewicz, of North Bergen, for the term prescribed by law.

Robert Bingham, II, of Ewing Township, for the term prescribed by law.

**Evelyn Marose, of Ridgewood, for the term prescribed by law.

**Leland McGee, of Scotch Plains, for the term prescribed by law.

Kimberly Moss, of East Orange, for the term prescribed by law.

John Russo, Jr., of Toms River, for the term prescribed by law.

John Spence, Jr., of Haddonfield, for the term prescribed by law.

Tahesha Way, of Wayne, for the term prescribed by law.

**Tiffany Williams, of South Plainfield, for the term prescribed by law.

(OVER)

Page 4 of 9

SENATE JUDICIARY COMMITTEE

Date of Meeting: _____ 1/7/2010 _____    Date of Filing with Secretary: _____ 1/7/2010 _____

*10 am meeting*

On motions on the following bills as indicated, the vote was as follows:

| Members | Attendance | | | | | |
|---|---|---|---|---|---|---|
| SARLO, PAUL A., Chair | P | Y | Y | Y | Y | Y |
| GIRGENTI, JOHN A., Vice-Chair | P | Y | Y | Y | | Y |
| GILL, NIA H. | P | Y | Y | Y | | Y |
| LESNIAK, RAYMOND J. | P | Y | Y | Y | Y | Y |
| SCUTARI, NICHOLAS P. | P | Y | Y | Y | | Y |
| SMITH, BOB | P | Y | Y | Y | | Y |
| STACK, BRIAN P. | P | Y | Y | Y | | Y |
| WEINBERG, LORETTA | P | Y | Y | Y | | Y |
| BARONI, BILL | P | Y | Y | Y | | Y |
| BATEMAN, CHRISTOPHER | P | Y | Y | Y | Y | Y |
| BECK, JENNIFER | P | Y | Y | Y | | Y |
| CARDINALE, GERALD | P | Y | Y | Y | Y | Y |
| KYRILLOS, JR. JOSEPH M. | P | Y | Y | Y | Y | Y |

_____ Chair

JU-054
January 7, 2010
Page 1 of 1

## NOMINATIONS REPORTED OUT OF COMMITTEE

TO BE A JUDGE OF THE SUPERIOR COURT:

Robert Kirsch, of Westfield, for the term prescribed by law.

SARLO, PAUL A.

GIRGENTI, JOHN A.

GILL, NIA H.

LESNIAK, RAYMOND J.

SCUTARI, NICHOLAS P.

SMITH, BOB

STACK, BRIAN P.

WEINBERG, LORETTA

BARONI, BILL

BATEMAN, CHRISTOPHER

BECK, JENNIFER

CARDINALE, GERALD

KYRILLOS, JOSEPH M., JR.

EXHIBIT C



STATE OF NEW JERSEY
OFFICE OF THE GOVERNOR
P.O. Box 001
TRENTON
08625
(609) 292-6000

CHRIS CHRISTIE
GOVERNOR

November 14, 2016

Honorable Stephen M. Sweeney
President of the Senate

Sir:

    I hereby nominate for appointment, with the advice and consent of the Senate, **Robert Kirsch** of **Westfield**, to succeed himself, as a **Judge of the Superior Court**, for the term prescribed by law.

Sincerely,

Chris Christie
Governor



NICHOLAS P. SCUTARI
*Chair*

NIA H. GILL
*Vice-Chair*

RAYMOND J. LESNIAK
NELLIE POU
PAUL A. SARLO
BOB SMITH
BRIAN P. STACK
LORETTA WEINBERG
CHRISTOPHER "KIP" BATEMAN
GERALD CARDINALE
MICHAEL J. DOHERTY
JOSEPH M. KYRILLOS, JR.
KEVIN J. O'TOOLE

DAVID J. LORETTE
*Office of Legislative Services*
*Committee Aide*
(609) 847-3865
(609) 292-6510 fax

# New Jersey State Legislature

## SENATE JUDICIARY COMMITTEE

STATE HOUSE ANNEX
PO BOX 068
TRENTON NJ 08625-0068

**3RD**
**REVISED**

## COMMITTEE NOTICE

TO: MEMBERS OF THE SENATE JUDICIARY COMMITTEE

FROM: SENATOR NICHOLAS P. SCUTARI, CHAIRMAN

SUBJECT: **COMMITTEE MEETING - DECEMBER 12, 2016**

*The public may address comments and questions to David J. Lorette, Committee Aide, or make bill status and scheduling inquiries to Nina Riccardi, Secretary, at (609)847-3865, fax (609)292-6510, or e-mail: OLSAideSJU@njleg.org. Written and electronic comments, questions and testimony submitted to the committee by the public, as well as recordings and transcripts, if any, of oral testimony, are government records and will be available to the public upon request. This does not apply to information or remarks concerning the character or qualifications of any person nominated by the Governor which are brought to the attention of the committee considering the nomination. However, oral remarks delivered in a public meeting concerning a nominee are available to the public if recorded or transcribed.*

---

**The Senate Judiciary Committee will meet on Monday, December 12, 2016 at *2:00 PM in Committee Room 4, 1st Floor, State House Annex, Trenton, New Jersey.**

**THE FOLLOWING NOMINATIONS WERE RELEASED:**

The following nomination(s) will be interviewed:

TO BE REAPPOINTED AS JUDGES OF THE SUPERIOR COURT:

Daniel D'Alessandro, of Jersey City, for the term prescribed by law.

James M. DeMarzo, of Madison, for the term prescribed by law.

Mary Gibbons Whipple, of Morristown, for the term prescribed by law.

Robert Kirsch, of Westfield, for the term prescribed by law.

Joseph L. Marczyk, of Absecon, for the term prescribed by law.

Anthony M. Massi, of Robbinsville, for the term prescribed by law.

Edward J. McBride, Jr., of Pennsauken, for the term prescribed by law.

Frances A. McGrogan, of Franklin Lakes, for the term prescribed by law.

(OVER)

Page _1_ of _5_

## SENATE JUDICIARY COMMITTEE

Date of Filing with Secretary: _____ 12/12/16

Date of Meeting: _12/12/16_

On motions on the following bills as indicated, the vote was as follows:

| Members | Attendance | Kirsch Nom | Paine Nom | Rivera Nom | Vignuolo Nom | McGogney Nom |
|---|---|---|---|---|---|---|
| | | | Y | Y | Y | Y |
| SCUTARI, NICHOLAS P., Chair | P | Y | Y | Y | Y | Y |
| GILL, NIA H., Vice-Chair | P | Y | Y | Y | Y | Y |
| LESNIAK, RAYMOND J. | P | Y | Y | Y | Y | Y |
| POU, NELLIE | P | Y | Y | Y | Y | Y |
| SARLO, PAUL A. | P | Y | Y | Y | Y | Y |
| SMITH, BOB | P | Y | Y | Y | Y | Y |
| STACK, BRIAN P. | P | Y | Y | Y | Y | Y |
| WEINBERG, LORETTA | P | Y | Y | Y | Y | Y |
| BATEMAN, CHRISTOPHER | P | Y | Y | Y | Y | Y |
| CARDINALE, GERALD | P | Y | Y | Y | Y | Y |
| DOHERTY, MICHAEL J. | P | Y | Y | Y | Y | Y |
| KYRILLOS, JR. JOSEPH M. | P | Y | Y | Y | Y | Y |
| O'TOOLE, KEVIN J. | P | Y | Y | Y | Y | Y |

Chair

JU-196
December 12, 2016
Page 1 of 1

## NOMINATIONS REPORTED OUT OF COMMITTEE

TO BE REAPPOINTED AS A JUDGE OF THE SUPERIOR COURT:

Robert Kirsch, of Westfield, for the term prescribed by law.

SCUTARI, NICHOLAS P.

GILL, NIA H.

LESNIAK, RAYMOND J.

POU, NELLIE

SARLO, PAUL A.

SMITH, BOB

STACK, BRIAN P.

WEINBERG, LORETTA

BATEMAN, CHRISTOPHER

CARDINALE, GERALD

DOHERTY, MICHAEL J.

KYRILLOS, JOSEPH M., JR.

O'TOOLE, KEVIN J.

EXHIBIT D

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CRIMINAL PART
MIDDLESEX COUNTY
INDICTMENT NO. 16-05-00344
APP. DIV. NO. A-004519-18

STATE OF NEW JERSEY

      v.

CALEB L. McGILLVARY,

       Defendant.

:
:
:
:
:
:
:
:

TRANSCRIPT
OF
MOTION

Place:   Middlesex County Superior Court
56 Paterson Street
New Brunswick, NJ 08903-0964

Date:   .February 8, 2018

BEFORE:

    HONORABLE ALBERTO RIVAS, A.J.S.C.

TRANSCRIPT ORDERED BY:

    MATTHEW LUCIUS MILLER, ESQ. (Meyerson and O'Neill)

APPEARANCES:

    SCOTT M. PETERSON, ESQ. (Asst. Prosecutor)
    (Union County Prosecutor's Office)
    Attorney for the State

    JOHN G. CITO, ESQ. (Assigned by the Office of the
    Public Defender)
    Attorney for the Defendant

    Transcriber:   Rebecca Y. Natal, AD/T 557

    Agency:   KLJ Transcription Service, LLC
    P.O. Box 8627
    Saddle Brook, NJ  07663
    (201) 703-1670

    Digitally Recorded
    Operator - Emile Tomaro

EXHIBIT
30
PENGAD-Bayonne, N.J.

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

2

I N D E X

| WITNESS<br>FOR THE DEFENSE | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Sabine Fleurimond | 5 | 10 | 12 | |

| FOR THE STATE | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Judge Robert Mega | 15 | 18 | | |

| ARGUMENT | PAGE |
|---|---|
| BY:  Mr. Cito | 26 |
| BY:  Mr. Peterson | 32 |
| THE COURT - Ruling | 34 |

| EXHIBIT | ID. | EVID. |
|---|---|---|
| D-1  Report of Investigator Fleurimond | 6 | |

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

3

1  THE COURT: Okay. We're hearing the matter
2  of the State of New Jersey versus Caleb McGillvary
3  Indictment Number 16-05-0344. Can I have appearance of
4  counsel?
5  MR. CITO: Good afternoon, Your Honor. I'm
6  John Cito, C-I-T-O for Mr. McGillvary.
7  MR. PETERSON: Scott Peterson on behalf of
8  the State.
9  THE COURT: All right. We're here to conduct
10  a 104 Hearing with respect to allegations that the
11  Medical Examiner made when he was being interviewed by
12  -- from the Prosecutor's [sic] Office or law
13  enforcement [sic].
14  Mr. Peterson, you have a witness you wish to
15  call?
16  MR. PETERSON: I do, Your Honor. But I
17  believe that Mr. Cito is calling his witness first.
18  THE COURT: Okay.
19  MR. PETERSON: His investigator, which is how
20  this came about.
21  THE COURT: All right.
22  MR. CITO: Your Honor, I have no problem if
23  you want to go out of turn --
24  THE COURT: No.
25  MR. CITO: -- and get Judge Mega. I mean, if

4

1  --
2  THE COURT: No. Go ahead.
3  MR. CITO: Okay. I have my investigator
4  who's in the hallway. Sabine.
5  (Pause in proceedings)
6  COURT OFFICER: Ma'am, turn the phone off.
7  Ma'am, if you would, step up to the box.
8  (Pause in proceedings)
9  MR. CITO: Scott, you already have that with
10  the letter I just --
11  COURT OFFICER: Place your left hand on -- on
12  the Bible. Raise your right. State your name for the
13  Court.
14  MS. FLEURIMOND: Sabine Fleurimond.
15  S A B I N E   F L E U R I M O N D, DEFENSE WITNESS,
16  SWORN
17  COURT OFFICER: Thank you, ma'am. Please be
18  seated.
19  THE COURT: All right. Ma'am, could you
20  state your name again? I didn't hear you.
21  MS. FLEURIMOND: Sabine Fleurimond.
22  THE COURT: Could you spell the last name?
23  MS. FLEURIMOND: F like in Frank, L-E-U-R-I-
24  M-O-N-D.
25  THE COURT: Thank you. Okay. All right, Mr.

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

5

```
1    Cito.
2              MR. CITO:  Thank you, Your Honor.
3    DIRECT EXAMINATION BY MR. CITO:
4         Q    Ma'am, by whom are you employed?
5    A    Your office.  Your office.
6         Q    Are -- okay.  Are you employed by a -- as an
7    investigator?
8    A    Yes, I am.
9         Q    Okay.  And your employer was actually the
10   State of New Jersey, Public Defender's Office?  There's
11   no jury here.  So we can --
12   A    Okay.  Yes, I am.
13        Q    Okay.  All right.  And on behalf of my
14   client, Mr. McGillvary, I asked you to partake in an
15   interview that we did of the Medical Examiner?
16   A    Yes.
17        Q    Okay.  And you were present during that exam?
18   A    Yes, I was.
19        Q    At the question and answering session
20   I'm talking about with -- yes?
21   A    Yes.
22        Q    Okay.  You issued a report as to that?
23   A    Yes.
24        Q    All right.  Do you have the report in front
25   of you?
```

6

```
1    A    I have it with me, but I don't -- not in front of
2    me.
3              MR. CITO:  Okay.  Your Honor, if I could just
4    give her the report.
5              (Pause in proceedings)
6              MR. CITO:  It's got to be marked.
7              MS. FLEURIMOND:  Okay.
8              THE COURT:  It should be marked as D-1.
9              MR. PETERSON:  Do you want a sticker?
10             MR. CITO:  Thank you, Your Honor.
11             (D-1 marked for identification)
12             THE COURT:  Here you go.
13             MR. CITO:  Oh, perfect.
14             THE COURT:  Do you want to put it on the
15   front page?
16             MR. CITO:  Yes.  You know what?  I'll take
17   that off and I'll just give her her (inaudible) report.
18             THE COURT:  This one?
19             MR. CITO:  That one.
20             THE COURT:  Here you go.
21   BY MR. CITO:
22        Q    Okay.  Do you recall the name of the Medical
23   Examiner without looking at the report?
24   A    Dr. Shaikh.
25        Q    All right.
```

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

7

1    A    I don't know how to pronounce his first name.
2    Q    Right.  Okay.  And where was the interview
3  held at?
4    A    At his office.
5    Q    Okay.  And aside from yourself and the doctor
6  and myself was anyone else present during that
7  interview?
8    A    No.
9    Q    All right.  A number of questions were asked
10  of the doctor?
11    A    Yes.
12    Q    And when did the interview occur, if you
13  remember the date?
14    A    November the 8th.
15    Q    All right.  Of 2017?
16    A    Yes.
17    Q    All right.  And you issued a report November
18  29th?
19    A    Yes.
20    Q    And in that report is the summary of what
21  occurred?
22    A    Yes.
23    Q    All right.  He talks about various -- how the
24  incident -- what he thought of the homicide -- what he
25  termed as a homicide.  Correct.

8

1    A    Yes.
2    Q    And the manner and cause of the death?
3    A    Yes.
4    Q    All right.  But we're not here to talk about
5  that.  Other questions were asked of him at the -- at
6  the interview.  Correct?
7    A    Yes.
8    Q    Was -- and one of those questions was whether
9  there were other individuals present in the homicide
10  scene?
11    A    Yes.
12    Q    All right.  And do you remember that
13  conversation with Dr. Shaikh?
14    A    I do.
15    Q    Okay.  How did -- what transpired during
16  that?  Can you elaborate?
17    A    He -- he said that Judge Mega was at the scene.
18    Q    All right.  And he just volunteered that or
19  did he --
20    A    Initially, yes.  He just mentioned it as if it was
21  odd to him that Judge Mega would be at that scene.
22    Q    All right.  When he said scene, additional
23  questions were asked.  Correct?  Of him?
24    A    Yes.
25    Q    And when he -- did he elaborate when he

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

9

1  described scene as not just in the house, but outside
2  as well?
3  A    He said scene -- he said scene but the Judge
4  didn't interrupt with what he was doing at the time.
5       Q    Okay.  And was he sure that it was Judge
6  Mega?
7  A    He sounded like he was certain.
8       Q    Okay.  And, in fact, he was asked who else
9  was there?
10  A    Yes.
11       Q    And at first he said there were probably
12  other judges?
13  A    Yes.
14       Q    All right.  And at that point what was his
15  response when -- on further questioning?
16  A    As far as who the other people were he said he
17  didn't know them.  But he just assumed they were judges
18  and attorneys at the scene.
19       Q    Okay.  And how did he say he knew Judge Mega?
20  A    I believe he said he's appeared before him.  He
21  appeared -- he came off as if he was familiar with
22  Judge Mega.
23       Q    Okay.  And in your impression of that was he
24  was -- and he was clear that it was definitely Judge
25  Mega?

10

1  A    Yes.
2       Q    All right.
3            MR. CITO:  That's all I have, Your Honor.
4            THE COURT:  Mr. Peterson.
5            MR. PETERSON:  Thank you, Your Honor.
6  CROSS-EXAMINATION BY MR. PETERSON:
7       Q    Did you ever actually go to the scene, ma'am?
8  A    No.  I did not.
9       Q    Okay.  Did you go after you had talked to
10  Judge Mega -- or, excuse me, Dr. Shaikh?
11  A    To the scene?
12       Q    Yes.
13  A    No.
14       Q    So you don't have any idea what he was
15  talking about as opposed to the scene, do you?
16  A    No.  I do not.
17       Q    Okay.  And you didn't ask him specifically
18  about the crime scene, did you?
19  A    I do not.
20       Q    You didn't ask him whether it was inside the
21  house, outside the house, up the block -- anything of
22  that nature.  Did you?
23  A    In the course of him describing what he was doing,
24  he explained that he was definitely in the house and in
25  the room where the body was found.

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

11

```
1           Q    Dr. Shaikh said that --
2      A    Yes.
3           Q    -- let me finish, please.  Dr. Shaikh told
4      you that Judge Mega was inside the crime scene inside
5      the house?
6      A    No, no.  Not Judge Mega.  He was talking about
7      himself.  Not Judge Mega.
8           Q    My -- but he didn't say -- you didn't
9      ask him specifically where Judge Mega was.  Did you?
10     A    No.
11          Q    You didn't follow-up on any questions in
12     regards to that?
13     A    No.
14          Q    And if you did you'd put it in your report.
15     Correct?
16     A    I would have.
17          Q    Okay.  Did you ask him any questions in
18     regards to what Judge Mega had been wearing that day?
19     A    No.
20          Q    Did you ever ask him what Judge Mega had
21     looked like?
22     A    No.  I did not.
23          Q    When you -- when you met with Dr. Shaikh, did
24     you know what Judge Mega looked like?
25     A    No.
```

12

```
1           Q    Did you ask him the last time he had seen
2      Judge Mega?
3      A    No, I did not.
4           Q    Did you ask him how often he had ever seen
5      Judge Mega?
6      A    No, I did not.
7           Q    You didn't do much of any follow-up in
8      regards to that.  Just that Dr. Shaikh said he recalled
9      seeing Judge Mega at the scene, ma'am?
10     A    Yes, I did.
11          Q    Did you ask him what did date that may have
12     been, ma'am?
13     A    The date that he saw Judge Mega?
14          Q    Yes.
15     A    I -- I thought it was the date of the incident
16     that he was in the house doing his investigation.  So,
17     no, I didn't ask him because I thought it was that same
18     day.
19          Q    Okay.
20          MR. PETERSON:  I have nothing further, Your
21     Honor.
22          THE COURT:  Any redirect?
23          MR. CITO:  Just -- well --
24     REDIRECT EXAMINATION BY MR. CITO:
25          Q    Ma'am, when the questions were made of Dr. --
```

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

13

1  Dr. Shaikh.  The question that started, you asked -- he
2  was asked did he ever go into the kitchen and things
3  like.  Correct?
4  A    Dr. Shaikh?
5        Q    Yes.
6  A    Yes.
7        Q    All right.  And that's when he -- and we
8  asked him who else was on the scene.  Correct?
9  A    Yes.
10        Q    And that's when he mentioned he recalls Judge
11  Mega being on the scene?
12  A    Yes.
13        Q    All right.  And it was clear that Judge Mega
14  was not in the bedroom where the body was.  Correct?
15  A    To me, yes.  It was clear he wasn't in there, yes.
16        Q    All right.  We were talking -- Dr. Shaikh was
17  just talking in general the whole vicinity of the crime
18  location.  Correct?
19  A    Yes.
20        Q    All right.  Thank you.
21              MR. PETERSON:  I have no recross, Judge.
22              THE COURT:  And the incident was May 12th,
23  2013.  Correct?
24              MR. PETERSON:  The actual homicide, Judge,
25  was May 12th.  Mr. Galfy was found on the 13th and

14

1  that's when Dr. Shaikh would have been and that the
2  crime scene would have -- or strike that.  The
3  Sheriff's Officers, Clark Police, Prosecutor Office all
4  responded.
5              THE COURT:  May 13th.  Okay.  All right.  Ms.
6  Fleurimond, you're excused.
7              MS. FLEURIMOND:  Okay.  Thank you.
8              THE COURT:  Thank you.
9              COURT CLERK:  Thank you very much.  I'll take
10  it.
11              MS. FLEURIMOND:  All rightie.
12                    (Pause in proceedings)
13              THE COURT:  Any other witnesses, Mr. Cito?
14              MR. CITO:  No, Your Honor.
15              THE COURT:  All right.  Mr. Peterson, you
16  calling anybody?
17              MR. PETERSON:  Thank you, Your Honor, I am.
18  The State would call Honorable Robert Mega.
19                    (Pause in proceedings)
20              COURT OFFICER:  Sir, if you would come this
21  way.  Please step into the witness stand.  Place your
22  left hand on the Bible.
23              JUDGE MEGA:  I'll affirm.
24              COURT OFFICER:  Yes, sir.  Raise your right
25  hand.  State your name for the Court.

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

15

```
1    JUDGE MEGA:  Robert Mega.
2    R O B E R T   M E G A, STATE'S WITNESS, AFFIRMS
3    COURT OFFICER:  Thank you.
4    THE COURT:  All right.  Mr. Peterson.
5    MR. PETERSON:  Thank you, Your Honor.
6  DIRECT EXAMINATION BY MR. PETERSON:
7    Q    Your Honor, -- Judge, where are you currently
8  employed?
9    A    New Jersey Superior Court, Union County Vicinage.
10    Q    And how long have you been employed there?
11    A    I'll guess I'll be starting my thirteenth year.
12    Q    And were you employed back in May of 2013?
13    A    Yes.
14    Q    And in what capacity were you employed back
15  then, sir?
16    A    I was assigned to the Criminal Division.
17    Q    And before you become a Judge did you work
18  anywhere before that, sir?
19    A    I had my own law firm.
20    Q    Did you have any partners in that firm?
21    A    Yes.
22    Q    And are you familiar with Mr. Joseph Galfy?
23    A    Yes.
24    Q    And how are you familiar with him?
25    A    He was a partner in the firm of -- of Kochanski,
```

16

```
1    Mega & Galfy before I had gone on the bench.
2    Q    Do you recall that the -- the day that it was
3  found out that he had been murdered?
4    A    Yes.
5    Q    Do you recall that day being May 13th of
6  2013?
7    A    Yes.
8    Q    And do you recall where you were on that day,
9  sir.
10    A    At the Courthouse.
11    Q    And how do you know you were at the
12  Courthouse on that day?
13    A    Because I was on the record har- -- handling
14  various cases until after 4:00 in the afternoon.
15    Q    And on that day did you know where Mr.
16  Galfy had lived?
17    A    I knew from our firm where Mr. Galfy had
18  lived, sure.
19    Q    Had you ever been to his house before?
20    A    Sure.
21    Q    And do you know what kind of street he lived
22  on?
23    A    His street ran off of Lake Ave.  Well, if you
24  were to go down Lake Avenue you'd have to make a 90
25  degree right-hand turn, which goes into let's call it
```

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

17

```
 1    the first cul-de-sac.  And then you'd have to make
 2    another 90 degree left off of that and go up a hill to
 3    get to where his house was at the top of a second cul-
 4    de-sac.
 5         Q    Okay.  And on May 13th, 2013, were you at
 6    or near Mr. Galfy's house?
 7    A    No.
 8         Q    Did you learn that day that he had been
 9    murdered?
10    A    Yes.
11         Q    Do you recall approximately when it was you
12    learned of that information?
13    A    Probably about 12:30 to 1:00 in the afternoon.
14    Myself and Judge Daniel were having lunch in my
15    chambers.  And I had received a phone call -- I had
16    been on call, Emergent Duty, until 8:00 that morning.
17    And I had come off and the next Judge had taken over at
18    8:00.  And I -- I had received a phone call from a
19    former firm client, who also happened to be a police
20    officer in the town, informing me of what happened.
21         Q    And at any time on May 13th of 2013, did
22    you ever go to the crime scene of the area of where Mr.
23    Galfy's house was?
24    A    I did not go to the crime scene.
25              MR. PETERSON:  Nothing further, Your Honor.
```

18

```
 1              THE COURT:  All right.  Any cross-
 2    examination?
 3              MR. CITO:  Thank you, Your Honor.
 4    CROSS-EXAMINATION BY MR. CITO:
 5         Q    Judge, on -- on that day in question you were
 6    the Criminal Assignment Judge in Union County.
 7    Correct?
 8    A    No.
 9         Q    Okay.
10    A    I became -- became the Presiding Criminal Judge in
11    September of 2013.
12         Q    Okay.  All right.  But before that you were
13    in the --
14    A    In the Criminal Division.
15         Q    In the Criminal Division.  And when you
16    learned of the death of Mr. Galfy did you inform the
17    Assignment Judge of that?
18    A    I don't believe so.  Not that I can recall.
19         Q    Well, did it come some point in time that you
20    were told not to be involved in the case at all?
21    A    Absolutely.
22         Q    Okay.
23    A    And yes.  When -- when Judge Cassidy at some point
24    -- I can't -- it wasn't that day.
25         Q    Right.
```

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

19

1   A   But, obviously, when things were happening and
2   however -- whether I mentioned this to Judge Cassidy or
3   she had known she said, look, going forward and
4   especially when I became P.J., she had said herself she
5   would act as essentially the de facto P.J. for this
6   case and Joe Donohue would be the person that was
7   assigned the case.
8        So her and Joe Donohue would be working
9   collaboratively [sic] between each other.
10       Q   And did she say something about putting up a
11  wall?  That you were not supposed -- you know, because
12  -- the invisible wall?
13  A   Well, that, yes.  I -- I -- I was to have no
14  knowledge -- which I never did -- any knowledge of what
15  the Court goings on of the case were.  No one was
16  instructed to talk to me about it.  Didn't talk to the
17  Judges about it.
18       Q   All right.  So it was known in the Union
19  County Vicinage, especially the criminal, that you were
20  supposed to have no involvement in this case?
21  A   That's correct.
22       Q   All right.  You learned recently Dr. Shaikh
23  identified you at the scene.  Correct?
24  A   Yes.  I received -- yes.  Information that someone
25  -- he said I was.

20

1        Q   All right.  And you verified through
2   CourtSmart and just from your recollection you weren't
3   there.  Correct?
4   A   Correct.
5        Q   All right.
6   A   I pulled the CourtSmart records and the CourtSmart
7   records will reflect me being at the courthouse on that
8   day.
9        Q   But you understand Dr. Shaikh is the Medical
10  Examiner on this case?
11  A   Yes.
12       Q   All right.  And he's a crucial witness for
13  the State?
14            MR. PETERSON:  Objection.  Relevance.
15            JUDGE MEGA:  I have no idea.
16            THE COURT:  Overruled.
17  BY MR. CITO:
18       Q   Okay.  All right.  You understand that he's
19  going to be called eventually as a witness in this
20  case?
21  A   I have no idea what your state of mind is.
22       Q   All right.  All right.  And the concern is
23  the impeachment of Dr. Shaikh as to his credibility.
24  What he saw at the scene and what he may have missed in
25  prep- -- not have seen at the scene?

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

21

1          MR. PETERSON:  Objection, Your Honor.  I
2  don't understand what the point of asking about this is
3  for this hearing.
4          THE COURT:  Yes, I don't --
5          MR. CITO:  Okay.  All right.  I'll do -- I'll
6  go through it in my closing.
7  BY MR. CITO:
8      Q    Recently were you approached by anybody
9  regarding what occurred with Dr. Shaikh and his
10  identification of you at the crime scene?
11  A    Yes.
12      Q    When did that occur?
13  A    I couldn't give you an exact date, but obviously
14  it preceded this hearing.  I'm going to -- I'm going to
15  -- I'm going to say within the last 30 to 45 days.
16      Q    Okay.  Just to be on -- within the last 60
17  days maybe?
18  A    Probably.
19      Q    All right.  And at that time you had kept
20  separate and apart from any involvement in this case.
21  Correct?
22  A    Ab- -- absolutely.
23      Q    All right.  And you didn't go out to anybody
24  in the last thirty -- sixty days to say hey, look I
25  want to talk to you about the case.  Did you?

22

1  A    I don't understand the question.
2      Q    You -- someone came to you to talk about the
3  case?
4  A    That's correct.
5      Q    All right.  And who was it that came to talk
6  to you about the case?
7  A    Judge Caulfield came up to my chambers and
8  informed me that she had a meeting with Judge Cassidy
9  and an issue had arisen that I may need to testify as a
10  witness in this case because there's an allegation that
11  the Medical Examiner believed -- he identified me as
12  being at the crime scene.
13      Q    Okay.  And that was the first you learned of
14  that?
15  A    That's correct.
16      Q    And that was directly by Judge Caulfield?
17  A    That's correct.
18      Q    Okay.  And Judge Caulfield was in the
19  Criminal Division at the same time you were back in
20  2013?
21  A    You know, Mr. Cito, I -- I'm not sure where she
22  was at the time.
23      Q    Okay.
24  A    Based on -- I know she came on the bench -- I
25  usually figure out in terms of who was clerking and

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

23

1   what year.  But I think she's coming up on seven years
2   this coming year.
3       Q      Okay.
4       A      So doing the math that would have put her on the
5   bench about 2011.  And I believe her assignment prior
6   to criminal had been in the Civil Division.  I'm not
7   sure how long she was there or when she actually
8   started.
9       Q      Okay.
10      A      At some point, yes, I was the Presiding Judge and
11  she was in the Criminal Division.  My -- my
12  recollection is that her and Judge Walsh had been
13  assigned at the same time -- whenever that Assignment
14  Order would have been -- and came over at the same time
15  and Judge Walsh was going to replace Judge Moynihan who
16  was going in the Family Division at the time.  So it
17  was that Fall Order.
18      Q      Okay.  Thank you.
19          THE COURT:  Do you know what year that was?
20          JUDGE MEGA:  I -- off the top of my -- I
21  can't -- I don't.  But the Assignment Order would
22  probably be the best indicator.
23  BY MR. CITO:
24      Q      But your impression was that it was clear
25  Judge Caulfield knew that you were not to be involved

24

1   in this case?
2       A      That I don't know.
3       Q      Okay.
4       A      I don't know what Judge Cassidy -- once I
5   transferred out of the Criminal Division, I had nothing
6   to do with any -- aside from PCRs that I still hear I had
7   nothing to do with really any of the inner workings.
8       Q      Okay.  Were you surprised that she came and
9   talked to you ex-parte?
10      A      I don't know what you want to classify it as.  I
11  was surprised to hear of the allegation.  I just
12  assumed that she was coming to me to let me know the
13  protocols that I would have to go through if I was
14  going to be called to testify.  It's not like I could
15  just volunteer --
16      Q      All right.
17      A      -- you know, to come down, I have to --
18      Q      What -- what else was discussed during that
19  meeting?
20      A      The only thing Judge Caulfield said when I told
21  her -- she asked me and I said no, I wasn't there.  I
22  was here on the bench that day.  And she had asked me
23  is there anybody else that I could possibly think of in
24  the area that could have been at the crime scene that
25  may have some kind of resemblance to me.

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

25

```
 1              And the only thing I said I could possibly
 2    think of is the Township Prosecutor has the same type
 3    of hairstyle as me.  White male, same type of
 4    hairstyle, and that he also from my recollection --
 5    I've known him for years -- was part of the Ambulance
 6    Squad in the town.  And I said you may want to ask him,
 7    you know, if he could have been there because she says
 8    to me about -- I -- I said the detectives I didn't
 9    know.  You know, I didn't really know the detectives
10    so.
11         Q    Okay.  And who was the name you gave her?
12    A    J. H. Barr.  He's the former President of the
13    County Bar Association as a matter of fact.
14         Q    Okay.  After that did you have any
15    discussions with Judge Caulfield or Judge Cassidy
16    regarding Mr. McGillvary?
17    A    Him personally, no.
18         Q    Okay.
19    A    In other words, the only discussion I had is when
20    did I have to be here, when was the Judge scheduling
21    the hearing, make my calendars available.
22         Q    Right.
23    A    What -- what, you know, why was I being called
24    when I had -- there was CourtSmart records indicating
25    where I was.
```

26

```
 1         Q    Okay.  And -- but no other facts about what
 2    occurred on the day of the Medical Examiner being
 3    there?
 4    A    None that I can recall.
 5              MR. CITO:  Okay.  That's all I have.  Thanks,
 6    Judge.
 7              THE COURT:  Okay.  Any redirect?
 8              MR. PETERSON:  No, sir.
 9              THE COURT:  Okay.  You're excused, Judge.
10              JUDGE MEGA: .Thank you.
11              THE COURT:  Thank you.  Any other witnesses?
12              MR. PETERSON:  None from the State, Your
13    Honor.
14              THE COURT:  Okay.  Mr. Cito?
15              MR. CITO:  No other, Your Honor.  I -- I made
16    a request for Judge Caulfield, but I think Judge Mega
17    actually just described the concerns I had.
18              THE COURT:  Okay.
19              MR. CITO:  And -- unless you --
20              THE COURT:  So let me hear argument.
21              MR. CITO:  -- excuse me.  Okay.
22              Your Honor, there's a couple of issues here.
23    One is the Medical Examiner -- he's definitely going to
24    be called as a witness at trial and his credibility
25    will be -- will be impeached because of -- I'll take
```

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

27

1  Judge Mega's word that he was not there.  And -- but
2  that means the Medical Examiner made incorrect
3  observations at the crime scene.  And I should be able
4  to verify -- to go through that and develop it -- what
5  other observations did he make and not make
6  appropriately.
7       Judge Mega is a glaring example because he
8  testifies in front of Judge Mega.  And, Your Honor,
9  this is an issue where I wrote in my papers regarding
10 improper investigation of a crime scene and also
11 spoliation of evidence.  And who was present at the
12 scene and who wasn't at the scene is important.
13      The concern I also have that developed after
14 filing of the motion is Judge Mega being approached by
15 Judge Cassidy -- not Cassidy, but Judge Caulfield on
16 those issues and that wall was supposed to be there for
17 the fact of no --
18      THE COURT:  So how are you prejudiced by
19 that?
20      MR. CITO:  I just think it goes to the
21 Judicial Canon of there should be impropri- -- you
22 know, no --
23      THE COURT:  What impropriety do you allege?
24 Let's be frank here.  Let's put all our cards on the
25 table.  Let's not hide behind synonyms and --

28

1       MR. CITO:  I know, Judge.  Okay.
2       THE COURT:  -- dissemble.  So lay your card
3  on the table.
4       MR. CITO:  Sorry.  Canon 33.8.  Judge
5  avoids ex-parte discussions of a case with judges who
6  have been previously disqualified from a case.
7       You know, it would have been fine if she just
8  said you're being called as a witness, schedule your
9  thing, but more than that just occurred.
10      And I think --
11      THE COURT:  By asking him who else -- who the
12 M.E. might have mistaken -- all right.  Let's assume
13 she did ask.  Okay.  What's the remedy you seek?
14      MR. CITO:  Transfer out of that county, Your
15 Honor.
16      THE COURT:  Why?  Judge Caulfield is not
17 handling the trial.  Right?
18      MR. CITO:  Well, this is then the second
19 Judge that is disqualified on the case.
20      THE COURT:  Okay.  They have more two in
21 Union.
22      MR. CITO:  Your Honor, I just think the whole
23 vicinage should be -- because --
24      THE COURT:  Wait.  You want the whole
25 vicinage thrown out?  You haven't shown anything to

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

29

```
1     make that request.
2          MR. CITO:  Okay.
3          THE COURT:  To -- to -- to disqualify the
4     whole vicinage.  What are you -- what is that based on?
5          MR. CITO:  Well, Your Honor, when I cross-
6     examine Dr. Shaikh and discuss Judge Mega being there
7     or not, I'm -- a Judge of Superior Court in that county
8     is going to be discussed in front of the jury and --
9          THE COURT:  And you're going to make hay with
10    the M.E.  You're going to have fifteen, twenty minutes
11    to fully cross-examine because clearly Judge Mega was
12    not there.
13         MR. CITO:  Right.  I'm not -- you know, I
14    -- I'm not disagreeing with you.
15         THE COURT:  So you may get to cross-examine
16    the M.E. and he's going to have to say this is what I
17    said and the stated rebuttal is going to -- either
18    you're going to disapprove him.  Well, here's a copy of
19    the CourtSmart, he wasn't there, he couldn't have been
20    there.  So are you prejudiced?  Actually your case --
21    you've been helped by his misidentification.
22         MR. CITO:  On impeachment of Dr. Shaikh, yes.
23         THE COURT:  Right.
24         MR. CITO:  I agree on that.
25         THE COURT:  And then you're going to get
```

30

```
1     argue the famous false-in-one, false-in-all.
2          MR. CITO:  You're correct, Your Honor.
3          THE COURT:  Right.  I mean, I've done this.
4          MR. CITO:  You know --
5          THE COURT:  I've done what you're doing.
6          MR. CITO:  Yes.
7          THE COURT:  So what's the prejudice here?
8     And why --
9          MR. CITO:  -- I just think a --
10         THE COURT:  -- why can't a Judge in Union
11    County handle this?
12         MR. CITO:  I just think this is the second
13    time this has come up.  The instructions were given by
14    Judge Cassidy to avoid this problem and now it's come
15    up again.  And that's the only reason why I thought it
16    was best to transfer it out of the county.
17         THE COURT:  Well, Caulfield is the Presiding
18    Judge.
19         MS. CITO:  Right.
20         THE COURT:  So she went to him and said, hey,
21    look you're going to be called as a witness.
22         MR. CITO:  But it went further than that,
23    Your Honor.
24         THE COURT:  Well, she said do you think
25    there's anybody else and he gave a name.  I see from
```

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

31

1  your submission that you guys interviewed Mr. Barr.
2  And he says --
3          MR. CITO:  I was told to interview him, yes.
4          THE COURT:  -- I wasn't there.
5          MR. CITO:  Excuse me.
6          THE COURT:  And I think he says I wasn't
7  there.  No?
8          MR. CITO:  No.  Mr. Barr says he was there.
9  He didn't see Judge Mega.
10         THE COURT:  Oh, he's an EMT guy.
11         MR. CITO:  He's a -- he was there as a
12 neighbor.
13         THE COURT:  Oh.  He said he was there as a
14 neighbor.
15         MR. CITO:  Yes.
16         THE COURT:  He could see part of the
17 property.  Did not know the victim personally.  I don't
18 see it, Mr. -- Mr. Cito.
19         MR. CITO:  Okay.  That's fine, Your Honor.  I
20 think it's there.
21         THE COURT:  Mr. Peterson, what do you want to
22 say?  Let's -- let's see what Mr. Peterson says.
23         MR. PETERSON:  Your Honor, if your -- the
24 State will submit, unless you need to hear anything
25 specifically.

32

1          THE COURT:  Well, if you want, for completion
2  of the record, in case it gets reviewed by higher
3  authorities.
4          MR. PETERSON:  Sure.  Judge, I would just say
5  -- thank you, Your Honor.
6          We've gone through this once before up in
7  Union County and it -- and it had been denied, because
8  at that time I believe the argument was that Judge Mega
9  was in the victim's phone.
10         And the argument was, well, what does that
11 have to anything?  And now this is another bite at the
12 apple here, Your Honor, just saying well, okay, someone
13 said Judge Mega's at the scene.
14         Clearly he was not there.  There is someone
15 else the State agrees and that -- that could be a
16 cross-examination on -- on Dr. Shaikh and maybe his
17 credibility for anything.
18         THE COURT:  Oh, yes.
19         MR. PETERSON:  As far as Judge Caulfield for
20 what she has done, she didn't go out there and try to
21 do any kind of investigation.  Do any- -- anything to
22 -- of that sort on her own.  She didn't step outside
23 the boundaries of what she's allowed to do as a Judge.
24 The State agrees with all of that.
25         And -- and outside of that I think almost

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

33

1   that it -- Judge Caulfield should have done a follow-up
2   question to find out a little bit about something like
3   she did.  To say were you there?  No.  Is there anyone
4   who may of -- could have been there?
5           That's not showing any kind of harm or
6   prejudice to the defendant here, Judge, where you'd
7   have to move an entire trial and inconvenience everyone
8   just for the purposes of him coming here to sit before
9   someone.  And again, another Judge like the first one
10  who wasn't going to be presiding over this trial
11  anyway.
12          For those reasons, Your Honor, the -- the
13  State would ask that this motion be denied.
14          THE COURT:  I -- I assume you have a trial
15  Judge who has been assigned to this case?
16          MR. CITO:  Well, actually they're in the
17  process of giving us a new Judge.  Judge Caulfield was
18  making some rulings that she was handing it off to
19  somebody else.  It was going to be Judge --
20          THE COURT:  So she's not even trying the
21  case?
22          MR. PETERSON:  No.
23          MR. CITO:  No.  She said it was going to get
24  transferred to Judge Daniel.  The concern I am going to
25  have now is Judge Daniel was having lunch with Judge

---

34

1   Mega.  I don't want that name to come out during his
2   trial so they have to figure out what Judge.
3           THE COURT:  Well, you have --
4           MR. PETERSON:  There's a number of Judges.
5           THE COURT:  -- you have at least five that I'm
6   aware of off the top of my head.
7           MR. CITO:  Right.  But we don't have a -- to
8   answer your question, there isn't a Judge yet, but they
9   told us there will be one.
10          THE COURT:  Okay.  I don't see a basis for
11  transferring it.  I don't see any -- any impropriety or
12  any violation of any Judicial Canon here in this case.
13          Judge Mega was misidentified by the M.E. as
14  to being on the scene at the time.  Clearly there is
15  inconvertible evidence that -- that Judge Mega was not
16  at the scene.  He was in Court.  CourtSmart confirms
17  it.  He was with another Judge having lunch at or near
18  the time he was informed of the incident here.
19          The fact that prior to Judge Mega becoming a
20  Judge thirteen years ago.  So, thirteen years ago he
21  became a Judge so it would have been thirteen years ago
22  -- and he didn't even say if the victim was partners at
23  the time he came on the bench, but they had been
24  partners in the past.  That alone -- that doesn't pose
25  any concern to this Court about the fundamental

FILED, Clerk of the Appellate Division, December 10, 2019, A-004519-18

35

1   fairness of any trial that will take place.
2           The decision that's going to be made is going
3   to be by jurors.  This is not a bench trial, first of
4   all.  And I don't see that the entire Criminal Division
5   of Union County has to be excluded from this.
6           I assume they know the Gag Order is still in
7   effect.  So -- and if it isn't obviously anybody who
8   was assigned to try the case should not be having any
9   independent conversations with Judge Mega and I'll put
10  that in my Order if you want.
11          MR. CITO:  Okay.
12          THE COURT:  But I don't see a reason why this
13  case can't proceed to trial.  It's got a long history
14  here from 2013, so it should move to trial so -- with
15  some degree of alacrity.  So, all right?  Anything
16  else, gentlemen?
17          MR. CITO:  No.  That's it, Your Honor.  Thank
18  you very much.
19          MR. PETERSON:  Nothing from the State.  Thank
20  you, Your Honor.
21          THE COURT:  All right.  Take care, folks.
22          MR. CITO:  Okay.
23                  (Proceedings Concluded)
24
25

36

## CERTIFICATION

1
2           I, REBECCA Y. NATAL, the assigned transcriber, do
3   hereby certify the foregoing transcript of proceedings
4   on CourtSmart, Index Numbers from 1:53:38 to 2:24:49 is
5   prepared to the best of my ability and in full
6   compliance with the current Transcript Format for
7   Judicial Proceedings and is a true and accurate
8   compressed transcript of the proceedings, as recorded.
9
10
11
12      /s/ Rebecca Y. Natal                 AD/T 557
13         Rebecca Y. Natal                  AOC Number
14
15
16      KLJ Transcription Service            12/5/19
17         Agency Name                         Date
18
19
20
21
22
23
24
25

EXHIBIT E

**New Jersey State Prison-Main**
Trenton, NJ
Fax:

**CALEB L MCGILLVARY**
Male  DOB:09/03/1988  Booking #:1222665  SBI:000102317G
Ins: NJDOCIC (NJDOCIP)

**05/31/2019 - Office Visit: MH Suicide Watch Notice**
**Provider: Lucia Otti, RN, BSN**
**Location of Care: New Jersey State Prison-Main**
**This document contains confidential information**

## SUICIDE WATCH NOTICE

**Suicide Watch Notice**
**By order of the below-cited staff person, this inmate has been placed on suicide watch & should be kept under:**
**Type of Observation:** Constant
**Reasons for Ordering Watch:** Other(specify)
**Comments:** TVO:M. Dettore PsyD/Lucia Otti RN: Place patienrt on Suicide monitoring/Constant watch due safety to self and others as it was reported in the EMR that patient was  involved in a screaming matich with the  judge in the court room at sentencing.
**Information Source:** EMR/Patient
**Level of Risk:** High
**Plan and Intent (if known):** Not verbalized to this writer
**Inmate will receive the following items when on constant watch:** suicide gown, suicide blanket, suicide mattress, other-Finger foods

**Superintendent Authorization**

**When completed print & forward to Superintendent, Shift Commander,Classification**

**Superintendent Signature:**

_____

**Electronically Signed by Lucia Otti, RN, BSN on 05/31/2019 at 5:25 PM**

_____

EXHIBIT F

CO-30 A          NEW JERSEY STATE PRISON          Rev. 3/1/21
                    POSTAGE REMIT

DATE: 4/5/23      LOCATION: 6R101

SBI NUMBER: 1023176

INMATE NAME: CALEB MCGILLVARY

INMATE SIGNATURE: _____

TO: BUSINESS MANAGER          DATE MAILED: _____

| (✓) | Check Appropriate Box (s) | $ |
|---|---|---|
| | Legal Postage | |
| ✓ | Certified Cert. #7020181000015583496.2 | 4.15 |
| | Return Receipt Requested | |
| ✓ | Postage Affixed; **SEND DIRECT** Legal Postage Only **TO MAILROOM** | |
| | Regular Postage    or    UPS    Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property | Total Postage and Fees | $ 4.15 |

SENT TO: CLERK, USDC-DNJ

ADDRESS: PRINT 50 WALNUT ST,
NEWARK, NJ 07102  MFET FNCL

WITNESS: B Niel  PRINT  ~~APPROVED~~

SIGNATURE: _____  APPROVED BY: _____

CHECK#                DATE: 4/10/23

EXHIBIT G

**Remove ✕**

**Tracking Number:**

# 70201810000155834962

📋 Copy          🏃 Add to Informed Delivery

## Latest Update

The delivery status of your item has not been updated as of April 14, 2023, 4:11 am. We apologize that it may arrive later than expected.

**Get More Out of USPS Tracking:**

🔍 USPS Tracking Plus®

**Alert**
**Awaiting Delivery Scan**
April 14, 2023, 4:11 am

**Out for Delivery**
NEWARK, NJ 07102
April 13, 2023, 10:11 am

See All Tracking History

## Text & Email Updates                    ⌄


## USPS Tracking Plus®                     ⌄


🔒 tools.usps.com

# EXHIBIT H

CO-30 A     NEW JERSEY STATE PRISON    Rev. 3/1/21
**POSTAGE REMIT**

DATE: 4/5/23    LOCATION: 6R101

SBI NUMBER: 1023176

INMATE NAME: CALEB MCGILLVARY

INMATE SIGNATURE: _____

TO: BUSINESS MANAGER    DATE MAILED: _____

| (✔) | Check Appropriate Box (s) | $ |
|---|---|---|
| | Legal Postage | |
| ✓ | Certified Cert. #7020 1810 0001 5503 4955 | 4.15 |
| | Return Receipt Requested | |
| ✓ | Postage Affixed; Legal Postage Only **SEND DIRECT TO MAILROOM** | |
| | Regular Postage or UPS Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property | | Total Postage and Fees $ 4.15 |

SENT TO: CLERK, USDC - DNJ

ADDRESS: 50 WALNUT St.
NEWARK, NJ 07102

WITNESS: B. Vienten

SIGNATURE: _____

CHECK# _____    DATE: 4/10/23

EXHIBIT I

CO-30 A    NEW JERSEY STATE PRISON    Rev. 3/1/21
**POSTAGE REMIT**

DATE: 5/8/23    LOCATION: 6RP01

SBI NUMBER: 1023176

INMATE NAME: CALEB MCGILLVARY

INMATE SIGNATURE: ____

TO: BUSINESS MANAGER    DATE MAILED: ____

| (✔) | Check Appropriate Box (s) | $ |
|---|---|---|
| | Legal Postage | |
| ✓ | Certified Cert. # 70201810000155834810 | 4.15 |
| ✓ | Return Receipt Requested | 3.3 |
| ✓ | Postage Affixed; **SEND DIRECT** Legal Postage Only **TO MAILROOM** | 0 |
| | Regular Postage  or  UPS   Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property | Total Postage and Fees | $ 7.50 |

SENT TO: CLERK, USDC - DNJ

ADDRESS: PRINT 50 WALNUT ST.

NEWARK, NJ 07102    MAIL (illegible)

WITNESS: ____    APPROVED BY:

SIGNATURE: ____

CHECK# ____    DATE: ____

CO-30 A

NEW JERSEY STATE PRISON
**POSTAGE REMIT**

Rev. 3/1/21

DATE: 5/8/23    LOCATION: 6R101

SBI NUMBER: 1023176

INMATE NAME: CALEB MCGILLVARY

INMATE SIGNATURE:

TO: BUSINESS MANAGER    DATE MAILED: _____

| (✔) | Check Appropriate Box (s) | $ | |
|---|---|---|---|
| | Legal Postage | | |
| ✓ | Certified Cert. #7020180000015583486 | $ | 4.15 |
| | Return Receipt Requested | | |
| ✓ | Postage Affixed; **SEND DIRECT**<br>Legal Postage Only **TO MAILROOM** | ¢ | |
| | Regular Postage  or  UPS  Property | | |
| | Additional Insurance Amount $ | | |
| | No Postage Inter Office Mail | | |
| Weight of Mail/Property | | Total Postage and Fees $ | 4.15 |

SENT TO: CLERK, USDC - DNJ
          PRINT
ADDRESS: 4TH & COOPER ST, RM 1050
CAMDEN, NJ 08101  HABEAS RPLY + MFST

WITNESS: _____  APPROVED BY: _____
          PRINT
SIGNATURE: _____

CHECK# _____    DATE: _____

CO-30 A        NEW JERSEY STATE PRISON        Rev. 3/1/21
                    POSTAGE REMIT

DATE: 5/8/23        LOCATION: 6R101
SBI NUMBER: 1023176
INMATE NAME: CALEB MCGILLVARY
INMATE SIGNATURE: KAD

TO: BUSINESS MANAGER        DATE MAILED: _____

| (✔) | Check Appropriate Box (s) | $ |
|---|---|---|
| | Legal Postage | |
| ✔ | Certified Cert. #7020181000015585487 | 4.15 |
| | Return Receipt Requested | |
| ✔ | Postage Affixed; **SEND DIRECT** Legal Postage Only **TO MAILROOM** | ① |
| | Regular Postage  or  UPS  Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property | | Total Postage and Fees | $ 4.15 |

SENT TO: CLERK - USDC - DNJ
ADDRESS: 402 E. STATE ST.
TRENTON, NJ 08608 HABEAS DEPARTMENT

WITNESS: A.A.
SIGNATURE: _____   APPROVED

CHECK# _____        DATE: _____

EXHIBIT J

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CLERK, USDC – DNJ
50 WALNUT ST.
NEWARK, NJ
07102



9590 9402 4431 8248 7035 63

2. Article Number (Transfer from service label)
7020 1810 0001 5583 4870

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☑ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Stephanie   5/15/23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☑ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

USPS TRACKING #

9590 9402 4431 8248 7035 63

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•



CALEB L. MCGILLVARY
#1222665/SBI #1023174
NJSP PO BOX 861
TRENTON, NJ
08625

EXHIBIT K

CALEB L. MCGILLVARY, PRO SE
#1222665/SBI #1023174 NJSP
PO BOX 861 TRENTON, NJ 08625

MAY 15, 2023

CLERK, U.S.D.C. - DNJ
50 WALNUT ST,
NEWARK, NJ 07102
    RE: MCGILLVARY V. DAVIS
    CIVIL ACTION NO. 2:22-CV-04185-MCA
    ON PETITION FOR WRIT OF HABEAS CORPUS
    HON. MADELINE COX-ARLEO, U.S.D.J,

DEAR CLERK;
    PLEASE FIND ENCLOSED & FILE ONTO THE DOCKET MY
LETTER REQUEST TO WITHDRAW MY MOTION TO RECUSE
ROBERT A KIRSCH IN THE ABOVE-CAPTIONED MATTER,
& PROOF OF SERVICE THEREOF. I WAS UNDER THE MISTAKEN
BELIEF THAT JUDGE KIRSCH HAD BEEN APPOINTED TO FILL
CHIEF JUDGE WOLFSON'S ROLE, NOT SIMPLY HER VACANCY.
NOW THAT I'VE FOUND OUT HON. RENEE MARIE BUMB IS THE
NEW CHIEF JUDGE, MY MOTION TO RECUSE IS MOOT.
          THANK YOU KINDLY,

          CALEB L. MCGILLVARY
          IN PROPRIA PERSONA

# PROOF OF SERVICE

I, CALEB L. MCGILLVARY THE UNDERSIGNED PRO SE PLAINTIFF, HEREBY DECLARE PURSUANT TO 28 USC 1746 THAT ON TODAY'S DATE I PLACED IN THE HANDS OF CORRECTIONAL OFFICERS HERE WHERE I AM CONFINED AT NJ STATE PRISON 3RD & FEDERAL STS. TRENTON, NJ 08625 WITH FIRST CLASS POSTAGE PREPAID TO BE SENT VIA USPS REGULAR MAIL THE ORIGINAL & 3 COPIES TO THE CLERK OF THE U.S. DISTRICT COURT AT 50 WALNUT ST. NEWARK, NJ 07102 FOR FILING; & A COPY TO RESPONDENT BRUCE DAVIS, ADMINISTRATOR NJSP'S COUNSEL AMANDA G. SCHWARTZ AT PO BOX 086 25 MARKET ST. TRENTON, NJ 08625 FOR SERVICE; OF MY LETTER REQUEST TO WITHDRAW MY MOTION TO RECUSE JUDGE ROBERT A KIRSCH.

I INVOKE THE PRISON MAILBOX RULE.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE & ACCURATE.

EXECUTED THIS 15TH DAY OF MAY, 2023

CALEB L. MCGILLVARY, PRO SE
#1222665/SBI#1023176 NJSP
PO BOX 861 TRENTON, NJ 08625

CALEB L. MCGILLVARY, PRO SE
#1122665/SBI#1023176 NJSP
PO BOX 861 TRENTON, NJ 08625

MAY 15, 2023

HON. MADELINE COX-ARLEO, U.S.D.J.
U.S.D.C. - D.NJ.
50 WALNUT ST.
NEWARK, NJ 07102
    RE: MCGILLVARY V. DAVIS
    CIVIL ACTION NO. 2:22-CV-04185-MCA

DEAR JUDGE ARLEO;
    PLEASE ACCEPT THIS LETTER REQUEST TO
WITHDRAW MY MOTION TO RECUSE JUDGE ROBERT A
KIRSCH IN THE ABOVE-CAPTIONED MATTER. I
WAS FILED IT UNDER THE HONEST, YET MISTAKEN,
BELIEF THAT JUDGE KIRSCH HAD BEEN APPOINTED TO
FILL CHIEF JUDGE WOLFSON'S ROLE, NOT SIMPLY
HER VACANCY. MY CONCERN WAS THAT IT WOULD
CREATE AN APPEARANCE OF IMPROPRIETY, IF YOUR
HONOR WAS PUT IN THE UNENVIABLE POSITION OF
HAVING EVERY CASE ON YOUR DOCKET FROM HERE ON
OUT ASSIGNED TO YOU BY JUDGE KIRSCH. IN SUCH
A POSITION, A REASONABLE PERSON MIGHT QUESTION
IF A DECISION ON MY HABEAS PETITION WHICH OFFENDED
HIM WOULD CAUSE HIM TO ASSIGN THE WORST CASES TO YOU

1

FOR THE REST OF YOUR TENURE, WHETHER OR NOT HE
ACTUALLY WOULD WAS NOT THE ISSUE, ONLY THE
APPEARANCE CREATED BY THAT POTENTIAL UNDER DNJ
L. CIV. R. 40.1.

I HAVE SINCE DISCOVERED THAT HON. RENEE
MARIE BUMB IS THE NEW CHIEF JUDGE. THIS
CLARIFIES THE AMBIGUITY OF WHAT I'D READ
IN THE NJ LAW JOURNAL. I HAVE NO SUCH
CONCERNS ABOUT CHIEF JUDGE BUMB, & SO I
RESPECTFULLY ASK THE COURT TO WITHDRAW MY
MOTION TO RECUSE JUDGE KIRSCH. I RESERVE
THE RIGHT TO RENEW MY MOTION UNDER CLEMMONS
V. WOLFE 377 F.3d 322 (CA3 2004) IF FOR ANY
REASON MY CASE IS REASSIGNED TO JUDGE KIRSCH.

RESPECTFULLY SUBMITTED,

DATE: 5/15/23
  CC: AMANDA G. SCHWARTZ
    FILE

CALEB L. MCGILLVARY, PRO SE
#1222665/SBI#1023174 NJSP
PO BOX 861 TRENTON, NJ
08625-0861

2

EXHIBIT L

CO-30 A | NEW JERSEY STATE PRISON | Rev. 3/1/21

**POSTAGE REMIT**

DATE: 5/15/23    LOCATION: 6R81

SBI NUMBER: 1023176

INMATE NAME: CALEB MCGILLVARY

INMATE SIGNATURE: ~~KADD~~

TO: BUSINESS MANAGER    DATE MAILED: _____

| (✔) | Check Appropriate Box (s) | |
|---|---|---|
| | Legal Postage | $ |
| ✓ | Certified Cert. # 70201810000155835006 | 4.15 |
| ✓ | Return Receipt Requested | 3.35 |
| ✓ | Postage Affixed; **SEND DIRECT** Legal Postage Only **TO MAILROOM** | 0 |
| | Regular Postage  or  UPS  Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property | | Total Postage and Fees $7.50 |

SENT TO: CLERK, USDC - DNJ

ADDRESS: PRINT 50 WALNUT ST.

NEWARK, NJ 07102

WITNESS: PRINT Ofc. Santamaria

SIGNATURE: _____

CHECK# _____

APPROVED BY:

DATE:

APPROVED

# EXHIBIT M

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:



CLERK, USDC - DNJ
50 WALNUT ST,
NEWARK, NJ
07102

9590 9402 4431 8248 7035 70

2. Article Number *(Transfer from service label)*

7020 1810 0001 5583 5006

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *Anthony Carr*        ☑ Agent
                        ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

Anthony C.            5/23/23

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☑ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**USPS TRACKING #**



9590 9402 4431 8248 7035 70

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

CALEB L. MCGILLVARY
#1222665/SBI #1023176
NJSP PO BOX 861
TRENTON, NJ
08625 - 0861

EXHIBIT N

CALEB L. MCGILLVARY, PRO SE
#1222665/SBI# 1023174 NJSP
PO BOX 861 TRENTON, NJ 08625

MAY 23, 2023

CLERK, USDC - DNJ
MLK, JR. FED. BLDG. & US CT. HSE.
50 WALNUT ST.
NEWARK, NJ 07102
    RE: MCGILLVARY V. DAVIS
    CIVIL ACTION NO. 2:22-CV-04185-MCA
    HON. MADELINE COX-ARLEO, USDJ

DEAR CLERK;
    PLEASE FIND ENCLOSED & FILE ONTO THE DOCKET
MY LETTER MOTION TO WITHDRAW MY IFP APPLICATION
& EX PARTE MOTION FOR EXPERT ASSISTANCE IN THE
ABOVE CAPTIONED MATTER; & PROOF OF SERVICE THEREOF,
            THANK YOU KINDLY,
            CALEB L. MCGILLVARY
            IN PROPRIA PERSONA

# PROOF OF SERVICE

I, CALEB L. MCGILLVARY, HEREBY DECLARE PURSUANT TO 28 USC 1746 THAT ON TODAY'S DATE I PLACED IN THE HANDS OF CORRECTIONAL OFFICERS HERE WHERE I'M CONFINED AT NJ STATE PRISON 3RD & FEDERAL STS TRENTON, NJ 08625 WITH FIRST CLASS POSTAGE PREPAID TO BE SENT VIA USPS REGULAR MAIL, THE ORIGINAL & 3 COPIES TO THE CLERK OF THE US DISTRICT COURT AT 50 WALNUT ST, NEWARK, NJ 07102 FOR FILING; & A COPY TO COUNSEL FOR RESPONDENT BRUCE DAVIS, AMANDA G. SCHWARTZ, AT PO BOX 086 25 MARKET ST, TRENTON, NJ 08625-0086; OF MY LETTER MOTION TO WITHDRAW MY IFP APPLICATION & EX PARTE MOTION FOR EXPERT ASSISTANCE IN "MCGILLVARY V. DAVIS" DKT NO. 2:22-CV-04185-MCA.

I INVOKE THE PRISON MAILBOX RULE.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE & ACCURATE.

EXECUTED THIS 23RD DAY OF _____ MAY _____, 20 23

CALEB L. MCGILLVARY, PRO SE
#1127665/SBI# 1023174 NJSP
PO BOX 861 TRENTON, NJ 08625

CALEB L. MCGILLVARY, PRO SE
#1222665/SBI #102317G NJSP
PO BOX 861 TRENTON, NJ 08625

MAY 23, 2023

HON. MADELINE COX-ARLEO, USDJ
VSDC - DNJ MLK, JR. FED. BLDG. & US CT. HSE.
50 WALNUT ST. NEWARK, NJ 07102

    RE: MCGILLVARY V. DAVIS
    CIVIL ACTION NO. 2:22-CV-04185-MCA

DEAR JUDGE ARLEO;

    PLEASE ACCEPT THIS LETTER IN LIEU OF A MORE FORMAL
MOTION TO WITHDRAW MY IFP APPLICATION IN THE ABOVE-
CAPTIONED MATTER, & MY EX PARTE MOTION TO OBTAIN
EXPERT ASSISTANCE IN THIS MATTER. AS GROUNDS FOR THIS
MOTION, I URGE THE FOLLOWING:

    1.) I HAVE ALREADY PAID THE $5 FILING FEE OUT-OF-POCKET;
    2.) I HAVE UNCOVERED EVIDENCE IN MCGILLVARY V. GALFY DKT.
2:21-CV-17121-MCA-CLW; THAT WILL ALLOW ME TO THOROUGHLY
IMPEACH DR. ROBERT PANDINA & DR. JUNAID SHAIKH, THE
DRUG EFFECT EXPERT & MEDICAL EXAMINER IN MY CRIMINAL
CASE, RESPECTIVELY: TO WIT, $150,000 EACH TO THEIR
WORKPLACES FROM THE ESTATE OF THE RAPIST. I BELIEVE
UPON INFORMATION THAT, IF I AM GRANTED DISCOVERY, I CAN
SHOW FURTHER TRANSFERS TO INVESTIGATORS IN MY CASE
THE ESTATE OF THE RAPIST, ESTABLISHING THE BAD FA

OF THE BRADY VIOLATION I'VE ALLEGED IN MY PETITION. I RESPECTFULLY REMIND THE COURT THAT RESPONDENT HAS WAIVED DEFENSE OF THE MATERIALITY, SUPPRESSION, & PREJUDICE PRONGS BY FAILING TO RAISE ARGUMENTS THEREFOR IN THEIR ANSWER, SEE FED. R. CIV. P. 8(b)(6); ECE 6 P.3;

3.) IN LIGHT OF "2", I WILL SIMPLY SUBPOENA DR. SHAIMH, DR. PANDINA, AND THE RAPIST'S BROTHER. THIS WILL SAVE JUDICIAL RESOURCES, & IF THE FINANCIAL RECORDS OF THE RAPIST'S ESTATE DISCLOSE FURTHER WITNESSES, I WILL FILE THE APPROPRIATE MOTIONS AT THAT JUNCTURE.

FOR ALL THE FOREGOING REASONS, I RESPECTFULLY ASK THE COURT LEAVE TO WITHDRAW MY IFP APPLICATION & EX PARTE MOTION FOR EXPERT ASSISTANCE IN THIS MATTER.

DATE: 5/23/23

RESPECTFULLY SUBMITTED,

CALEB L. MCGILLVARY
#1227665/SBI#1023174
NJSP PO BOX 861
TRENTON, NJ 08625

EXHIBIT O

CO-30 A     NEW JERSEY STATE PRISON     Rev. 3/1/21
**POSTAGE REMIT**

DATE: 5/23/23     LOCATION: 6L81

SBI NUMBER: 102-3176

INMATE NAME: Caleb McGillvary

INMATE SIGNATURE: ____

TO: BUSINESS MANAGER     DATE MAILED: _____

| (✔) | Check Appropriate Box (s) | |
|---|---|---|
| | Legal Postage | $ 84 |
| ✓ | Certified Cert. # 7020 1810 0001 5583 8739 | 4.15 |
| ✓ | Return Receipt Requested | 3.35 |
| ✓ | Postage Affixed; **SEND DIRECT** Legal Postage Only **TO MAILROOM** | not attached |
| | Regular Postage   or   UPS   Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property 18oz | Total Postage and Fees | $ 8.34 |

SENT TO: Clerk, USDC DNJ

ADDRESS: PRINT 50 Walnut St,

Newark, NJ 07102, Encl: Mtn to Withdraw IFP

WITNESS: PRINT _____

SIGNATURE: _____

APPROVED BY: S|31

CHECK#          DATE:

EXHIBIT P

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Signature
X  R M          ☑ Agent
                ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
Reader M                          6/6/23

1. Article Addressed to:

CLERK, USPC-DNJ
MLK, JR FED, BLDG & US CT HSE
50 WALNUT ST.
07102          ENCL. MOTION TO
               WITHDRAW IFP
               APPLICATION

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:     ☐ No

3. Service Type                          ☐ Priority Mail Express®
☑ Adult Signature                        ☐ Registered Mail™
☐ Adult Signature Restricted Delivery    ☐ Registered Mail Restricted
☑ Certified Mail®                          Delivery
☐ Certified Mail Restricted Delivery     ☐ Signature Confirmation™
☐ Collect on Delivery                    ☐ Signature Confirmation
☐ Collect on Delivery Restricted Delivery  Restricted Delivery
☐ Insured Mail                           ☑ RETURN RECEIPT
☐ Insured Mail Restricted Delivery          FOR MERCHANDISE
   (over $500)

9590 9402 7079 1251 2918 48

2. Article Number *(Transfer from service label)*

7020 1810 0001 5583 2739

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

---

| USPS TRACKING # |
|---|



9590 9402 7079 1251 2918 48

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

CALEB MCGILLVARY
#1222665/SBI# 102317G
NJSP PO BOX 861
TRENTON, NJ
08625

EXHIBIT Q

CALEB L. MCGILLVARY, PRO SE
#122665/SBI#1023176 NJSP
PO BOX 861 TRENTON, NJ 08625        NOVEMBER 6, 2023

CLERK, USDC-DNJ
402 E. STATE ST.
CAMDEN, NJ 08101-2797
        RE: IN RE: CALEB L. MCGILLVARY
        CIVIL ACTION NO. NOT YET ASSIGNED
        ON PETITION UNDER RULE 27

DEAR CLERK;
        PLEASE FIND ENCLOSED & FILE ONTO THE DOCKET
THE ORIGINAL & 3 COPIES OF MY JS-44; PETITION
TO PERPETUATE TESTIMONY UNDER RULE 27; DECLARATION
IN SUPPORT THEREOF; & IFP APPLICATION,
INITIATING AN ORIGINAL ACTION IN THIS COURT.

                    THANK YOU KINDLY,

                    CALEB L. MCGILLVARY

P. 108

#1

# CIVIL COVER SHEET

JS 44 (Rev. 07/16)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CALEB L. MCGILLVARY

**(b)** County of Residence of First Listed Plaintiff   MERCER, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
PRO SE #1222665/SBI#1023174 NJSP
PO BOX 861 TRENTON, NJ 08625

### DEFENDANTS

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☒ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:   FED. R. CIV. P 27

Brief description of cause:   DEPOSITION TO PERPETUATE TESTIMONY

## VII. REQUESTED IN COMPLAINT:
- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   N/A

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE  JOSEPHINE L. STATON   DOCKET NUMBER  2:22-CV-01195-JLS

DATE   11/6/23

SIGNATURE OF ATTORNEY OF RECORD   [signature]

### FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

### United States District Court
### For the District of New Jersey

In Re Caleb L. McGillvary          |
Petitioner                         | Civil Docket NO.
                                   | _____
                                   | On Petition for Deposition Under Rule 27
                                   |              Civil Action
                                   |
                                   |

### Petition to Perpetuate Testimony Under Rule 27

Plaintiff Caleb L. McGillvary ("Plaintiff") hereby petitions the

Court under Rule 27(a) for an order for a deposition; and for production

of documents under Rules 30 and 34, and for issuance of Subpoenas

under Rule 45 associated therewith; to perpetuate the testimony of

James Galfy, Theodore Romankow, Junaid Shaikh, and Robert

Pandina.

## Grounds for Relief

Petitioner adopts by reference his attached declaration in support

of this petition, pursuant to Fed. R. Civ. P. 10(c), and incorporates same

as though fully set forth herein.

"A person who wants to perpetuate testimony about
any matter cognizable in a United States court may file a
verified petition in the district court for the district where
any expected adverse party resides. The petition must ask
for an order authorizing the petitioner to depose the named
persons in order to perpetuate their testimony. The petition
must be titled in the petitioners name and must show:

(A) that the petitioner expects to be a party to an
action cognizable in a United States court but cannot
presently bring it or cause it to be brought;

(B) the subject matter of the expected action and the
petitioners interest;

(C) the facts that the petitioner wants to establish by
the proposed testimony and the reasons to perpetuate it;

(D) the names or a description of the persons whom
the petitioner expects to be adverse parties and their
addresses, so far as known; and

(E) the name, address, and expected substance of the
testimony of each deponent." Fed. R. Civ. P. 27(a)(1)

Plaintiff has set forth the name, address, and expected testimony

of Theodore Romankow, Junaid Shaikh, and Robert Pandina in his

2 0. 0U

Declaration in support of this petition. To wit: Romankow is expected to testify about:

a.) Specific contributions to, communications with, and testimonial affairs attended with, Nicholas Scutari that are relevant to the appointment of Robert Andrew Kirsch as a Judge of the NJ Superior Court or the reappointment of Karen M. Cassidy as a Judge of the NJ Superior Court; or that are relevant to the Fort Monmouth Economic Revitalization Authority, the appointment of any officers thereof, or the requests for offers to purchase or bid selection decision thereof; or that are relevant to the introduction or passage or lobbying of or for any laws relating to local public contract laws; which is believed will show that Romankow engaged in unregistered lobbying with Scutari;

b.) Specific contributions to, communications with, and testimonial affairs attended with, Phil Murphy that are relevant to the appointment of Robert Andrew Kirsch as a Judge of the NJ Superior Court or the reappointment of Karen M. Cassidy as a Judge of the NJ Superior Court; or

that are relevant to the Fort Monmouth Economic Revitalization Authority, the appointment of any officers thereof, or the requests to offers to purchase or bid selection decision thereof; or that are relevant to the introduction or passage or lobbying of or for any laws relating to local public contract laws; which is believed will show that Romankow engaged in unregistered lobbying with Murphy;

c.) Specific contributions to, communications with, and testimonial affairs attended with, Rodemar Perez or any other employee of the Union County Jail or related health care providers thereat, during the period from May 12, 2013 to May 31, 2019, whether personally or indirectly through the Trinitas Board of Directors, or any officer or employee thereof; which is believed will show that Romankow engaged in public misconduct and violations of the bribery statute with Perez, causing Perez to use his office as Union County Jail Psychiatrist to fabricate reports to discredit Plaintiff;

d.) Specific Real Estate Business or any other transactions engaged in with Joseph J. Galfy, Jr. or the law firm of

4 0.96

Kochanski, Baron, and Galfy LLP whether personally or in any of his official capacities in the Union County or NJ State Governments; including, but not limited to, transactions between Joseph J. Galfy, Jr. or the law firm of Kochanski, Baron, and Galfy LLP and the Union County Improvement Authority, the Trinitas Regional Health Center, the Waterfront Commission, the Union County Prosecutor's Office, or the Union County Board of Chosen Freeholders at any time at which Romankow was an officer or employee of any of those agencies;

e.) Specific communications made with Netflix, RawTV, or any agents, employees, or contractors thereof or therewith; as well as any transactions, payments, payments in kind, or exchanges of benefits, promises, or promises in kind made between Romankow and such people or entities;

f.) Specific communications made with John Holl, Robert Henderson, Dean Marcantonio, Jeff Stricker, Gabriel Robert Sanchez, Collette Camden, Robert Miller, Sally Brindle, Bartholomew Layton, Michael Tevanney, or any other

person appearing in or who was interviewed or approached in relation to the Netflix Movie, "The Hatchet Wielding Hitchhiker";

g.) Specific communications made with the Fort Monmouth Economic Revitalization Authority, its Board, or any of its Committees, including but not limited to the Real Estate Committee and Audit Committee; or any agents, employees, or contractors thereof or therewith, including but not limited to Kara Kopach, Anthony Talerico, Jr., Jay Coffey, Regina McGrade, and Lillian Burry; as well as any transactions, payments, payments in kind, or exchanges of benefits, promises, or promises in kind made between Romankow and such people or entities;

h.) Specific communications made during the period from December 13-14, 2022 relevant to the release of the trailer for "The Hatchet Wielding Hitchhiker on Netflix, including but not limited to a list of all emails and phonecalls made by Romankow during that period;

*Pa88*

i.) Specific communications made during the period from January 10-13, 2023 relevant to the release of "The Hatchet Wielding Hitchhiker on Netflix, including but not limited to a list of all emails and phonecalls made by Romankow during that period;

Shaikh is expected to testify about:

a.) Specific meetings with James Galfy, any communications between himself and James Galfy;

b.) A list of Specific improvements, benefits, and renovations to the facilities where he works at the University of Medicine and Dentistry of New Jersey for the period from May 14, 2013 to the present;

b.) The nature of his employment and associations with the University of Medicine and Dentistry of New Jersey for the period from May 14, 2013 to the present;

d.) the budget and list of Specific expenditures and accounts for his department at the University of Medicine and Dentistry of New Jersey for the period from May 14, 2013 to the present;

P. 99

Pandina is expected to testify about:

a.) Specific times at which he was contacted by the Union County Prosecutor's Office, or any officer, employee, or agent thereof, in relation to Caleb L. McGillvary, Joseph J. Galfy, Jr., or any proceeding involving either; and all communications between himself and said entities or individuals;

b.) Specific times at which he was contacted by James Galfy, or any officer, employee, or agent thereof, in relation to Caleb L. McGillvary, Joseph J. Galfy, Jr., or any proceeding involving either; and all communications between himself and James Galfy;

c.) The process by which contributions were made to the Rutgers University Center for Alcohol Studies during the period between April 1, 2015 and April 1, 2016;

d.) A comprehensive list of expenditures, payments, salaries, and accounts for the Center of Alcohol Studies for the Period from April 1, 2015 until his retirement therefrom.

The reasons for perpetuating this testimony is also set forth in the Declaration: each of the aforementioned witnesses are over 71 years of age, and are not expected to live until they can be called as witnesses. See United States Life Tables, as developed by the United States Department of Health, Education, and Welfare. It is highly likely that they will be unavailable to testify if deposition is delayed. Plaintiff has set forth in his Declaration that each witness is over 71 years of age; and that the loss of any of their key testimony would result in a failure of justice. "The circumstance that '[The witness] is 71 years old' is quite meaningful. It would be ignoring the facts of life to say that a 71 year old witness will be available, to give his deposition or testimony, at an undeterminable future date when a pending criminal [...] action will have been 'determined', and the trial of a related civil action will subsequently take place." Texaco v Borda 383 F.2d 607, 609 (CA3 1967). The 3rd Circuit already having found a witness being 71 years old as making perpetuation of testimony necessary to "prevent a failure or delay of justice"; Galfy, Romankow, Shaikh, and Pandina each being over 71 years of age makes perpetuating their testimony that much more urgent and necessary.

9 Pg91

## CONCLUSION

For all the foregoing reasons, the petitioner respectfully requests the Court to grant this petition and order the deposition of James Galfy, Theodore Romankow, Junaid Shaikh, and Robert Pandina under Rule 27; and to order the production of documents under Rules 30 and 34, and for issuance of Subpoenas under Rule 45 associated therewith; to perpetuate testimony in this matter.

Respectfully Submitted,

Date: 11/6/23

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

io page

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

### United States District Court
### For the District of New Jersey

| | |
|---|---|
| In Re Caleb L. McGillvary | Civil Docket NO. |
| Petitioner | |
| | On Petition for Deposition Under Rule 27 |
| | Civil Action |
| | Declaration in Support of Petition for |
| | Deposition Under Fed. R. Civ. P. 27 |

I, the Undersigned, hereby declare pursuant to 28 USCS §1746 as

follows:

1.)    I am the pro se petitioner to perpetuate testimony in the

above-captioned matter;

2.)    In the currently pending related matter "McGillvary v

Davis" Dkt No. 2:22-cv-04185-MEF (DNJ), the NJ State

criminal conviction of Petitioner is being challenged;

3.)    On July 28, 2022, the Court issued an order that was not

final in the related matter McGillvary v Galfy Dkt No. 2:21-

1

Pa93

cv-17121-MCA-CLW (USDC-DNJ). An appeal followed, at McGillvary v Galfy App. No. 23-2188 (USCA-3rd Cir.); which was dismissed for lack of jurisdiction due to the non-finality of the order. In the interim, Plaintiff had filed a motion under Rule 27(b) to perpetuate the testimony of James Galfy because of his advanced age, which was expected under the NJ Life Expectancy Table to result in his death and unavailability if deposition were delayed. Inexplicably, Magistrate Judge Cathy L Waldor denied the motion, which was timely objected to by Petitioner. However, in the intervening time the appeal had been dismissed, so this Petition follows.

4.) The USDC-DNJ has already held that Petitioner has stated meritorious claims against James Galfy, the Estate of Joseph J. Galfy, Jr., Theodore Romankow, Junaid Shaikh, and Robert Pandina; for engaging in a conspiracy with each other to deprive Petitioner of his 5th and 14th amendment due process rights; using money from the Estate of Joseph J Galfy, Jr. to cause the absence or bias of witnesses at

Petitioner's criminal trial. It is res judicata that Petitioner's claims to this effect are nonfrivolous. See <u>McGillvary v Galfy</u> Dkt No. 2:21-cv-17121-MCA-CLW (USDC-DNJ), ECF 66.

5.) It is judicially noticeable that the average life expectancy in New Jersey is 74 years. This fact is listed in the life expectancy tables used in the NJ Courts. For this reason, it is judicially noticeable that James Galfy, Theodore Romankow, Junaid Shaikh, and Robert Pandina are not expected to live past 74 years of age.

6.) I intend to produce testimony by James Galfy in the event of further proceedings at such time my claims previously barred by Heck v Humphrey will accrue. As such, I expect him to be a party to an action cognizable in a U.S. Court but which cannot presently be brought. James Galfy is at least 73 years old, and is not expected to live much longer, according to the NJ Life Expectancy recognized by NJ Government and subject to judicial notice under F.R.E. 201(b). Delay of deposition may result in his permanent unavailability because of his death. I intend to produce

3

testimony by Theodore Romankow, Junaid Shaikh, and

Robert Pandina in one or more actions cognizable in a U.S.

Court, but which cannot presently be brought. The Court has

already held, as stated in "3" above, that at least one such

action will accrue in the indeterminable future;

7.)    It is my belief that Theodore Romankow, Junaid Shaikh, and

Robert Pandina are each at least 71 years old, and are

therefore not expected to live much longer. Delay of

deposition may result in their permanent unavailability

because of their death;

8.)    I intend to bring an action in the U.S. District Court, re-

filing all claims found by the U.S.D.C. to be meritorious yet

Heck-barred in McGillvary v Galfy Dkt No. 2:21-cv-17121-

MCA-CLW ECF 66; as soon as my conviction is overturned.

The testimony sought by this motion is both relevant and

material to these claims. The loss of James Galfy, Theodore

Romankow, Junaid Shaikh, or Robert Pandina's testimony

would prejudice me in my litigation of claims, and would

4

P. 96

cause a failure of justice. Deposing them expediently will prevent a failure of justice.

9.)  James Galfy resides at 26 Emily Terrace, Warren, NJ 07059. The substance of his testimony includes his use of the Estate of Joseph J Galfy, Jr. to tamper with witnesses, bribe investigators to destroy or misrepresent evidence, bribe Plaintiff's defense counsel at his criminal trial, and bribe the trial judge at Plaintiff's criminal trial, Robert A Kirsch, who is now a federal judge in the District of New Jersey. It is expected to show that transfers of money or other assets were made from account #381034636525 Bank #02120033 and/or other assets within control of the Estate or the Administrator thereof; to investigators, witnesses, parties, or judicial officers in Plaintiff's criminal trial, and/or entities or individuals in whose welfare such investigators, witnesses, parties, or judicial officers have an interest in. Specifically, Plaintiff believes on information that Dr. Junaid Shaikh's workplace received $150,000; that Dr. Robert Pandina's workplace received $150,000; that John G Cito's daughters'

Pa 97

trust accounts received an unknown amount, believed to be $150,000; that an entity or individual in whose welfare Hon. Robert A. Kirsch, U.S.D.J. has an interest in received an unknown amount, believed to be $150,000; and that investigators at the crime scene, including but not limited to Robert Henderson and Terrance Harrison, received currency, coins or ingots of gold or other precious metals from the Estate of Joseph J. Galfy, Jr., in furtherance of the conspiracy to deprive Plaintiff of his Due Process rights.

10.)  I intend to bring an action in the U.S. District Court concerning Theodore Romankow's participation in a bid rigging scheme involving Netflix's acquisition of a 292 acre mega parcel from the Fort Monmouth Economic Revitalization Authority; which acquisition was made contingent on Netflix's conforming their production of the film "The Hatchet Wielding Hitchhiker" to a narrative imposed by Romankow and his co-conspirators, which include Nicholas Scutari. The testimony sought by this petition is both relevant and material to these claims.

11.) Theodore Romankow resides at

28 BRISTOL CT.

BERKELEY HEIGHTS, NJ 07922

The substance of his testimony includes, but is not limited

to:

a.) Specific contributions to, communications with, and testimonial affairs attended with, Nicholas Scutari that are relevant to the appointment of Robert Andrew Kirsch as a Judge of the NJ Superior Court or the reappointment of Karen M. Cassidy as a Judge of the NJ Superior Court; or that are relevant to the Fort Monmouth Economic Revitalization Authority, the appointment of any officers thereof, or the requests for offers to purchase or bid selection decision thereof; or that are relevant to the introduction or passage or lobbying of or for any laws relating to local public contract laws; which is believed will show that Romankow engaged in unregistered lobbying with Scutari;

b.) Specific contributions to, communications with, and testimonial affairs attended with, Phil Murphy that are

relevant to the appointment of Robert Andrew Kirsch as a Judge of the NJ Superior Court or the reappointment of Karen M. Cassidy as a Judge of the NJ Superior Court; or that are relevant to the Fort Monmouth Economic Revitalization Authority, the appointment of any officers thereof, or the requests to offers to purchase or bid selection decision thereof; or that are relevant to the introduction or passage or lobbying of or for any laws relating to local public contract laws; which is believed will show that Romankow engaged in unregistered lobbying with Murphy;

c.) Specific contributions to, communications with, and testimonial affairs attended with, Rodemar Perez or any other employee of the Union County Jail or related health care providers thereat, during the period from May 12, 2013 to May 31, 2019, whether personally or indirectly through the Trinitas Board of Directors, or any officer or employee thereof; which is believed will show that Romankow engaged in public misconduct and violations of the bribery statute

Pa100

with Perez, causing Perez to use his office as Union County

Jail Psychiatrist to fabricate reports to discredit Plaintiff;

d.) Specific Real Estate Business or any other transactions

engaged in with Joseph J. Galfy, Jr. or the law firm of

Kochanski, Baron, and Galfy LLP whether personally or in

any of his official capacities in the Union County or NJ State

Governments; including, but not limited to, transactions

between Joseph J. Galfy, Jr. or the law firm of Kochanski,

Baron, and Galfy LLP and the Union County Improvement

Authority, the Trinitas Regional Health Center, the

Waterfront Commission, the Union County Prosecutor's

Office, or the Union County Board of Chosen Freeholders at

any time at which Romankow was an officer or employee of

any of those agencies;

e.) Specific communications made with Netflix, RawTV, or

any agents, employees, or contractors thereof or therewith;

as well as any transactions, payments, payments in kind, or

exchanges of benefits, promises, or promises in kind made

between Romankow and such people or entities;

9

f.) Specific communications made with John Holl, Robert Henderson, Dean Marcantonio, Jeff Stricker, Gabriel Robert Sanchez, Collette Camden, Robert Miller, Sally Brindle, Bartholomew Layton, Michael Tevanney, or any other person appearing in or who was interviewed or approached in relation to the Netflix Movie, "The Hatchet Wielding Hitchhiker";

g.) Specific communications made with the Fort Monmouth Economic Revitalization Authority, its Board, or any of its Committees, including but not limited to the Real Estate Committee and Audit Committee; or any agents, employees, or contractors thereof or therewith, including but not limited to Kara Kopach, Anthony Talerico, Jr., Jay Coffey, Regina McGrade, and Lillian Burry; as well as any transactions, payments, payments in kind, or exchanges of benefits, promises, or promises in kind made between Romankow and such people or entities;

h.) Specific communications made during the period from December 13-14, 2022 relevant to the release of the trailer

for "The Hatchet Wielding Hitchhiker on Netflix, including but not limited to a list of all emails and phonecalls made by Romankow during that period;

i.) Specific communications made during the period from January 10-13, 2023 relevant to the release of "The Hatchet Wielding Hitchhiker on Netflix, including but not limited to a list of all emails and phonecalls made by Romankow during that period;

12.)  Junaid Shaikh resides at

300 NORTH AVE E.
WESTFIELD, NJ 07090

The substance of his testimony includes, but is not limited to:

a.) Specific meetings with James Galfy, any communications between himself and James Galfy;

b.) A list of Specific improvements, benefits, and renovations to the facilities where he works at the University of Medicine and Dentistry of New Jersey for the period from May 14, 2013 to the present;

b.) The nature of his employment and associations with the University of Medicine and Dentistry of New Jersey for the period from May 14, 2013 to the present;

d.) the budget and list of Specific expenditures and accounts for his department at the University of Medicine and Dentistry of New Jersey for the period from May 14, 2013 to the present;

13.) Robert Pandina resides at

1011 MADDUX LN
GREENSBORO, GA 30642

The substance of his testimony includes, but is not limited to:

a.) Specific times at which he was contacted by the Union County Prosecutor's Office, or any officer, employee, or agent thereof, in relation to Caleb L. McGillvary, Joseph J. Galfy, Jr., or any proceeding involving either; and all communications between himself and said entities or individuals;

b.) Specific times at which he was contacted by James Galfy, or any officer, employee, or agent thereof, in relation to Caleb L. McGillvary, Joseph J. Galfy, Jr., or any proceeding involving either; and all communications between himself and James Galfy;

c.) The process by which contributions were made to the Rutgers University Center for Alcohol Studies during the period between April 1, 2015 and April 1, 2016;

d.) A comprehensive list of expenditures, payments, salaries, and accounts for the Center of Alcohol Studies for the Period from April 1, 2015 until his retirement therefrom.

14.) Although I have subsequently lost the document itself, and have been unable to find it despite reasonable due diligence including going through every single file folder in my cell, I incorporate my "certification in support of Plaintiff's motion for discovery and for subpoena to issue", ECF 51 in McGillvary v Galfy Dkt No. 2:21-cv-17121-MCA-CLW, and set forth same herein.

13

15.)  I aver that it shows documents, the production of which is necessary to perpetuate the testimony of James Galfy and thereby prevent the failure of justice. The Court should grant my motion to perpetuate testimony under Rule 27 for all the foregoing reasons, and for all the reasons set forth in my motion.

16.)  For the foregoing reasons, it is necessary to issue Subpoenas Duces Tecum under Rule 45 as part of these proceedings under Rule 27(a), requiring the bank corresponding to Bank #02120033 to produce records of all transfers of money or other assets which were made from account #381034636525 Bank #02120033 and/or other assets within control of the Estate or the Administrator thereof, for the relevant period from 5/16/13-present.

14

I declare under penalty of perjury that the documents attached hereto
are true copies of the originals.

I declare under penalty of perjury that the foregoing statements are
true and accurate.

Dated: 11/6/23

Caleb L. McGillvary
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

EXHIBIT R

CO-30 A    NEW JERSEY STATE PRISON    Rev. 3/1/21
POSTAGE REMIT

DATE: 11/6/23    LOCATION: 6R81

SBI NUMBER: 102317G

INMATE NAME: CALEB MCGILLVARY

INMATE SIGNATURE: [signature]

TO: BUSINESS MANAGER    DATE MAILED: _____

| (✓) | Check Appropriate Box (s) | |
|---|---|---|
| ✓ | Legal Postage | $ 9.95 |
| ✓ | Certified Cert. #7612047000021138(732 | 4.35 |
| ✓ | Return Receipt Requested | 3.85 |
| | Postage Affixed; **SEND DIRECT** Legal Postage Only **TO MAILROOM** | |
| | Regular Postage    or    UPS    Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property 1LB7.7 | Total Postage and Fees | $ 17.85 |

SENT TO: CLERK, USDC - DNJ

ADDRESS: PRINT 407 E. STATE ST.
CAMDEN, NJ 08101 - 2797 ENV/PET N-R27

WITNESS: J Feldman    PRINT

SIGNATURE: PRINT [signature]    APPROVED

CHECK#    DATE: 11/4/23

# EXHIBIT S



SENDER: COMPLETE THIS SECTION

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CLERK, USDC-DNJ
402 E. STATE ST.
CAMDEN, NJ 08101-2797

9590 9402 4431 8248 7087 73

2. Article Number (Transfer from service label)
7012 0470 0002 1138 6732

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery
Nolan Janccrens Jr.                  11/16/23

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

A-110

# EXHIBIT T

CO-30 A    NEW JERSEY STATE PRISON    Rev. 3/1/21
POSTAGE REMIT

DATE: 9/25/24    LOCATION: 6B28

SBI NUMBER: 1023176

INMATE NAME: CALEB MCGILLVARY

INMATE SIGNATURE: ___

TO: BUSINESS MANAGER    DATE MAILED: ___

(✔) Check Appropriate Box(s)

| | | |
|---|---|---|
| ✔ | Legal Postage | $ 9,25 |
| ✔ | Certified Cert. # 70041350000404782295 | $ 4,85 |
| ✔ | Return Receipt Requested | 4,10 |
| | Postage Affixed;  **SEND DIRECT** Legal Postage Only  **TO MAILROOM** | |
| | Regular Postage    or    UPS    Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property | Total Postage and Fees | $ 18,20 |

SENT TO: CLERK, USDC - DNJ
PRINT 4TH & COOPER STS CAMDEN, NJ 08101
ADDRESS:
ENC: MFET R ELNPLT  BIO NJ DEFS 1:23-CV-21605

WITNESS: J. Feldman
PRINT
SIGNATURE: ___    APPROVED

CHECK# 15 312    DATE: ___

CO-30 A    NEW JERSEY STATE PRISON    Rev. 3/1/21
POSTAGE REMIT

DATE: 9/25/24    LOCATION: 6RB1

SBI NUMBER: 102317G

INMATE NAME: CALEB MCGILLVARY

INMATE SIGNATURE: CRM

TO: BUSINESS MANAGER    DATE MAILED: _____

| ✔ | Check Appropriate Box (s) | | $ 9,25 |
|---|---|---|---|
| ✔ | Legal Postage | | 4,85 |
| ✔ | Certified Cert. # 7004 1350 0004 0478 2278 | | 4,10 |
| ✔ | Return Receipt Requested | | |
| | Postage Affixed; Legal Postage Only | SEND DIRECT TO MAILROOM | |
| | Regular Postage or UPS Property | | |
| | Additional Insurance Amount $ | | |
| | No Postage Inter Office Mail | | |
| | Weight of Mail/Property | Total Postage and Fees | $ 18,20 |

SENT TO: HON. JOHN MILTON YOUNGE, USDJ
PRINT
ADDRESS: 15613 USCTHSE 601 MARKET ST,
PHILADELPHIA, PA 19106 - 1790

WITNESS: J. Fields
PRINT
SIGNATURE: J. Fields                    APPROVED

CHECK#: 15.602          DATE: _____

EXHIBIT U

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CLERK, USDC-DNJ
4TH & COOPER STS. CAMDEN, NJ
08101-2797
ENC: MFET R ELLENPORT'S MTD
BIO NJ DEF'S MTD
1:23-CV-22605-JMY

9590 9402 4431 8248 6919 83

2. Article Number *(Transfer from service label)*
7604 1350 0004 0478 2285

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X 
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery
Aela Zypenzski  9/30/24

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

SEP 30 2024

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

---

USPS TRACKING #

9590 9402 4431 8248 6919 83

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

CALEB MCGILLVARY
#1222665/SBI#1023176
NJSP PO BOX 861
TRENTON, NJ
08625-0861

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

HON. JOHN MILTON YOUNGE, USDJ
15613 US CTHSE 601 MARKET ST,
PHILADELPHIA, PA 19106-1790
ENC: MFET R ELLENPORT MTD
BIO NJ DEFS MTD
1:23-CV-22605-JMY

9590 9402 4431 8248 6919 76

2. Article Number (Transfer from service label)
7004 1350 0004 0478 2278

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
Indar Youngr                     9 31 24

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

USPS TRACKING #

9590 9402 4431 8248 6919 76

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

81

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

CALEB MCGILLVARY
#1222665/SBI #1023174
NJSP PO BOX 861
TRENTON, NJ
08625

# EXHIBIT V

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

November 1, 2024

Hon. John Milton Younge, U.S.D.J.
15613 US Courthouse
601 Market St.
Philadelphia, PA 19106

      RE: BRIEF IN OPPOSITION TO STATE DEFENDANT'S MOTION
      Caleb L. McGillvary v. Nicholas Scutari et al
      Civil Action No. 1:23-cv-26605-JMY
      Hon. John Milton Younge, U.S.D.J.

Dear Judge Younge;

      Please find enclosed my declaration, in which I submit under penalty of perjury the postage remits and return receipts showing that on September 25, 2024, I sent a 15.3 oz package to the Clerk of the District Court for the District of NJ, and a 15.6 oz package to Your Honor. The remits and receipts indicate that the packages contained my motion under Rule 6(b) in regards to Robert Ellenport, as well as my Brief in Opposition to State Defendants' Motion to Dismiss and Declaration in SUpport thereof, which cumulatively weigh about 15 oz, consistent with a total page count of approximately 180 pages. The return receipts indicate that the Clerk of the DNJ and Your Honor both received these packages on September 30, 2024, and the docket reflects that the Clerk has filed the motion under Rule 6(b); See ECF 264; See also ECF 264.6 (Image of envelope bearing certified mail tracking number). However, as of today's date, neither the Brief in Opposition nor the Declaration in Support thereof has been entered onto the docket. I ask that, if the Clerk has lost or misplaced these documents, that Your Honor please forward the Clerk a copy of Your Honor's courtesy copy of these documents, so that the Clerk can enter these documents onto the docket. In the alternative, I can send the Court another copy of these documents, but I ask if the Court requires me to do so, that the

1

Court Order that I be granted an extension of time in which to do so, as I am encountering a lot of difficulties at the prison with making copies and sending mail.

Respectfully Submitted,

11/1/24

Caleb L. McGillvary
In Propria Persona

ENCL:
CC: FILE

2

EXHIBIT W

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CLERK, USDC- DNJ
50 WALNUT ST. NEWARK, NJ 07102
ENCL. LETTER TO JUDGE PADIN
2.25-CV-01497-EP



9590 9402 8051 2349 3798 07

2. Article Number *(Transfer from service label)*

7022 2410 0003 3323 7096

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☑ Agent    ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery
reader M    3/31

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☑ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery
☑ RETURN RECEIPT FOR MERCHANDISE

Domestic Return Receipt

---

**USPS TRACKING #**



9590 9402 8051 2349 3798 07



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

CALEB MCGILLVARY
#1222665/SBI#1023176
NJSP PO BOX 861
TRENTON, NJ
08625

EXHIBIT X

| CO-30 A | NEW JERSEY STATE PRISON | Rev. 3/1/21 |
|---|---|---|

**POSTAGE REMIT**

DATE: 3/3/75 _____ LOCATION: 6R81 ___

SBI NUMBER: 102 5176 ___

INMATE NAME: CALEB MCGILVARY ___

INMATE SIGNATURE: ___

TO: BUSINESS MANAGER          DATE MAILED: ___

(✔) Check Appropriate Box (s)

| | | $ |
|---|---|---|
| ✔ | Legal Postage | |
| ✔ | Certified Cert. # 7022 24|0800|3323155 1 | |
| ✔ | Return Receipt Requested | |
| | Postage Affixed; **SEND DIRECT** Legal Postage Only **TO MAILROOM** | |
| | Regular Postage  or  UPS  Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property | Total Postage and Fees | $ 9.64 |

SENT TO: CLERK, USDC-DNJ

ADDRESS: PRINT 50 WALNUT ST. NEWARK, NJ 07102

ENCL LTR JUDGE 1:15-1497-EP

WITNESS: _____

SIGNATURE: PRINT _____

APPROVED BY: 3/5

CHECK# _____ DATE: _____

# EXHIBIT Y

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

March 18, 2025

Clerk, US Dist. Ct. - DNJ
US Courthouse
~~402 E. State St.~~ 50 WALNUT ST.
Newark, NJ 07102

      RE: Caleb L. McGillivary, aka Caleb L. McGillvary v. U.S.
      Department of Homeland Security et al.
      Civil Action No. 2:25-01497-EP
      Hon. Evelyn Padin, U.S.D.J.

Dear Clerk;

      Please find enclosed and file onto the docket the original
of my letter to Judge Padin and declaration in support thereof;
in the above-captioned matter. Thank you.

Kind Regards,

Caleb L. McGillvary
In Propria Persona

ENCL:
CC: FILE

PROOF OF SERVICE

I, Caleb L. McGillvary, declare pursuant to 28 U.S.C. 1746 that on today's date, I placed in the institutional mailing system here where I'm incarcerated at NJ State Prison 3rd & Federal Streets Trenton, NJ 08625; with First Class Postage prepaid to be sent via USPS Mail; the original of my letter to Judge Padin and declaration in support thereof; in the above-captioned matter to the Clerk of the District Court at USDC-DNJ US Courthouse 50 Walnut St. Newark, NJ 07102. Pursuant to the prison mailbox rule, these documents are constructively filed as of the date of mailing. Pursuant to DNJ Local Civil Rules, upon said filing the Clerk files Plaintiff's document into the CM/ECF system. See DNJ L.Civ.R. 5.2.2 ("All civil ... cases and documents filed in this Court, will be entered into the Court's ECF System in accordance with these Procedures."). Upon entry of a document in CM/ECF, notice of electronic filing thereof ("NEF"); is automatically thereby sent to all CM/ECF-participating parties. See DNJ L.Civ.R. 5.2.1(d) ("NEF is a notice automatically generated by the Electronic Filing System at the time a document is filed with the system..."). This NEF constitutes service upon all such parties. See DNJ L.Civ.R. 5.2.14(b)(1)("Transmission of the NEF constitutes service of the filed document on Filing Users"). Therefore, pursuant to this Court's Local Civil Rules, on today's date I have also served a copy of each said document on all appearing captioned Defendants, who are represented by CM/ECF-user Counsel.

I hereby invoke the prison mailbox rule.

I declare under penalty of perjury that the foregoing statements made by me are true and accurate.

Executed this 18 Day of _MARCH_____, 20 25

_____
Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

March 18, 2025

Hon. Evelyn Padin, U.S.D.J.
US Dist. Ct. - DNJ
US Courthouse
~~402 E. State St.~~ 50 WALNUT ST.
Newark, NJ 07102

  RE: Caleb L. McGillivary, aka Caleb L. McGillvary v. U.S.
  Department of Homeland Security et al.
  Civil Action No. 2:25-01497-EP

Dear Judge Padin;

  Please find enclosed my declaration showing that I've
previously sent you a letter regarding the misdesignation of this
action, which letter has for some reason not been entered onto
the docket over a week after USPS shows it was received.

  This action arises under 8 U.S.C. 1359, which gives me a
private cause of action under federal common law as held by
Bureau of Immigration Appeals in Matter of Yellowquill, 16 I. &
N. Dec. 576, 577-78 (BIA 1978) ("We have decided to accept the
reasoning in Akins v. Saxbe, supra, as being correct and
applicable to the deportation porvisions of the Act. American
Indians born in Canada who are within the protection of section
289 of the Act are not subject to deportation on any ground")
(citing Akins v. Saxbe, 380 F. Supp. 1210 (D. Me. 1974); 8 U.S.C.
1359); see also Akins, 380 F. Supp. At 1220 n.7 (recognizing a
private right existing under 8 U.S.C. 1359 exists and is is
enforceable on actions under the Declaratory Judgement Act and

1

the Federal Mandamus Statute, 28 U.S.C. 1361). This action is not under the Federal Habeas Statute, 28 U.S.C. 2241, because I am not in federal custody.

Although a habeas petition pursuant to 2241 is not subject to AEDPA's gatekeeping mechanism; see Zayas v. I.N.S., 311 F.3d 247, 255 (3d Cir. 2002) ("The statutory text [of 28 U.S.C. 2244(b)] does not in terms govern petitions under 2241."); petitions under 2241 are still subject to the predecessor of AEDPA's gatekeeping mechanism: the abuse of the writ doctrine. Zayas, 311 F.3d at 257. The abuse of the writ doctrine generally prohibits a petitioner under 2241 from raising new claims that could have been resolved in a previous action. Ibid. The prejudice to pro se litigants caused by the recharacterizations of their complaints as habeas petitions, has inspired the Third Circuit and Supreme Court to issue precedent that requires judges to give notice to pro se litigants prior to such recharacterizations. See Castro v. United States, 540 U.S. 375, 383, 124 S. Ct. 786, 157 L. Ed. 2d 778 (2003) (requiring such notice before recharacterizing a pro se filing as a 2255 motion); United States v. Miller, 197 F.3d 644 (3d Cir. 1999) (same); Mason v. Meyers, 208 F.3d 414, 418-19 (3d Cir. 2000) (applying Miller's rule for providing notice prior to recharacterizing AEDPA filings to 2254). I was never provided with any notice prior to my federal common law claim under Yellowquill and 8 U.S.C. 1359 being converted to a petition under 28 U.S.C. 2241, and I object to the mischaracterization.

2

## CONCLUSION

Because this recharacterization could cause me irreparable injury in the prejudice to my ability to file future habeas petitions challenging any detention of myself pursuant to the Immigration Act, I request the Court to please change the nature of the action to reflect that it is not a habeas corpus action.

Kind Regards,

DATE: 3/18/25

Caleb L. McGillvary
In Propria Persona

ENCL:
CC: FILE

3

EXHIBIT Z

CO-30 A          NEW JERSEY STATE PRISON          Rev. 3/1/21
                      **POSTAGE REMIT**

DATE: 3/18/25          LOCATION: 6R81

SBI NUMBER: 1023176

INMATE NAME: CALEB MCGILLVARY

INMATE SIGNATURE: [signature]

TO: BUSINESS MANAGER          DATE MAILED: _____

(✔)   Check Appropriate Box (s)

| | | |
|---|---|---|
| ✓ | Legal Postage | $ |
| ✓ | Certified Cert. # 7022 4100 0033 3373 0996 | |
| ✓ | Return Receipt Requested | |
| | Postage Affixed;  **SEND DIRECT** Legal Postage Only  **TO MAILROOM** | |
| | Regular Postage  or  UPS  Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |

Weight of Mail/Property | ____ | Total Postage and Fees $ 9.92

SENT TO: CLERK, USDC-DNJ
ADDRESS: PRINT 50 WALNUT ST, NEWARK NJ 07102
ENC: LTR JDG PADIN 1:25-CV-01477-EP

WITNESS: PRINT _____          APPROVED BY:
SIGNATURE: [signature]                    3/24

CHECK# _____          DATE: _____

# EXHIBIT AA

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Caleb L. McGillivary, aka ) | CIVIL ACTION NO. |
| Caleb L. McGillvary ) | 2:25-cv-01497-EP |
|     PLAINTIFF ) | Hon. Evelyn Padin, USDJ |
| ) | Motion Date: |
|     V. ) | May 19, 2025 |
| ) | |
| U.S. Department of Homeland ) | |
| Security, U.S. Immigration & ) | |
| Customs Enforcement, Kristi ) | |
| Noem, Secretary of U.S. ) | |
| Department of Homeland ) | |
| Security, John Doe 1, Director) | |
| U.S. Immigration & Customs ) | |
| Enforcement, John Doe 2, ) | |
| Special Agent in Charge, ) | |
| Immigrations & Customs ) | |
| Enforcement Newark Field ) | |
| Office ) | |
|     DEFENDANT ) | |
| ) | |

NOTICE OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION


Please take notice that, on November 18, 2024, at the US

District Court - DNJ US Courthouse 4th & Cooper Sts. Camden, NJ

08101, Plaintiff Caleb L. McGillvary ("Plaintiff") will move the

Court for an ex parte order granting a temporary restraining

order, and an order granting a preliminary injunction under Fed.

1

R. Civ. P. 65 and also issuing emergency relief pursuant to D.N.J. L. Civ. R. 65.1, enjoining the U.S. Department of Homeland Security and its officers, the U.S. Immigrations and Customs Enforcement and its officers, Kristi Noem in her office of Secretary of U.S. Department of Homeland Security, the Director of the U.S. Immigration & Customs Enforcement, and the Special Agent in Charge of the Immigrations & Customs Enforcement Newark Field Office from the apprehension, detention, deportation, exclusion, or removal of Caleb L. McGillvary.

As grounds for this motion, Plaintiff relies upon his Motion and attached Declaration in support of this motion.

A proposed form of order is attached.

Date: 4/9/25

_____
Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

2

# EXHIBIT BB

CO-30 A      NEW JERSEY STATE PRISON      Rev. 3/1/21
**POSTAGE REMIT**

DATE: 4/9/25      LOCATION: 6R81

SBI NUMBER: 1023176

INMATE NAME: Caleb McGillvary

INMATE SIGNATURE: _____

TO: BUSINESS MANAGER      DATE MAILED: _____

(✔)   Check Appropriate Box (s)

| (✓) | | $ |
|---|---|---|
| ✓ | Legal Postage | $ |
| ✓ | Certified Cert. # 70222410000337231681 | |
| ✓ | Return Receipt Requested | |
| | Postage Affixed;   **SEND DIRECT** Legal Postage Only   **TO MAILROOM** | |
| | Regular Postage   or   UPS   Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| | Weight of Mail/Property 10.4oz | Total Postage and Fees $13.26 |

SENT TO: HON. EVELYN PADIN, USDJ
ADDRESS: PRINT 50 WALNUT ST NEWARK, NJ 07102
ENC. MTN RULE 65 _____

WITNESS: _____
SIGNATURE: PRINT _____

**APPROVED**

CHECK# _____   DATE _____

CO-30 A    NEW JERSEY STATE PRISON    Rev. 3/1/21
POSTAGE REMIT

DATE: 4/9/25    LOCATION: 6C-81

SBI NUMBER: 1023170

INMATE NAME: CALEB MCGILVARY

INMATE SIGNATURE: ___

TO: BUSINESS MANAGER    DATE MAILED: ___

(✔) Check Appropriate Box (s)

| ✔ | Legal Postage | $ |
| ✔ | Certified Cert. # 7011 2510 0003 3518 7111 | |
| ✔ | Return Receipt Requested | |
| | Postage Affixed; SEND DIRECT Legal Postage Only TO MAILROOM | |
| | Regular Postage or UPS Property | |
| | Additional Insurance Amount $ | |
| | No Postage Inter Office Mail | |
| Weight of Mail/Property | | Total Postage and Fees $ 13.76 |

SENT TO: CLERK USDC - DNJ
ADDRESS: PRINT 50 WALNUT ST, NEWARK, NJ 07102
ENC: MOTION RULE 65

WITNESS: ___
SIGNATURE: ___    APPROVED

CHECK# ___

EXHIBIT CC

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

HON. EVELYN PADIN USDJ
50 WALNUT ST. NEWARK, NJ 07102
ENCL: MOTION RULE 65
1:25-CV-01497-EP

9590 9402 8051 2349 3795 79

2. Article Number (Transfer from service label)
7022 2410 0003 3323 1681

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Briana Townsend    ☑ Agent
                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
B. Townsend                      4/23/25

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery
☑ RETURN RECEIPT FOR MERCHANDISE

Domestic Return Receipt

---

USPS TRACKING #

PY DANIELS NJ 070
23 APR 2025 PM 5 L

9590 9402 8051 2349 3795 79

United States
Postal Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

CALEB MCGILLVARY
#1222665/SBI #1023174
NJSP PO BOX 861
TRENTON, NJ
08625

# EXHIBIT DD

# State of New Jersey
# Union County Surrogate's Court

In the Matter of the Estate of:
**Joseph J. Galfy Jr. (Never Married), Deceased**
**AKA: Joseph John Galfy, Jr.**

**EXECUTOR**
**SHORT FORM CERTIFICATE**
**OF LETTERS TESTAMENTARY**

Date of Death: **May 13, 2013**

I, **James S. LaCorte**, Surrogate of the County of Union, do hereby certify that the Last Will and Testament of the decedent, late of Union County, State of New Jersey, was admitted to Probate by the Surrogate of Union County, on July 3, 2013; and that Letters Testamentary were issued to:

**James T. Galfy AKA: James Galfy,**

the Executor(s) named therein, who is duly authorized to administer the estate of said deceased agreeably to said Will and said Letters Testamentary have never been revoked and still remain in full force and effect.

WITNESS my hand and seal of office this **21st day of March, 2016.**

James S. LaCorte
Surrogate & Deputy Clerk of Superior Court of N
Chancery Division, Probate Part, Union County



# LAST WILL AND TESTAMENT

## OF

## JOSEPH J. GALFY, JR.

I, JOSEPH J. GALFY, JR., residing and domiciled in the Township of Clark, County of Union, and State of New Jersey, declare this to be my Last Will and Testament, hereby revoking all Wills and Codicils previously made by me.

FIRST: I direct my Executor to pay my debts, funeral expenses, the expenses of my last illness, and the expenses of administering my estate as soon as practicable after my death.

SECOND: I give, devise and bequeath all of my clothing, jewelry, and personal effects, and all furniture, furnishings, household effects, and other tangible personal property in accordance with a written list or memorandum which I may have executed and which may be in existence at the time of my death. The term "tangible personal property" shall not include currency, coins or ingots of gold or other precious metals, or commodities

1

held by me as an investment.   If I have prepared such a written list or memorandum, it will be found with the original or with a copy of my Will.   To the extent that all such property is not effectively disposed of by such written list or memorandum, or if no such list or memorandum exists, I devise the same, including insurance policies thereon, to my brother JAMES T. GALFY, presently residing at in Warren, New Jersey. I authorize my Executor to pay all reasonable charges incurred in the storage, safekeeping and delivery of such property to my beneficiaries.   I direct that all expenses of distribution of my tangible personal property shall be considered as administration expenses of my estate.

THIRD:   (A)   All the rest, residue and remainder of my estate is hereinafter referred to as my "residuary estate."

(B)   I give, devise and bequeath my residuary estate as follows:

(1)   To the Liver Transplant and Hepatobiliary Diseases Program at the University Hospital, University of Medicine and Dentistry of New Jersey, Newark, New Jersey, I give, devise and bequeath the sum of $150,000.00 in the name of my late friend EUGENE J. FRAWLEY to be used for research into the cause, prevention and treatment of liver related diseases.

(2)   To the Center of Alcohol Studies, at Rutgers University, New Brunswick, New Jersey, the sum of $150,000.00 in the name of my late friend EUGENE J. FRAWLEY to be used for

2

research into the cause, prevention and treatment of alcoholism and alcohol related illnesses.

(3) To the Lambda Law Forum at the Seton Hall University School of Law, Newark, New Jersey, the sum of $50,000.00 in my name to be used as they see fit for the advancement of sexual orientation and gender identity rights and issues.

(4) To the Healthy Heart Center at the Robert Wood Johnson University Hospital at Rahway, New Jersey to be used for new or replacement equipment or other needs, as the Director of the Healthy Heart Center shall determine, the sum of $50,000.00.

(5) I give, devise and bequeath the balance of my residuary estate, including my current permanent residence at the time of my death, as follows:

(a) To my brother JAMES T. GALFY, thirty three and one third (33 1/3%) percent of the remaining balance of my residuary estate. In the event that my brother JAMES T. GALFY predeceases me, I direct that his share of my estate shall pass equally to his issue surviving at my death.

(b) To my longtime administrative assistant, MARION A. GROSSHANS, thirty three and one third (33 1/3%) percent of the remaining balance of my residuary estate.

(c) To my friend NORMAN H. SPRINGER of Las Vegas, Nevada, thirty three and one third (33 1/3%) percent of the remaining balance of my residuary estate.

3

(d) The share of either residuary beneficiary named in (b) or (c) above who fails to survive me shall lapse, and that share shall be added to my residuary estate and distributed to my remaining surviving residuary beneficiaries as set forth herein.

FOURTH: (A) I appoint my brother JAMES T. GALFY, as Executor of this my Last Will and Testament. If he shall fail to qualify or for any reason shall cease to serve as Executor, I appoint my friend NORMAN H. SPRINGER, Esq., as Executor in his place and stead.

(B) I direct that the Executor serving hereunder shall not be required to give bond or security in any jurisdiction.

FIFTH: (A) I authorize my Executor to pay all estate, inheritance and succession taxes (including any interest and penalties thereon) payable by reason of my death in respect of any property passing under this Will or in respect of any other property out of my residuary estate, however the same shall be apportioned against specific or residuary beneficiaries under this Will or any person receiving property outside of this Will that is subject to such taxes, and the same shall be reimbursed to the Estate.

(B) Whenever a choice is given to my Executor with respect to the dates as of which to value property for federal estate tax purposes, my Executor may elect the date deemed advisable by my Executor, and I further direct that my Executor

4

shall not be required to make any compensating adjustments between or among any of my beneficiaries for the results of such election. Whenever my Executor shall have the right to elect whether any expenses of administration of my estate shall be claimed as deductions for federal income tax or for federal estate tax purposes, I authorize my Executor to exercise such right of election as deemed advisable by my Executor, and I direct that no compensating adjustment between the income and principal beneficiaries of my estate shall be required to be made as a result of such election.

SIXTH: In the administration of my estate and of any fund held hereunder, my Executor shall have the following powers, exercisable without Court approval and in the absolute discretion of my Executor, upon such terms and conditions as they shall deem advisable, in addition to, and without limitation upon any other powers granted by this Will or by law:

(A) To retain any property owned by me or at any time held hereunder, including any business or interest therein;

(B) to invest and reinvest in any property whatsoever, without regard to any legal limitations upon investments, and without regard to the principle of diversification;

(C) to invest and reinvest in shares of common trust funds whether or not maintained by any corporate fiduciary serving hereunder;

5

(D)  to hold cash uninvested for a reasonable period of time without liability for interest thereon;

(E)  to sell or exchange any property at public or private sale, for cash or on credit, with or without security, and to comply with the terms of any stock buy-sell agreement or any similar agreement to which I may be a party and which continues after my death;

(F)  to mortgage, pledge or lease, or grant options with respect to any property, for any period of time, whether or not extending beyond the administration of my estate or any fund held hereunder;

(G)  to demolish, abandon, or otherwise dispose of any property;

(H)  to manage, insure, repair, improve, develop, subdivide, partition and alter any property;

(I)  to borrow money for any purpose in connection with the administration of my estate or any fund held hereunder from any person or corporation, including a fiduciary hereunder, on such terms as deemed advisable by my Executor;

(J)  to register and hold securities in the name of a nominee, and to hold securities in bearer form;

(K)  to incorporate any business or property; and thereafter to hold a majority or minority interest in such corporation;

6

(L) to transfer any business or property to a general or limited partnership, and thereafter to be a general or limited partner in such partnership;

(M) to vote stock or securities, in person or by proxy, discretionary or otherwise, or pursuant to a voting trust agreement;

(N) to exercise subscription and conversion rights, and to participate or refuse to participate in any type of reorganization, recapitalization, merger, consolidation, liquidation, dissolution or other action with respect to any corporation;

(O) to settle, compromise or refer to arbitration, any claim or obligation in favor of or against my estate or any fund held hereunder;

(P) to continue, renew, extend or modify any note, bond, other indebtedness or mortgage and to enforce payment of such indebtedness or mortgage by foreclosure or otherwise;

(Q) to employ and terminate the employment of legal counsel, accountants, brokers, investment advisors, custodians, managers, and other agents and employees, and to pay them reasonable compensation out of my estate or any fund held hereunder to which such is attributable and to appoint and pay reasonable compensation to an ancillary administrator;

(R) to allocate receipts and disbursements and gains

7

and losses between income and principal, in such manner as my Executor shall deem equitable;

(S)  to distribute any legacy or share of my estate or any fund held hereunder in cash or in kind or partially in each, pro rata or non pro rata, in such manner as my Executor shall deem equitable;

(T)  to move the situs of any fund established hereunder from New Jersey or any other state to any other state in the United States;

(U)  to exercise any and all of the powers, authorities and discretions conferred hereunder in respect of any securities of any corporate fiduciary acting hereunder, or in respect of any securities of a holding company or corporation owning securities of any corporate fiduciary acting hereunder; and

(V)  in general, to exercise any additional powers which I might exercise if I were living, competent and the absolute owner of any property at any time held hereunder.

SEVENTH:  (A)  Notwithstanding any contrary provisions herein contained, if pursuant to this Will any property shall become payable or distributable to a minor, and if no other trust is then to be held under this Will for his or her benefit, my Executor shall have the power, exercisable in his sole and absolute discretion and without Court approval, either to defer payment of such property, or to pay such property, in whole or in part, to

8.

such minor, to a parent or guardian of such minor, to a custodian for such minor under the New Jersey Uniform Gifts to Minors Act or any subsequent act, or under the corresponding legislative provisions of any other jurisdiction where such minor may reside, or to any adult with whom such minor may reside.

(B)   If my Executor shall defer payment of any such property, I authorize him to hold such property as a separate fund for the benefit of such minor with all the powers given to my Executor in this Will and by law to invest and reinvest the same and to apply for such minor's benefit, so much of the income and principal thereof as my Executor may deem necessary or desirable for the support, maintenance, health and education (including, without limitation, a primary, secondary, vocational and college education) of such minor, either by paying the expenses of such minor directly, or by making payments to such minor, to a parent or guardian of such minor, to a custodian for such minor under the New Jersey Uniform Gifts to Minors Act or any subsequent act, or under the corresponding legislative provisions of any other jurisdiction where such minor may reside, or to any adult with whom such minor may reside.  My Executor shall accumulate in such fund the balance of any income which is not so applied or paid and shall add the same to the principal of such fund.  When such minor shall attain the age of majority, the balance of such fund then remaining shall be distributed to him.  If such minor shall die before attaining

9

the age of majority the balance of such fund remaining at his or her death shall be paid and distributed to his or her then living issue, per stirpes, or in default thereof, to my then living issue.

(C)   My Executor shall not be responsible for the proper application or use of any authorized payment made under this Article, and the receipt of any person receiving such authorized payment shall be a sufficient discharge therefor even though the Executor hereunder may be such a person.   With respect to any property held under this Article, my Executor shall be entitled to such commissions thereon as are payable to a testamentary trustee.

(D) Throughout this Will all references to the age of minority or majority of a beneficiary are deemed to refer to the age of minority or majority under the laws of the State of New Jersey then in effect or the laws of the jurisdiction in which the beneficiary is domiciled, whichever age is older.

EIGHTH:  If any beneficiary referred to in this Will shall die within thirty (30) days after my death, such person shall be considered as not having survived me, for all purposes of this Will.  By this Article, I modify all otherwise provisions of this Will, notwithstanding any law or rule of construction to the contrary.

NINTH:    (A)  ·  Throughout this Will, when the masculine, feminine or neuter gender is used inappropriately, it shall mean the appropriate gender, and unless the context requires otherwise,

10

number shall include the plural, and vice versa.

     (B)  Any references in this Will, to "children" or "issue" shall include adopted persons and persons born before and after the date of this Will.

     IN WITNESS WHEREOF, I have on this 6th day of September, Two Thousand and Seven signed, sealed, published and declared the foregoing instrument as and for my Last Will and Testament.

JOSEPH J. GALFY, JR.

     The foregoing instrument, each page of which is identified by the signature of the Testator, JOSEPH J. GALFY, JR., was signed, sealed, published and declared by the said Testator to be his Last Will and Testament, in the presence of us, and each of us, who at his request and in his presence and in the presence of each other, all being present at the same time, have subscribed our names as witnesses the day and year above written.

Dara A. Floccari      residing at 1275 Westfield Ave.
                                           Rahway NJ 07065

Martha E. Gray      residing at 1275 Westfield Ave
                                           Rahway NJ. 07065

11

I, JOSEPH J. GALFY, JR., the Testator, sign my name to this instrument this 6th day of September, 2007, and being duly sworn, do hereby declare to the undersigned authority that I sign and execute it as my free and voluntary act for the purposes therein expressed; and that I am 18 years of age or older, of sound mind and under no constraint or undue influence.

_____
JOSEPH J. GALFY, JR., Testator

We, DARA A. FLOCCZAK and MARTHA E. CRAY the witnesses, sign our names to this instrument, and, being duly sworn, do hereby declare to the undersigned authority that the Testator signed and executed this instrument as his Last Will and that he signed it willingly; that each of us, in the presence and hearing of the Testator, hereby signs this Will as witness to the signing thereof by the Testator; and that to the best of our knowledge the Testator is 18 years of age or older, of sound mind and under no constraint of undue influence.

_____ 1275 Westfield Ave - Tahway NJ 07065    New Jersey
Witness
Dara A. Floccak    Address

Martha E Cray 1275 Westfield Ave Rahway NJ 07065 New Jersey
Witness Martha E Cray.
        Address

STATE OF NEW JERSEY ]
                     ] SS:
COUNTY OF UNION      ]

    Subscribed, sworn to and acknowledged before me by JOSEPH J. GALFY, JR., the Testator, and subscribed and sworn to before me by DARA A. FLOCZ. and MARTHA E. CRAY , the witnesses, this 6 th day of September , 2007.

_____
Andrew M. Baron
Attorney-at-Law
State of New Jersey

12

# EXHIBIT A