# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

No. 25-2096

---

## IN RE: CALEB L. MCGILLVARY
Petitioner/Appellant

---

On Petition for Writ of Mandamus to the United States District Court
for the District of New Jersey at Unassigned Civil Action

---

## MOTION FOR RECUSAL UNDER 28 U.S.C. 455(a), (b)

---

CALEB L. MCGILLVARY
Third and Federal Street
New Jersey State Prison
Po Box 861
Trenton, NJ 08625-0861
*In Propria Persona*



RECEIVED

AUG 04 2025

AT 8:3 11:00 AM
CLERK U.S. DISTRICT COURT - DNJ

## TABLE OF CONTENTS

MOTION UNDER 28 U.S.C. 455(a), (b)

...1

STATEMENT OF FACTS AND PROCEDURAL HISTORY

...1

LEGAL ARGUMENT

...16

POINT I: THE MEDICAL EXAMINER HAS STATED THAT HE SAW NEW JERSEY-LOCATED JUDGES, SOME POSSIBLY FEDERAL, CONGREGATED OUTSIDE THE CRIME SCENE; AND SINCE THE LOSS OR DESTRUCTION OF BRADY MATERIAL FROM THAT CRIME SCENE IS AT ISSUE IN THIS ACTION, IT OBJECTIVELY APPEARS THAT ONE OR MORE NJ FEDERAL JUDGES HAS PERSONAL KNOWLEDGE OF DISPUTED EVIDENTIARY FACTS REGARDING WHO ACCESSED THE CRIME SCENE

...13

    A. STANDARD OF REVIEW

...13

    B. ANALYSIS

...13

POINT II: THE PETITION AT 24-3031, LIKE THE PETITION FILED AT 24-1129, HAS BEEN QUEUED BEHIND ORDINARY CIVIL CASES ON THE APPELLATE DOCKET IN FLAGRANT DISREGARD OF F.R.A.P. 21(b)(6); AND SO IT REASONABLY APPEARS THAT THE PANEL JUDGES IN 24-1129 AND 24-3031 TO WHICH THOSE MANDAMUS PETITIONS WERE ASSIGNED SUFFER FROM THE SAME APPEARANCE OF PERSONAL BIAS

...14

**POINT III: THERE IS A LONG STANDING ROUTINE ORGANIZATIONAL PRACTICE BY OFFICIALS IN THE U.S. COURTHOUSES IN NEW JERSEY, OF OBSTRUCTION AND IMPEDIMENT OF PETITIONER'S CASES: WHICH CREATES THE APPEARANCE OF IMPRORPRIETY NECESSITATING RECUSAL OF CIRCUIT JUDGES LOCATED IN THE DISTRICT OF NEW JERSEY**

...17

    A. STANDARD OF REVIEW

...17

    B. ANALYSIS

...18

        1. DNJ Officials' Refusal to File Petitioner's Documents

...18

        2. DNJ Officals Tampering with the Record and Mischaracterizing Filings by Petitioner to Cause him Prejudice

...19

        3. Undue Delay by Federal Judges in New Jersey

...20

        4. Gamesmanship in Assignments and Orders

...21

        5. Gamesmanship in Service of Process

...23

        6. It Has Already Been Found to be in the Public Interest for the Scutari Case, the Habeas Case, and the Long Case to be Heard by a Judge from Outside the DNJ

...24

        7. The Routine Organizational Practice of DNJ-Located Judicial Officials Creates the Appearance of Impropriety

...24

**POINT IV: EVERY JUDGE RECOMMENDED FOR NOMINATION BY UNREGISTERED FOREIGN AGENT BOB MENENDEZ WHO PETITIONER'S CASES HAVE THUS FAR BEEN ASSIGNED TO: HAS OBSTRUCTED THOSE CASES; WHICH CREATES THE APPEARANCE OF IMPROPRIETY THAT ANY OF MENENDEZ'S RECOMMENDATIONS SHOULD PRESIDE OVER THIS CASE**

...25

A. STANDARD OF REVIEW

...25

    B. ANALYSIS

...25

CONCLUSION

...29

# TABLE OF AUTHORITIES

## CASELAW

Alexander v Primerica  Holdings, Inc., 10 F.3d 155, 162 (CA3 1993)
...18

McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH (USDC-DNJ)
...in passim

McGillvary v. Galfy, Dkt No. 2:21-cv-17121-MCA-CLW
...in passim

McGillvary v. Long, Dkt. No. 1:24-cv-09507-JMY
...14, 16, 18, 23, 24

McGillvary v Scutari et al, dkt no. 1:23-cv-22605-JMY
...in passim

McGillvary v. U.S. Department of Homeland Security, Dkt. No. 2:25-cv-01497-EP
...14, 15, 19


## STATUTES

28 U.S.C. 292(b)
...7, 8, 9, 18, 24

28 U.S.C. 455(a)
...1, 16, 17, 24, 28

28 U.S.C. 455(b)
...1, 16

28 U.S.C. 636(b)
...13

28 U.S.C. 1657(a)
...10, 17, 21

28 U.S.C. 2241
...15


## COURT RULES

F.R.A.P. 21(b)(6)
...8, 9, 13, 21

F.R.A.P. 27(c)
...9

Fed. R. Civ. P. 27(a)
...7, 19

<u>Fed. R. Civ. P.</u> 27(b)

...4, 6, 8, 20

<u>Fed. R. Civ. P.</u> 72(b)

...13

<u>F.R.E.</u> 406

...27

## MOTION UNDER 28 U.S.C. 455(a), (b)

Petitioner Caleb L. McGillvary ("Petitioner"), hereby moves to recuse Circuit Judge Patty Shwartz ("Judge Shwartz"); Circuit Judge Paul Brian Matey ("Judge Matey"); Circuit Judge Robert E. Cowen ("Judge Cowen"); Circuit Judge Michael A. Chagares ("Judge Chagares"); and Circuit Judge Julio M. Fuentes ("Judge Fuentes"); pursuant to 28 U.S.C. 455(a), (b); by profferring the following grounds in supplemental support of his motion:

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff incorporates by reference the statement of facts from the motion to recuse filed in this Court's docket in the case McGillvary v. Scutari, App. No. 25-2000, at CM/ECF 32; and sets forth same herein. Additionally, Petitioner incorporates by reference his declaration in support of this motion and sets forth same herein.

On April 19, 2006, the alleged victim Joseph J. Galfy, Jr. ("Galfy") in the criminal case underlying the petition for writ of habeas corpus filed in McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH (USDC-DNJ) ("Habeas Case"); paid $500 to NJ Senator Nicholas P. Scutari ("Scutari") to secure a place at a fundraising gala.

1

On April 24, 2006, Galfy and Scutari attended a fundraising gala together at Lana's, 1300 Raritan Road, Clark, NJ; at which gala Galfy lobbied Scutari, who was a member of the NJ Senate Judiciary Committee, for the appointment of his law partner Robert Mega ("Judge Mega") to the NJ Bench. This lobbying was successful, and Scutari indeed nominated Judge Mega to the Bench.

On February 8, 2018, Judge Mega testified that he was law partners with Galfy at the firm Kochanski, Mega, & Galfy. He testified that the police officer in charge of the crime scene where Galfy was found, called him on his personal cell phone from the scene, and that the officer was a law client of his and Galfy's. At this same hearing, it was revealed that the medical examiner sought to be deposed in this petition saw Judge Mega standing outside the crime scene with numerous other judges, some of which were possibly federal.

Judges Shwartz, Matey, Cowen, Chagares and Fuentes each practiced law in New Jersey prior to acceding to the federal bench; and have their judicial offices in the Federal Judicial Complexes located in New Jersey which are implicated in the pattern of obstructions described in the documents herein incorporated and in this motion.

2

Judges Shwartz, Matey, and Cowen were each born and raised in New Jersey. And Judge Shwartz was recommended for nomination after an "in-depth discussion" with former US Senator Bob Menendez on January 13, 2012.

Judge Chagares graduated Seton Hall University School of Law in 1987, and thereafter became an adjunct professor at Seton Hall University School of Law for the period from 1991 until 2006; during which time he attended numerous faculty functions, including but not limited to charity galas, fundraisers, and alumni events. One of the key prosecution witnesses in the U.S. District Court for the District of N.J. case McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH ("Davis Case"), Michael Timoni ("Timoni"); indicated that the alleged victim in the Davis Case was "very involved at the charities at Seton Hall University"; Davis Case ECF 12.39, page 123 lines 14-15; and so it reasonably appears that Judge Chagares was personally familiar with the alleged victim over the course of at least 15 years of regular personal contact in the setting of Seton Hall University charity functions. In fact, the dynamic of such interactions is more likely than not that of one between a faculty member and a wealthy benefactor, as

3

evidenced by the purported last will and testament of the alleged

victim, attached to the declaration in support of this motion as Exhibit

DD. This will shows that Judge Chagares' former workplace and alma

mater was bequeathed $50,000, and that the workplaces of the medical

examiner and drug effect expert witness in the Davis Case were each

bequeathed $150,000. The subject matter of this petition is the long-

stymied petition pursuant to Fed. R. Civ. P. 27(a); which sought to

depose these two expert witnesses, as well as the head prosecutor in

charge of the crime scene into which unauthorized individuals were

granted entry and removed unaccounted-for evidence. Considering that

one or more of these witnesses may testify to Judges Chagares, Matey,

Cowen, Shwartz, and/or Fuentes standing outside th crime scene

watching as this breach of the crime scene happened, none of these

judges should preside over this petition.

The declaration in support of this motion shows evidence creating

the resonable appearance that the alleged victim in the Davis Case;

was a political lobbyist who used his influence to get judges nominated

or recommended for nomination to the bench in New Jersey. Petitioner

has filed an action against the political lobbying network of that

4

lobbyist, which is currently on appeal to this Court at McGillvary v. Scutari, App. No. 25-2000 ("Scutari Case"). The Scutari Case alleges, amongst other things, that this lobbying network uses bribes and quid pro quo arrangements to secure nominations to the state and federal benches in New Jersey, including by recommendations from now-former U.S. Senator Bob Menendez. Bob Menendez was convicted since the filing of the Scutari Case, for using his office in precisely the way alleged in the complaint in the Scutari Case: offering recommendations for federal positions in quid pro quo arrangements for money and favors. See United States v. Menendez, Dkt. No. 1:23-cr-00490-SHS (S.D.N.Y.).

As alleged and supported with reliable evidence in the declaration in support of this motion, the medical examiner in the Davis Case, stated that he saw numerous judges, some possibly federal, congregated outside the crime scene of said alleged homicide in Clark, NJ. Whether Judges Shwartz, Matey, Cowen, Chagares, or Fuentes were personally outside the scene or not, it reasonably appears that they or one of their colleagues with whom they regularly associate in the robing room, lunch facilities, and elsewhere in the federal judicial complexes in New

5

Jersey; may have a vested personal bias in the matter, or have personal
knowledge about who accessed the crime scene and what was brought
into or out of it. Additionally, one or more of the judges whom the
medical examiner saw outside the crime scene seems to be actively
propagating official animus in the New Jersey vicinages which is
evidenced by the pattern of obstructions described in the declaration in
support of this motion.

There have been numerous reassignments of the Davis case, none
of which were explained in any published opinion or with any public
accountability. The Davis case was reassigned after numerous
obstructions to the case had been documented on the record, including
documents going missing and the writ of habeas corpus being
suspended. All three of the judges from which the case was reassigned,
Hon. Madeline Cox Arleo ("Judge Arleo"); Hon. Michael Farbiarz
("Judge Farbiarz"); and Hon. Christine P. O'Hearn ("Judge O'Hearn"):
held their judicial office in New Jersey and were recommended for
nomination by unregistered foreign agent Bob Menendez. Additionally,
Petitioner's state trial judge, Hon. Robert A. Kirsch ("Judge Kirsch");
was nominated to the state bench by the same State Senator, Nicholas

Scutari, whom Petitioner has shown evidence that the alleged victim in the Davis Case lobbied for other appointments to the state bench. Judge Kirsch was thereafter recommended for nomination to the federal bench by unregistered foreign agent Bob Menendez, and by that reason is now a federal judge. Judges Farbiarz and Arleo are located in the Newark Federal Judicial Complex, Judge Kirsch in Trenton, and Judge O'Hearn in Camden. Between the four of them, there is not a single Federal Judicial Complex in New Jersey in which there isn't a judge recommended for nomination by unregistered foreign agent Bob Menendez; and who has presumably had the Davis Case reassigned from themselves for reason of obstructing it; who regularly interacts with, and mingles regularly in the robing rooms and lunch facilities with, other judges in that complex.

The Chief Circuit Judge, Judge Chagares, faced with a petition for mandamus regarding the suspension of the writ of habeas corpus, implicitly found it was in the public interest for the Davis Case to be heard by a judge from outside of New Jersey, and issued an order designating an out-of-district judge under 28 U.S.C. 292(b). However, Judge Chagares explicated no reason for his order, and behind the

7

opacity of the unreasoned and unexplained order lies the implication that there is such official animus in the New Jersey Federal Judicial Complexes as to prevent Petitioner from receiving a fair decision on his Habeas Corpus petition by *any* of the judges located in New Jersey. Certainly, the appearance of impropriety of any New Jersey-located judge presiding over this case may be presumed by the entry of this order under 28 U.S.C. 292(b); and it appears to the reasonable observer that this is related to the numerous reassignments in the Davis Case, none of which were explained or held to public accountability.

It should be noted that an order under 28 U.S.C. 292(b) has been entered in two other cases besides the Davis Case: in the Scutari Case, and in McGillvary v. Long, Dkt. No. 1:24-cv-09507-JMY (D.N.J.) ("Long Case"). The very entry of these orders indicates the appearance of impropriety that any New Jersey-located judge should preside over this case.

When a petition for mandamus in the Davis case had an order for response entered on August 19, 2024; the order was inexplicably vacated the next day; followed by an action by the district court the day after that; and two days later an order denying the mandamus petition.

8

This is a clear indication that the panel had discussions off the record with the district court in which they coordinated decisions in the case without making any published record of the discussions between the panel and district court underlying the decisions. Such opacity and evident denial of public access to Court Proceedings regarding important decisions in a case creates the objective appearance of impropriety. One of the Judges in this panel, Judge Shwartz, was recommended for nomination by Bob Menendez, after having an in-depth ex parte discussion with him on January 13, 2012. Two of the judges in this panel, Judges Shwartz and Chagares, practiced law in New Jersey prior to acceding to the bench, and have their current judicial office located in New Jersey.

According to the testimony of Michael Timoni in the state court trial of the Davis Case, the alleged victim in the Davis case was a "former judge in the military"; Davis Case ECF 12.39, page 123 line 13; who was stationed in West Germany during the Vietnam Conflict, in the middle of the Cold War, prosecuting homosexuals despite being one himself. As indicated above, Judge Chagares personally interacted with the alleged victim regularly at the Seton Hall University charities

which both attended, Judge Chagares as a faculty member and the alleged victim as a wealthy benefactor. Judge Chagares is reasonably presumed to be acquainted with the fact of the alleged victim being a former military judge, and so his assignment of the Davis Case to Judge Mark R. Hornak ("Judge Hornak") should be viewed in this context. Judge Hornak is a member of the Committee on Judicial Security of the Judicial Conference of the United States. The alleged homicide of a former military judge, even in the context of self-defense against the former military judge's drug-facilitated sexual assault, has political implications to a member of the Committee on Judicial Security, who is tasked with ensuring the security of federal judges nationwide. The record clearly shows that there was an ex parte between Judge Hornak and at least one judge in the panel which Judge Chagares was a part of, as set forth above. Pursuant to this conversation, Judge Chagares and Judge Hornak both seemed to undertake actions involving the Davis Case, but the subject of the conversation was not made part of the record. Because of Judge Chagares' 15 years of personal interactions as a faculty member with the wealthy benefactor who was the alleged victim in the Davis Case,

10

and Judge Chagares' presumed knowledge that the wealthy benefactor
was a former military judge, it reasonably appears to an impartial
observer that the nature of the ex parte conversations between Judge
Chagares and Judge Hornak were to convey to Judge Hornak that the
case should be decided on political implications of the alleged  victim
being a former military judge based on Judge Hornak's priorities as a
member of the Committee on Judicial Security, and not on the merits of
the habeas petition or the basis of the law applied to the facts. Judge
Hornak's refusal to address the allegations in Petitioner's Traverse and
Reply; nor the December 27, 2018 written request to self-represent that
was evidently deleted from the state court docket; nor the $150,000
each in bribes paid by the alleged victim's family to the medical
examiner and drug effect expert's worplaces: all seem to converge on
the point, that the habeas petition was decided based on political
considerations of the alleged victim being a former military judge 50
years ago, instead of addressing the fact that he drugged and raped
vagrants. The alleged victim's  will showing the $150,000 given to the
medical examiner, was not made available to Petitioner before  trial for
the impeachment of the medical examiner, and Petitioner included a

11

request to expand the record under Habeas Rule 7 to include this Brady

evidence in his motion for summary judgment in the Davis Case. See

Davis Case ECF 44. This request, which would've made the bequeathal

to Judges Chagares and Arleo's alma mater a matter of public record,

was not addressed by Judge Hornak whatsover, seemingly pusuant to

the ex parte conversations described above.

As of today's date, the Petition for mandamus at 24-3031

languishes behind ordinary civil cases on the docket.

This motion under 28 U.S.C. 455(a), (b) is now before the Court.

12

## LEGAL ARGUMENT

### POINT I: THE MEDICAL EXAMINER HAS STATED THAT HE SAW NEW JERSEY-LOCATED JUDGES, SOME POSSIBLY FEDERAL, CONGREGATED OUTSIDE THE CRIME SCENE; AND SINCE THE LOSS OR DESTRUCTION OF BRADY MATERIAL FROM THAT CRIME SCENE IS AT ISSUE IN THIS ACTION, IT OBJECTIVELY APPEARS THAT ONE OR MORE NJ FEDERAL JUDGES HAS PERSONAL KNOWLEDGE OF DISPUTED EVIDENTIARY FACTS REGARDING WHO ACCESSED THE CRIME SCENE

### A. STANDARD OF REVIEW

"Any [judge] shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. 455(a)

"Any [judge] shall disqualify himself [in] the following circumstances:

(1) Where he has [personal] knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. 455(b)(1)

### B. ANALYSIS

The Medical Examiner indicated having seen what he believed to be numerous judges standing outside the crime scene. See Davis Case ECF 12.32, page 9 lines 8 to 18. Petitioner's petition under Rule 27(a) seeking to depose this M.E. has been stymied by the District of New Jersey for almost 2 years, so it remains uncertain whether the judges were federal or state judges, or what their identities are. Because of this uncertainty, whether or not any of the circuit judges from New

13

Jersey have actual bias, it appears as though one or more of them
might have personal knowledge of the crime scene from which it is
alleged in the instant habeas action that Brady material was lost or
destroyed. This creates the objective appearance of impropriety that
any circuit judge holding their office in New Jersey should preside over
this petition, mandating their recusal under 28 U.S.C. 455(a) and/or
455(b)(1).

## POINT II: THE PETITION AT 24-3031, LIKE THE PETITION FILED AT 24-1129, HAS BEEN QUEUED BEHIND ORDINARY CIVIL CASES ON THE APPELLATE DOCKET IN FLAGRANT DISREGARD OF F.R.A.P. 21(b)(6); AND SO IT REASONABLY APPEARS THAT THE PANEL JUDGES IN 24-1129 AND 24-3031 TO WHICH THOSE MANDAMUS PETITIONS WERE ASSIGNED SUFFER FROM THE SAME APPEARANCE OF PERSONAL BIAS

The Federal Rules of Appellate Procedure Rule 21(b)(6) requires
that mandamus petitions "must be given preference over ordinary civil
cases." This rule has been found constitutional by the Supreme Court,
as promulgated under the Rules Enabling Act, 28 U.S.C. 2072; and
speaks in mandatory language that leaves no room for discretion. Yet
nothwithstanding this, the Panel Judges have refused to advance these
mandamus petitions ahead of ordinary civil cases. In the months since
the petition at 24-3031 was docketed on October 30, 2024, dozens of

14

ordinary civil cases, including state law diversity disputes, have been decided; while this urgent mandamus petition languishes on the docket. This echoes the same circumstance last year, in the mandamus petition filed at 24-1129. The panel presiding over that case allowed a whole term to expire while a mandamus petition concerning the suspension of the writ of habeas corpus languished on the docket behind diversity cases, disregarding 28 U.S.C. 1657(a) and U.S. Const. Art. I, §9, Cl. 2; as well as F.R.A.P. 21(b)(6). The panel in that petition was composed of Judges Chagares, Shwartz, and Restrepo: two of which may have been standing outside the crime scene, at least one of which was personally acquainted with the rapist alleged to have been killed by the petitioner in self-defense, and all three of which assigned to the panel by a judge who should rather have recused himself due to personal familiarity with the alleged victim. And that same familiarity seems to be tainting this petition for mandamus to order the deposition of that alleged victim's brother, who disbursed $50,000 to the alma mater and former workplace of Judge Chagares, and $100,000's more to expert witnesses in the criminal proceeding underlying the Davis Case.

15

The very fact of the currently-assigned Panel Judges in 24-3031

refusing to honor F.R.A.P. 21(b)(6) should be enough to create the

appearance of impropriety necessary for recusal; but when combined

with the recurring pattern between the petition filed at 24-1129 and

the instant petition, and the pattern of obstructions demonstrated by

the State and Federal Courts located in New Jersey as set forth in the

declaration in support of this motion; the appearance of impropriety

takes on another level of official animus that appears to the reasonable

outside observer to have tainted the currently-assigned Panel Judges in

24-3031 with personal bias. This requires their recusal under 28 U.S.C.

455(a), (b).

### POINT III: THERE IS A LONG STANDING ROUTINE ORGANIZATIONAL PRACTICE BY OFFICIALS IN THE U.S. COURTHOUSES IN NEW JERSEY, OF OBSTRUCTION AND IMPEDIMENT OF PETITIONER'S CASES: WHICH CREATES THE APPEARANCE OF IMPRORPRIETY NECESSITATING RECUSAL OF CIRCUIT JUDGES LOCATED IN THE DISTRICT OF NEW JERSEY

### A. STANDARD OF REVIEW

"Whenever a judge's impartiality 'might reasonably be  questioned'

in a proceeding, 28 U.S.C. 455(a) commands the judge  to disqulaify

himself  sua  sponte  in  that  proceeding.  For  purposes  of  455(a)

16

disqualification, it does not matter whether the district court judge actually harbors any bias against a party or that party's counsel. This is so because 455(a) concerns not only fairness to individual litigants, but equally important, it concerns the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." <u>Alexander v Primerica Holdings, Inc.</u>, 10 F.3d 155, 162 (CA3 1993)(Internal quotations and citations omitted).

## B. ANALYSIS

An order under 28 <u>U.S.C.</u> 292(b) designating a judge outside the district for service requires a finding that such designation is in the public interest. This finding has already been made in the <u>Long Case</u>, the <u>Scutari Case</u>, and the <u>Habeas Case</u>, so it follows that the public interest requires Circuit Judges who preside over those cases to similarly be from outside of New Jersey. The sheer number of these tamperings with the record, refusal to file his documents, undue delay, and blatant gamesmanship with assignments and timing of orders; is so voluminous and recurrent as to invoke the doctrine of objective

17

chances; and is evidence of a routine organizational practice of DNJ
Officials obstructing Petitioner's cases:

## 1. DNJ Officials' Refusal to File Petitioner's Documents

Petitioner's Motion for Summary Judgment was received by
the Newark Vicinage in the Habeas Case in early April 2023, but it
wasn't until he sent it to all 3 vicinages, that the Clerk filed it on May
15, 2023. The Clerk at the Newark Vicinage received his motion to
withdraw his motion to recuse Judge Kirsch on May 23, 2023; and his
motion to withdraw his IFP application on June 6, 2023, yet these have
never been filed onto the docket. The Clerk at the Camden  Vicinage
received his Rule 27(a) petition on November 16, 2023, yet never
entered it onto the docket. The Clerk at the  Camden Vicinage received
his Brief in Opposition on September 30, 2024, yet refused to file it
until January 17, 2025, and then only after a petition for writ of
mandamus had been filed. Petitioner filed two letters to Judge Padin,
the first of which was received early March of 2025 yet wasn't filed
until after April 7, 2025. The second was received on March 31, 2025,
yet has never been filed. Petitioner also filed a motion for preliminary
injunction in that DHS Case, which was received on April 23, 2025, yet

to this day has not been filed. There are too many of these refusals to file to be a matter of chance.

## 2. DNJ Officals Tampering with the Record and Mischaracterizing Filings by Petitioner to Cause him Prejudice

Judge Kirsch deleted the state court record prior to 2016 in Petitioner's <u>Habeas Case</u>. Petitioner's urgent motion for extension in the <u>Scutari Case</u> was filed instead in the <u>Habeas Case</u> on September 10, 2024. His letter to Judge Younge complaining that the Clerk was refusing to file his Brief in Opposition was mischaracterized by the Clerk as a Letter Brief in Opposition. His civil complaint under 8 <u>U.S.C.</u> 1359 was mischaracterized as a habeas petition. Even after several letters and a petition for mandamus clarifying it wasn't a habeas petition, Judge Padin persistently mischaracterized it as such. Even if one or two gaffes might be a fluke, all of this together couldn't be the work of chance.

## 3. Undue Delay by Federal Judges in New Jersey

Judge Kirsch called the NJ State Prison to have him placed on suicide watch and disrupt his direct appeal, in May of 2019. Judge Arleo delayed the show cause order in his <u>Habeas Case</u> from June to December 2022, until he petitioned for writ of mandamus. Judge Arleo

19

obstructed his appeal, and with Judge Waldor delayed his Rule 27(b) motion in the Galfy Case from March of 2023 until the present. Petitioner has filed a motion for Arleo to be recused, which she stymied, and his mandamus petition also requested her recusal, but that too was stymied by the panel's advancing ordinary civil cases on the 3rd Circuit docket ahead of it. Judge O'Hearn suspended the writ of habeas corpus in January of 2024; Petitioner's mandamus petition was filed the next day; but it languished for the entire term, despite F.R.A.P. 21(b)(6) and 28 U.S.C. 1657(a). He wrote single judge motions to every judge in the Third Circuit, and a week later Judges Chagares, Shwartz, and Restrepo issued an order. He filed a motion to advance the Habeas Case pursuant to 28 U.S.C. 1657(a) in September 2024; which has languished through two separate yet nearly-identical reports & recommendations by the Judge Bumb-designated magistrate Judge Lanzillo. The objective chances of all the foregoing happening randomly are astronomical, this is a pattern of deliberate obstruction.

## 4. Gamesmanship in Assignments and Orders

Judge Arleo timed her decision on the Rule 59 motion in the

Galfy Case to coincide with the due date for Respondent's Answer in

the Habeas Case. This was gamesmanship to force Petitioner to choose

between his appeal of the Rule 59 order and his Habeas Reply,

considering his motion for extension of time in the Habeas Case was

denied. Judge Bumb reassigned the case to Judge Farbiarz the day

after Petitioner's motion to withdraw the motion for recusal of Judge

Kirsch was received. That motion and a motion to withdraw

Petitioner's IFP application went missing, which was gamesmanship to

prevent Petitioner from representing himself on appeal under 3rd

Circuit I.O.P 10.3.2. Judge Bumb reassigned the case again to Judge

O'Hearn, who denied the pending motion for summary judgment

without reading the papers a little over 21 hours after the

reassignment. The reassignment seems gamesmanship designed to

achieve that result. After the Habeas case was reassigned out of

district, Judge Bumb designated Magistrate Judge Lanzillo to preside

over it. Exactly 7 days after Bob Menendez and Judges Bumb and Arleo

filed their motion to dismiss in the Scutari Case, Judge Lanzillo issued

21

a slapdash R&R that apparently used chatGPT to rewrite the Respondent's Answer in R&R form. Six months later, Menendez and Judges Bumb and Arleo filed an opposition to Petitioner's motion for final appealable order in the <u>Scutari Case</u>. Yet again, exactly 7 days later, Judge Lanzillo issued a nearly-identical R&R that threatened to deny the habeas petition and forfeit any appeal if not objected to within 14 days. This evident gamesmanship by Judge Lanzillo disrupted Petitioner's briefing schedule for responding to Menendez and Judges Bumb and Arleo both times. Perhaps one or another of these instances of timing might have been coincidence, but the repeated pattern defies objective chances.

## 5. Gamesmanship in Service of Process

Petitioner filed his USM-285 forms in the <u>Scutari Case</u> for La Cosa Nostra-affiliates Nicholas P. Scutari, Jeffrey Venezia, and Richard Alderiso in November of 2023, and for Bob Menendez in June of 2024. When a final order issued in that case almost two years later, the DNJ Clerk had still made no effort to serve Scutari. The Clerk only filed the USM-285 form indicating service on Bob Menendez the day after Petitioner petitioned the 3rd Circuit for mandamus. Venezia and

22

Alderiso appeared shortly thereafter, yet USM-285 forms were never filed by the Clerk for them. Likewise in the <u>Long Case</u>, Petitioner filed his USM-285 forms for Scutari in February of 2025. They were each given sneak peeks at Petitioner's arguments against every other Defendant by this gamesmanship by the Clerk in staggering service of process to favor La Cosa Nostra-favored Defendants. This happens too often, with too many Defendants, to be the work of objective chance.

## 6. It Has Already Been Found to be in the Public Interest for the Scutari Case, the Habeas Case, and the Long Case to be Heard by a Judge from Outside the DNJ

It is required under 28 <u>U.S.C.</u> 292(b) for the Chief Judge of the Circuit of Appeals to make findings of it being in the public interest to designate an out-of-district judge to hold a district court for a matter. This implicit finding has been made in the <u>Scutari Case</u>, the Habeas, Case, and the <u>Long Case</u>; and so it must be in the public interest for the appeals of each of those cases to be heard by Circuit Judges who are both outside of New Jersey, and not recommended for appointment by unregistered foreign agent Bob Menendez, as well.

23

**7. The Routine Organizational Practice of DNJ-Located Judicial Officials Creates the Appearance of Impropriety**

For all the foregoing reasons, Petitioner respectfully urges the Court to recuse all Circuit Judges holding office in New Jersey from this matter, pursuant to 28 U.S.C. 455(a)

**POINT IV: EVERY JUDGE RECOMMENDED FOR NOMINATION BY UNREGISTERED FOREIGN AGENT BOB MENENDEZ WHO PETITIONER'S CASES HAVE THUS FAR BEEN ASSIGNED TO; HAS OBSTRUCTED THOSE CASES; WHICH CREATES THE APPEARANCE OF IMPROPRIETY THAT ANY OF MENENDEZ'S RECOMMENDATIONS SHOULD PRESIDE OVER THIS CASE**

**A. STANDARD OF REVIEW**

Petitioner incorporates by reference the standard of review from "POINT I, A" above and sets forth same herein.

**B. ANALYSIS**

As shown by evidence in the attached declaration, the alleged victim in the criminal case underlying Petitioner's Habeas Petition was a political lobbyist who got his law partner nominated to the state bench through Scutari. Scutari thereafter nominated Judge Kirsch to the state bench. Numerous judges, some possibly federal, were seen congregated outside the crime scene by the medical examiner. The lobbying network of the alleged victim included Bob Menendez, who

24

recommended the nomination of Judge Kirsch to the federal bench shortly after Petitioner's direct appeal was concluded. He also recommended Judges Arleo, Bumb, and Padin to the bench. The effect of this lobbying network seems to reach into the federal courts, and has resulted in the numerous instances of tamperings with the record, refusal to file documents, undue delay, and blatant gamesmanship with assignments, timing of orders, and service of process: as descibed in the Declaration in Support of this motion, incorporated by reference herein.

The network of appointments recommended by unregistered foreign agent Bob Menendez, and their hires, have attempted to reset the clock on his habeas petition five times after it became ripe on May 15, 2023: May 24, 2023; August 14, 2023, January 9, 2024, November 5, 2024, and May 15, 2025. Judge Bumb, along with Judges Padin, Arleo, O'Hearn, and Farbiarz; was recommended for appointment by that foreign agent, and she in turn assigned Judge Lanzillo to the Habeas Case. The doctrine of objective chances is properly invoked for the fact that all of the District Judges which Judge Bumb assigned each of Petitioner's cases to were recommended by Menendez; and her habit

thus being established under F.R.E. 406, it follows that she acted in conformity therewith in her selection of Judge Lanzillo.

The pattern of a filing by Judge Bumb and Unregistered Foreign Agent Menendez in the Scutari case being entered onto the docket, and exactly 7 days later, during the middle of Plaintiff's time for response, Judge Lanzillo filing another extraneeous and nearly-identical R&R, is clear from the record. It seems to the objective observer as though Judge Lanzillo is trying to curry favor with the network of that unregistered foreign agent and their recommended appointments, in an effort to secure for himself a life-tenured District Judgeship at Petitioner's expense.

A reasonable person, informed of all these facts, would reasonably question the propriety of a Circuit Judge who's been recommended for appointment by former-U.S. Senator Bob Menendez presiding over the mandamus petition of the Plaintiff in this case. Certainly, it would be inappropriate in the eyes of a reasonable person for such a judge to preside over this mandamus petition while the Scutari Case is on appeal to the Third Circuit. This creates the reasonable appearance of impropriety and should warrant removal of

26

Circuit Judges recommended for appointment by Menendez from this case under 28 U.S.C. 455(a).

## CONCLUSION

For all of the foregoing reasons, it creates the appearance of impropriety that Judges Chagares, Matey, Shwartz, Cowen, or Fuentes, should preside over this action. This requires their recusal under 28 U.S.C. 455(a) and/or 28 U.S.C. 455(b).

Date: 7/24/25

Respectfully Submitted,

Caleb L. McGilvlary
#1222665/SBI# 102317G
NJSP PO Box 861
Trenton, NJ 08625-0861

27

## CERTIFICATION OF COMPLIANCE PURSUANT TO F.R.A.P. 32 (a) (7) (C)

I, Caleb L. McGillvary, hereby certify that my motion contains 5,142 words, as determined by the word processing system used in preparing the brief (Microsoft Word 2013), exclusive of the title page, Table of Contents, Table of Authorities, and certificates.

7/24/25

Caleb L. McGillvary

## CERTIFICATE OF PAPER FILING

I, Caleb L. McGillvary, hereby certify that I am filing my motion in paper form, and so a Certificate of Identical Text and Certificate of Virus Check is inapplicable.

7/24/25

Caleb L. McGillvary

28

## CERTIFICATE OF SERVICE

I, Caleb L. McGillvary, hereby declare pursuant to 28 <u>U.S.C.</u> 1746

that on today's date I have placed a copy of my motion to recuse under

28 U.S.C. 455(a), (b) in the hands of correctional officials here at New

Jersey State Prison, Third and Federal Street, Trenton, NJ, 08625-

0861; with first class postage prepaid to be delivered via USPS

Certified Mail to the following parties:

> Clerk, U.S. Dist. Ct. –D.N.J.
> 4th & Cooper Sts.
> Camden, NJ 08101-2797

I declare under penalty of perjury that the foregoing statements are
true and accurate

Caleb L. McGillvary

Date: 7/24/25

29