Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2026 MAY 15  A 11: 22

May 6, 2026

Clerk, US Dist. Ct. - DNJ
US Courthouse
50 Walnut St.
Newark, NJ 07102

      RE: Caleb L. McGIllvary v. James Galfy et al
      Civil Action No. 2:21-cv-17121-JMY
      Hon. John Milton Younge, U.S.D.J.

Dear Clerk;

      Please find enclosed and file onto the docket the original

of the following documents:

1.) My letter reply to Defendant's opposition to my request for

judicial notice;

2.) Proof of service thereof;

in the above-captioned matter.

                               Kind Regards,

                               Caleb L. McGillvary
                               In Propria Persona

ENCL:
CC: FILE

PROOF OF SERVICE

I, Caleb L. McGillvary, declare pursuant to 28 U.S.C. 1746 that on today's date, I placed in the institutional mailing system here where I'm incarcerated at NJ State Prison 3rd & Federal Streets Trenton, NJ 08625; with First Class Postage prepaid to be sent via USPS Mail; the service copy of the following documents in the above-captioned matter to the Clerk of the District Court at USDC-DNJ US Courthouse 50 Walnut St. Newark, NJ 07102:

1.) My letter reply to Defendant's opposition to my request for judicial notice;

Pursuant to the prison mailbox rule, these documents are constructively filed as of the date of mailing. Pursuant to DNJ Local Civil Rules, upon said filing the Clerk files Plaintiff's document into the CM/ECF system. See DNJ L.Civ.R. 5.2.2 ("All civil ... cases and documents filed in this Court, will be entered into the Court's ECF System in accordance with these Procedures."). Upon entry of a document in CM/ECF, notice of electronic filing thereof ("NEF"); is automatically thereby sent to all CM/ECF-participating parties. See DNJ L.Civ.R. 5.2.1(d)("NEF is a notice automatically generated by the Electronic Filing System at the time a document is filed with the system..."). This NEF constitutes service upon all such parties. See DNJ L.Civ.R. 5.2.14(b)(1)("Transmission of the NEF constitutes service of the filed document on Filing Users"). Therefore, pursuant to this Court's Local Civil Rules, on today's date I have also served a copy of each said document on all appearing captioned Defendants, who are represented by CM/ECF-user Counsel.

I hereby invoke the prison mailbox rule.

I declare under penalty of perjury that the foregoing statements made by me are true and accurate.

Executed this _6_ Day of ___May___, 20_26_

_____
Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

May 6, 2026

Hon. John Milton Younge, U.S.D.J.
US Dist. Ct. - DNJ
50 Walnut St.
Newark, NJ 07102

     RE: Caleb L. McGillvary v. James Galfy et al
     Civil Action No. 2:21-cv-17121-JMY

Dear Judge Younge;

     Please accept this letter in lieu of a more formal brief in reply to Defendant James Galfy ("Defendant")'s purported opposition filed at ECF 135 ("OPN") in the above-captioned matter; to Plaintiff Caleb L. McGillvary ("Plaintiff")'s motion requesting judicial notice ("RJN"); ECF 132. Defendant doesn't differentiate which portions of his OPN are in reply to Plaintiff's Opposition Brief ("POB") to Defendant's Motion to Dismiss ("MTD"), and which parts are in opposition to the RJN, so Plaintiff will treat each point and argument as to the latter for the purpose of this reply.

## I. Introduction

     Contrary to Defendant's efforts to misconstrue and obfuscate and thereby evade responsibility for handing over the financial records, Magistrate Fais's order didn't "deny discovery" and "prohibit all motions." This is federal, not state court. The Magistrate **stayed** discovery, but this was timely appealed to Your Honor

1

under Fed. R. Civ. P. 72. The Magistrate did not prohibit Plaintiff from filing an opposition, nor did she prohibit an RJN.

The irony of Defendant calling every possible filing "miscaptioned," is tremendous. In federal court, unlike NJ state court, pro se filings must be liberally construed in the pro se litigant's favor, not to conform to the obfuscating sophistry of a counseled defendant.

The RJN, and the POB it's incorporated into, provide facts that do, in fact, justify revisiting the law of the case. Specifically, they show that Judge Arleo's ruling was based on an erroneous premise. To wit: They show that Judge Arleo was mistaken when she ruled that the Estate and its Executor weren't acting as an arm of the State, when they produced financial transaction records at the behest of the Prosecutor. Likewise, the recent revelation of discriminatory practices of the Clark Police Department, including making  bribes to cover up malfeasance, are cause to see the facts in a new light, sustaining a revision of the law of the case.

Plaintiff didn't "strategically fail to join" Defendant in McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH (U.S. Dist. Ct. – D.N.J.), a federal habeas action. Rather, he wasn't required to, under any federal rule or statute. This argument is ridiculous. It flows from that absurd premise, that everything Defendant makes pendant on that argument is just as flawed in its reasoning. Like for instance,

2

Defendant has access to <u>Davis</u>, it's right there on PACER, Plaintiff didn't "strategically withhold" it. Likewise, the sick victim-blaming and gaslighting the Defendant attempts at, is just as crazy: Plaintiff takes no pleasure in reliving a disgusting 230 lbs rapist slamming down into him from overhead; but rather posits that **scientific evidence** shows this fact, which makes it plausible that the $150,000 Defendant gave the Medical Examiner was part of a pattern of transactions to cover up his brother's culpability for the sexual assault. This, in turn, couples with the $150,000 given by Defendant to the Drug Effect Expert, to provide habit evidence under <u>Fed. R. Evid.</u> 408, which gives good cause to grant access to discovery of the Financial Records of the Estate.

It is important to differentiate Plaintiff's right to access of these records, from the argument of what they are expected to show. The access itself doesn't overturn the conviction, rather Plaintiff would have to file another separate action in order to do so. Defendant obfuscates this fact, presumably out of guilty knowledge of the contents of the records and what they will show.

## II. Statement of Facts

Contrary to the Defendant's characteristic twisting of a reasonable allegation to imply a lawsuit against Satan, Plaintiff opposed the statement of facts averred by Defendant, by making a contrary statement of facts in his POB. He incorporates same herein, as well as that from his RJN, in opposition to Defendant's, and avers

3

that Defendant has made numerous misrepresentations of the facts and the record, as shown by Plaintiff's POB, incorporated by reference herein.

Plaintiff's declaration in support of his RJN certifies to documents of public record, giving the public databases upon which they are found. He has sufficient personal knowledge of the databases to provide the URLs and CM/ECF citations; and to state what they contain, in a way in which the Court can replicate his findings. Plaintiff is a pro se litigant with a college background in the Sciences, not a lawyer, so his filings must be liberally construed.

Significantly, Defendant doesn't dispute in their OPN, that the following are judicially noticeable facts:

1.) Defendant met with Dr. Junaid Shaikh and other officers of the Clark Police Department and Union County Prosecutor's Office at the University of Medicine & Dentistry of New Jersey, on May 14, 2013;

2.) The purported last will and testament of Joseph J. Galfy, Jr. ("The Will") was notarized by his law partner, Andrew M. Baron. Baron was undoubtedly familiar with Galfy's signature, so it's plausible that Baron participated with Defendant in forging the will ex post facto, in light of it only being filed into probate a month after Defendant met with Dr. Shaikh and the investigators (It should be noted that Plaintiff is not asking the Court to administer the Estate, however: He merely asks for the records of transactions already made, which he is entitled to under N.J.C.R.

4

R. 3:13-3(b), because the Estate and its Executor produced them under direction of the State prosecutor).

3.) The Will indicated $150,000 to be given each to Junaid Shaikh and Robert Pandina's workplaces;

4.) The certification of the will indicates it was certified on March 21, 2015;

5.) The letter sent from the UCPO to Peter Liguori on March 23, 2015 indicates that the UCPO was aware of the $150k to Pandina, and that the UCPO stated it caused a conflict of interest rendering him biased and unable to testify;

6.) The NJ Office of the Attorney General released an announcement and attendant civil complaint against the CPD on January 15, 2026. In this complaint, they allege that the CPD has a pattern and routine organizational practice of paying bribes such as those paid to Pandina and Shaikh, in order to cover up evidence of misconduct. This complaint also indicates a practice by the CPD of fabricating allegations against Native Americans and foreign citizens such as Plaintiff (It should be noted that this is not entered as proof of fabricating evidence, but rather as plausibility that the financial records show transactions which are discoverable under N.J.C.R. R. 3:13-3(b) *even if they are not exculpatory per se*)

7.) Medical journals show that Plaintiff was kicking upwards from underneath as the 230 lbs rapist slammed down into him from overtop, because of the characteristic injuries attendant on the hyperextension neck fracture and forehead

5

fracture shown by the autopsy (It should be noted that this is offered as showing the plausibility that the transactions *which have already been discovered in this action* were made to Shaikh for the purpose of Shaikh providing testimony which conflicted with medical science. It should further be noted that this renders the financial records of other transactions discoverable under N.J.C.R. R. 3:13-3(b) *because of the pattern of transactions*, even though *other transactions may or may not be exculpatory or impeaching*).

Taken together, without making any adjudications on whether the financial transactions produced by the Estate and its Executor are exculpatory, Plaintiff has a right to them under N.J.C.R. R. 3:13-3(b) because he has shown they were produced under direction by the UCPO:

a.) Defendant had the will certified on March 21, 2016.

b.) The UCPO wrote Peter Liguori on March 23, 2016, indicating knowledge of the will and the transactions proceeding from the financial account of the Estate.

c.) The two-day period between the certification and the letter strongly indicates that the certification, and attendant financial record information, was produced by Defendant under the direction of the UCPO.

d.) The image of the check for $150,000 indicates that it was one of a series of checks proceeding from that financial account, which account transaction history was produced under direction of the UCPO.

### III. Procedural History

Not addressed by Defendant, is the pending appeal to the district Judge under Fed. R. Civ. P. 72, of the magistrate's order denying Plaintiff's motion to perpetuate testimony under Rule 27(b); ECF 87; nor the independent action under Rule 27(a) which was filed onto this docket despite being filed as an independent petition.

Additionally, Plaintiff has timely filed his objections to Magistrate Fais's order, and does not require permission to file a request for judicial notice. Although Plaintiff has not received a notice of docketing these written objections from the Clerk yet, he stands ready to file it agains with a return receipt confirming its delivery. And, of course, he has sent the required courtesy copy to Your Honor just in case.

### IV. Legal Argument

### A. Defendant's Contention, that Plaintiff Violated the Magistrate's Order, Doesn't Even Make Sense

Magistrate Judge Fais's order administratively terminated a motion to compel, pending a decision on Defendant's MTD. It was timely objected to under

7

Rule 72, making it ripe for review by the District Judge. Nowhere does it prohibit filing a motion under Fed. R. Evid. 201(b), nor any other Rule, for that matter.

**B. Graham v. Moschetta Holds That an Access to Evidence Claim is Not a Collateral Attack on Conviction**

Plaintiff makes a request to review the Estate financial records, which he has shown he has a right to under N.J.C.R. R. 3:13-3(b), by the facts and law as set forth in the POB and RJN. Defendant cites Heck[1] for the proposition that a Plaintiff cannot seek redress for access to the *means* by which to challenge a conviction; whereas Heck only prohibits *the challenge itself*. But Heck only prohibits using 42 U.S.C. 1983 as a way to assert a Brady[2] claim, not as a means to assert a Bounds v. Smith[3] or access to court claim, nor does it prohibit injunctions to vindicate a State-law-created liberty interest claim to acquire the evidence with which to afterwards assert a claim with another procedural vehicle.

And this is precisely why Graham v. Moschetta, 2023 U.S. App. LEXIS 30638 (3d Cir. 2023), is apposite: Although the case in Graham involved previously disclosed evidence under court order, it was a *Pennsylvania* case. Under *New Jersey Court Rules*, unlike Pennsylvania's, the Prosecutor was required to turn over the transaction records, *even without a court order*, and even if they

---

[1] Heck v. Humphrey, 512 U.S. 477 (1994)
[2] Brady v. Maryland, 373 U.S. 83 (1964)
[3] Bounds v. Smith, , 430 U.S. 817 (1977)

ended up not being exculpatory. See N.J.C.R. R. 3:13-3(b). In this access to evidence claim, Plaintiff doesn't seek monetary damages at this juncture: Rather, he seeks injunctive and declaratory relief to vindicate his right to have the Estate and its Executor, whom the POB and RJN have shown were acting under direction of and as an arm of the Prosecutor, to turn over the transaction records.

The facts in the RJN and POB only show the *plausibility* of the allegations at issue in this Rule 12(b) stage: That Plaintiff has a right under N.J.C.R. R. 3:13-3(b) to discovery of the transaction records. If the Court reviews them in camera, and finds Clark Police Officers or trial witnesses within them, it will be self-evident that they were discoverable and Plaintiff has a right to their disclosure, exculpatory or not.

Plaintiff's contentions that Galfy's testimony and the financial records are relevant to meritorious claims, bears upon the standards of Rules 27(a) and 27(b), which Defendant has not addressed whatsoever. Plaintiff brings to the attention of the Court, his appeal to the District Judge of the Magistrate's denial of his Rule 27(b) motion, which appeal has been pending for over 2 1/2 years, under Rule 72. See ECF 87 (Filed October 23, 2023).

**C. Even if 28 U.S.C. 455(a) Didn't Deprive Arleo of Jurisdiction, Defendant Doesn't Dispute That the Facts in the RJN Are Good Cause to Revisit Prior Orders and Revise the Law of the Case**

9

The Third Circuit has held that the "law of the case doctrine does not preclude a trial judge from clarifying or correcting an earlier, ambiguous ruling." Swietlowich v. County of Bucks, 610 F.2d 1157, 1164 (3d Cir. 1979). The higher Court has also held that "a trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." Ibid.

Contrary to Defendant's misreading of McGillvary v. Scutari, Dkt. No. 1:23-cv-22605 (U.S. Dist. Ct. – D.N.J.), the Court didn't "reject identical contentions by Plaintiff" in that case. Rather, the Court held on a motion under Fed. R. Civ. P. 12(b) that judicial immunity barred Plaintiff's claims for monetary damages against Judges Arleo and Waldor in that case. The standard of 28 U.S.C. 455(a) is entirely different than Rule 12(b), and judicial immunity doesn't apply to reconsidering the law of the case in light of the "appearance of impropriety" under 28 U.S.C. 455(a), or in light of the facts in the RJN and as set forth in the POB.

And Plaintiff rejects the implication of him being in a prison gang: He has never, and will never, be a part of one. Such ad hominem implications are an inappropriate appeal to passion. Judge Arleo's relationship with Plaintiff is not at issue, it's her relationship with the Defendant's rapist brother and his political lobbying network. Whether her unexplained recusal constitutes an admission of this or not, it creates an appearance of impropriety that has the potential to

10

negatively affect the public's perception of the integrity of the courts, if not for a revision of the law of the case.

While Plaintiff recognizes that Defendant may not care much for the appearance of integrity, Congress cared so much that they enacted 28 U.S.C. 455(a). This is sufficient cause to revise the law of the case, to prevent an "unjust result" of having key issues decided by a Judge who mysteriously recused herself without putting her reasons why onto the record.

**D. Plaintiff Did Not Move for Reconsideration Under D.N.J. L. Civ. R. 7.1(j); But Rather to Reconsider the Law of the Case Under the Court's Inherent Power to Do So**

Federal courts possess inherent authority, and such authority permits courts to reconsider prior orders "at any point during which the litigation continue[s]," as long as the court retains jurisdiction over the case, State Nat'l Ins. Co. v. Cty. of Camden, 824 F.3d 399, 406 (3d Cir. 2016). Courts of appeals have identified three major grounds justifying reconsideration of issues:

1.) An intervening change in controlling law;

2.) The presentation of new evidence;

3. The prevention of manifest injustice through implementation of a clearly erroneous decision; Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116-17 (3d Cir. 1997).

11

Plaintiff has provided two very good reasons under the latter two criteria to revisit and revise the law of the case with regards to the State-law-created liberty interest of N.J.C.R. R. R. 3:13-3(b): (1) Judge Arleo recused herself without explanation, implying an "appearance of impropriety" under 28 U.S.C. 455(a), which requires review to satisfy the appearance of justice. See Wang v. Att'y Gen., 423 F.3d 260, 269 (3d Cir. 2005) ('[N]o person [may] be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.' That assurance is absent - and judicial conduct improper - whenever a judge appears biased, even if she actually is not biased); and (2) The facts in the RJN, and as set forth in the POB incorporated herein, show that Judge Arleo's orders were based on clearly erroneous suppositions and must be revised accordingly. In fact, this latter reason is precisely the type of "new evidence" coming to light, which the Court in Pub. Int. Rsch. Grp. of N.J., Inc. referred to as grounds for revising the law of the case under the Court's inherent powers to do so.

Additionally, the prior order was held by the Third Circuit to not be a final order, and is thus an interlocutory order. United States ex rel. Petratos v. Genentech Inc., 855 F.3d 481, 493 (3d Cir. 2017) (Interlocutory orders are "open to trial court reconsideration, and do not constitute the law of the case")

**F. The Third Circuit Held That the Claims Against the Estate Remained Active**

The only reason the Higher Court held it didn't have jurisdiction over the appeal, is because of its finding that the claims against the Estate, and its crossclaims, were still active. Although the district court can review its own prior decisions, the Third Circuit's finding is binding on lower Courts within the Third Circuit. See <u>Home Depot USA, Inc. v. Lafarge N. Am., Inc.</u>, 59 F.4th 55, 61 (3d Cir. 2023). Plaintiff encourages counsel for Defendant to read <u>Moore's Manual: Federal Practice & Procedure</u>, to familiarize herself with the structure and procedures of the federal courts, as it is increasingly frustrating for an unlettered pro se litigant to have to untangle the Gordian Knot of irrelevance and procedural non sequiturs in Defendant's counseled filings.

**G. Plaintiff Has Already Alleged Facts to Substantiate an Access to Evidence Claim, When Liberally Construed; But Has Also Filed a Rule 27 Motion to Access the Evidence**

Plaintiff has alleged that James Galfy used the Estate in a manner that rendered it an arm of the State Prosecutor, by producing financial records at the Prosecutor's behest. These records were discoverable under <u>N.J.C.R. R.</u> 3:13-3(b). The discriminatory practices at issue in this motion weren't publicly announced by the NJOAG until January 15, 2026, so Defendant's contention that Plaintiff unduly delayed bringing them up is rather illogical. And Plaintiff finds the Defendant's racist ad hominem diatribe about his Native American ancestry distasteful, and

avers it only proves Plaintiff's point, that the Defendant engaged in a pattern of discrimination with his cross-burning brother and their pet police department.

## H. In Personam and In Rem Jurisdiction Exists Over the Estate, and Rule 19 Requires the Estate's Inclusion as an Indispensable Party

Defendant doesn't explain how New Jersey law differs from Pennsylvania law in regards to estates; to distinguish Three Keys, Ltd.[4] from the instant case. And in fact, the law has remained constant in its legal fiction of an estate, going back to pre-revolutionary law. See, e.g. Statute of Mortmain. This is the same in Pennsylvania as in New Jersey, so the Defendant has failed to distinguish Three Keys, Ltd, and has not meaningfully opposed its applicability to this case: The Court does, according to this binding precedent (not dicta), have in personam jurisdiction over the Estate.

## I. Sanctions are More Appropriate Against Defendant, Who Has Made Brazen Misrepresentations, Deliberate Obfuscations, and Arguments that Don't Even Make Sense

Fed. R. Civ. P. 11 requires a party to certify as part of its filing that it is not filed to annoy, abuse, harass, nor for any other improper purpose. The blatant disregard for procedural rules, facts of record, and common sense by Defendant should merit at least a reprimand on the record. Certainly, the recent racist ad hominem screed by Defendant regarding Plaintiff's Native American ancestry, should be grounds for a stern rebuke about propriety and decorum. But in any

14

case, sanctions under the Rule must be made by separate motion, so they must be denied. See Fed. R. Civ. P. 11(c)(2).

It deserves mentioning, that the ad terroram tactic of Defendant, trying to scare Plaintiff out of court by means of frivolous requests for sanctions, speaks more to Defendant's culpability: He knows that if Plaintiff gets access to the evidence he's entitled to, Defendant's carefully crafted lies will fall apart. Quit running, let's see those financial records.

### V. Conclusion

For all the foregoing reasons, the Court should take judicial notice of the existence of the facts requested in the RJN, as showing new evidence which merits a revision of the law of the case; and as showing the plausibility of the allegations Plaintiff makes, such that implementation of prior decisions would result in a manifest injustice.

Respectfully Submitted,

DATE: MAY 6, 2026

Caleb L. McGillvary
In Propria Persona

CC: FILE
   All parties via Clerk's NEF on CM/ECF

---

[4] Three Keys Ltd. v. SR Util. Holding Co., 540 F.3d 220, 227 (3d Cir. 2008)

15

C MCGILL VARY
#1222665/SBI# 102J17G
NJSP PO BOX 861
TRENTON, NJ
08625




05/08/2026
036B 0011837735

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

7022 2410 0003 3323 6693

CLERK
US. DIST. CT. - D.NJ.
50 WALNUT ST.
NEWARK, NJ
07102

LEGAL MAIL